# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **FUSION ELITE ALL STARS; SPIRIT FACTOR LLC d/b/a FUEL ATHLETICS**, and **STARS AND STRIPES GYMNASTICS ACADEMY INC. d/b/a STARS AND STRIPES KIDS ACTIVITY CENTER**, Individually and on Behalf of All Others Similarly Situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> **VARSITY BRANDS, LLC; VARSITY SPIRIT, LLC; VARSITY SPIRIT FASHION & SUPPLIES, LLC**; and **U.S. ALL STAR FEDERATION, INC.**, <br><br> **Defendants.** | Case No. 2:20-cv-02600 <br><br> District Judge Sheryl H. Lipman <br> Magistrate Judge Charmaine G. Claxton <br><br><br> JURY DEMAND |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AND DEFENDANTS' JOINT MOTION FOR ENTRY OF CASE MANAGEMENT ORDER NO. 1

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ................................................................................................... 4

III.   CONSOLIDATION OF DIRECT PURCHASER ACTIONS PURSUANT TO FED. R. CIV. P. 42(a) IS APPROPRIATE ................................................................................ 5

IV.   THE PROPOSED SCHEDULE FOR RESPONSES TO PLAINTIFFS' CLASS ACTION COMPLAINT IS REASONABLE ................................................................................ 7

V.   APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL WOULD PROMOTE EFFICIENCY ..................................................................... 7

   A.   Proposed Interim Co-Lead Counsel Have Undertaken All the Investigation and Research Underpinning this Litigation ...................................................................... 8

   B.   Proposed Interim Co-Lead Class Counsel and Plaintiffs' Interim Liaison Counsel Have Substantial Experience in Leading the Prosecution of Antitrust Class Actions, and Are Leading Figures in the Antitrust Bar ......................................................................... 9

   C.   Proposed Interim Co-Lead Class Counsel Will Commit the Time, Staffing and Monetary Resources Necessary to Prosecute this Action ...................................................... 20

VI.   CONCLUSION .................................................................................................. 20

CERTIFICATE OF SERVICE ....................................................................................... 23

Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, and Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of the Plaintiffs' and Defendants'[1] Joint Motion for Entry of Case Management Order No. 1 ("CMO No. 1"): (1) creating a consolidated docket for any direct purchaser actions that are based on substantially same facts and allegations against one or more Defendants and are subsequently filed in, transferred to, or removed to this Court; (2) setting forth a schedule for Defendants' responses to Plaintiffs' Class Action Complaint, ECF No. 1 ("Complaint"), including possible briefing under Fed. R. Civ. P. 12; and (3) appointing (a) Berger Montague PC and Cuneo Gilbert & LaDuca LLP as Interim Co-Lead Class Counsel, and (b) J. Gerard Stranch of Branstetter, Stranch & Jennings, PLLC as Interim Liaison Counsel (collectively, "Plaintiffs' Counsel"), to lead this litigation on behalf of the proposed class. *See* [Proposed] Case Management Order No. 1. Defendants have agreed to the relief sought by this motion.

## I.    INTRODUCTION

Two separate class action complaints were initially filed in other jurisdictions by All-Star Cheer Gyms challenging the Defendants' alleged anticompetitive conduct relating to All-Star Cheerleading events and apparel sales. The parties now jointly seek to consolidate the litigation in the Western District of Tennessee. To this end, Plaintiffs and Defendants have worked together to draft a joint proposed case management order for the Court's consideration. The proposed CMO No. 1 addresses, *inter alia*, the consolidation of direct purchaser actions against

---

[1] Defendants are Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion & Supplies, LLC (the "Varsity Defendants"), and U.S. All Star Federation, Inc. (hereinafter, together with the Varsity Defendants, "Defendants").

Defendants; the schedule for responding to Plaintiffs' Complaint; and a proposed leadership structure for class counsel.

In particular, the proposed CMO No. 1 seeks to accomplish three main tasks.

*First*, it seeks to consolidate, at minimum for pre-trial purposes, any subsequent cases filed in, removed to, or transferred to this Court, arising from similar facts and circumstances and making substantially the same allegations as those asserted in this action, on behalf of persons or entities paying one or more of the Varsity Defendants directly for attendance at All-Star Competitions or for All-Star Apparel. Fed. R. Civ. P. 42(a)(2) provides that if actions before a court "involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). The consolidation of subsequent direct purchaser actions is warranted here because any such actions would necessarily involve common questions of law and fact, and consolidation would not result in any prejudice to Defendants. Maintaining separate actions would inevitably result in the waste of judicial resources and create administrative confusion for both the Court and the parties.

*Second*, the proposed CMO No. 1 proposes a schedule for Defendants' response to Plaintiffs' Complaint, providing that: Defendants will respond, including by filing any motion pursuant to Fed. R. Civ. P. 12(b), within 30 days following the entry of proposed CMO No. 1; Plaintiffs will file any opposition to Defendants' motion within 30 days of such motion; and Defendants will file any reply to such motion within 15 days of Plaintiffs' filing of their opposition. This briefing schedule has been jointly proposed and agreed upon by the parties. This litigation has been pending against Defendants, in other jurisdictions, since May 2020, and thus it is both reasonable and efficient to proceed with responsive pleadings or motions.

*Third*, the proposed CMO No. 1 sets forth a leadership structure for proposed class counsel under Fed. R. Civ. P. 23(g), including appointment of Interim-Co-Lead Class Counsel and Plaintiffs' Interim Liaison Counsel to lead this litigation on behalf of the proposed class of direct purchaser plaintiffs ("Direct Purchaser Plaintiffs"). In particular, CMO No. 1 proposes appointing (a) Berger Montague PC and Cuneo Gilbert & LaDuca LLP as Interim Co-Lead Class Counsel; and (b) J. Gerard Stranch of Branstetter, Stranch & Jennings, PLLC as Plaintiffs' Interim Liaison Counsel.

Appointment of Proposed Interim Co-Lead Class Counsel is consistent with Fed. R. Civ. P. 23(g) and sound principles of case management. "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litigation*, Fourth, §21.11 at 246 (2004) ("*Manual*"). Proposed Interim Co-Lead Counsel will ensure that this complex antitrust litigation will proceed effectively and efficiently in the best interests of the members of the proposed class, and that the pre-trial and case management strategy will be coordinated and unified.

Proposed Interim Co-Lead Class Counsel are some of the most prominent plaintiffs'-side complex antitrust firms in the nation, having successfully led numerous antitrust class actions around the country. As demonstrated by their efforts on behalf of Plaintiffs in this litigation to date, including their extensive investigation into the underlying legal and factual claims resulting in the initiation of this litigation, and as set forth in detail in their respective declarations attached hereto, Proposed Interim Co-Lead Class Counsel have the collective talent and resources to pursue these antitrust claims against Defendants. Proposed Plaintiffs' Liaison Counsel is likewise

experienced in complex commercial litigation and regularly practices in this District. For all

those reasons, as explained more fully below, Plaintiffs respectfully request entry of CMO No. 1.

## II.      BACKGROUND

Plaintiffs seek to serve as class representatives in this antitrust action brought on behalf of

a proposed nationwide class of All-Star Cheer Gyms alleging they have paid artificially inflated

prices for All-Star Competitions, All-Star Apparel, and related goods and services bought

directly from the Varsity Defendants. *See* Compl. ¶¶2-6 (defining terms). Plaintiffs claim that

Varsity has, in combination with USASF, acquired, enhanced, and maintained monopoly power

in the All-Star Competition Market and All-Star Apparel Market ("Relevant Markets") through

an unlawful scheme consisting of exploiting its substantial market power in the Relevant

Markets to, without limitation, (a) impair and then buy up any actual or potential rivals that could

possibly threaten Varsity's dominance in certain alleged relevant markets; (b) deploy its

monopoly power in the primary All-Star Competition Market to impose exclusionary agreements

or terms on All-Star Gyms, causing Gyms to agree, on their own behalf and on behalf of their

members, to patronize Varsity exclusively (or nearly exclusively) in the primary All-Star

Competition Market as well as in the ancillary All-Star Apparel Market; and (c) leverage its

control of All-Star Cheer's governing bodies, including USASF, to impair actual and potential

rivals. As a direct and proximate result of Varsity's unlawful and anticompetitive conduct,

Plaintiffs assert that they and the Class have paid higher prices for All-Star Competitions, All-

Star Apparel, and related goods and services bought directly from Varsity than they would have

paid in a competitive marketplace.

In February 2020, attorneys at Cuneo Gilbert & LaDuca LLP began working with Justice

Catalyst Law, Inc. to investigate allegations regarding Defendants' anticompetitive conduct in

the All-Star Competition Market and All-Star Apparel Market. Berger Montague PC subsequently joined this group in the investigation that produced the initial complaint.

On July 2, 2020, Plaintiff Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center ("Stars and Stripes") filed an action in the United States District Court for the Eastern District of Pennsylvania. *See Stars and Stripes Gymnastics Academy Inc. v. Varsity Brands, LLC et al.*, 2:20-cv-03277 (E.D. Pa.). On July 10, 2020, Fusion Elite All Stars ("Fusion Elite"), along with Plaintiff Spirit Factor LLC d/b/a Fuel Athletics ("Spirit Factor"), filed an action in the Eastern District of Pennsylvania. *See Fusion Elite All Stars et al. v. Varsity Brands, LLC et al.,* 2:20-cv-03390 (E.D. Pa.).[2] On July 31, 2020, Defendants filed a joint motion to transfer both cases from the Eastern District of Pennsylvania to the United States District Court for the Western District of Tennessee. *See Fusion Elite All Stars et al. v. Varsity Brands, LLC et al.,* 2:20-cv-03390 (E.D. Pa.), ECF No. 7. On August 12, 2020, all three Plaintiffs together with all Defendants filed stipulations in each of the Pennsylvania cases voluntarily dismissing the actions without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), thereby mooting Defendants' motions to transfer. On August 13, 2020, after the Eastern District of Pennsylvania ordered the cases dismissed without prejudice, Fusion Elite, Spirit Factor, and Stars and Stripes filed the Complaint against Defendants in this Court. *See* Compl., ECF No. 1.

## III.    CONSOLIDATION OF DIRECT PURCHASER ACTIONS PURSUANT TO FED. R. CIV. P. 42(a) IS APPROPRIATE

Consolidation of subsequent direct purchaser cases filed in, removed to, or transferred to this Court is appropriate under Fed. R. Civ. P. 42(a). Rule 42(a) authorizes consolidation of two or more cases that present a "common question of law or fact." Fed. R. Civ. P. 42(a). "District

---

[2] Fusion Elite dismissed a previously pending action, filed in May, in the Northern District of California, without prejudice, to join Stars and Stripes in Philadelphia.

courts have broad discretion in determining whether to consolidate cases, and should consider whether consolidation will promote judicial economy without impeding justice and the interests of the parties." *McNeil v. Memphis Police Ass'n, Inc.*, No. 07–2166 A/P, 2008 WL 2402530, at *2 (W.D. Tenn. June 11, 2008).

Consolidation is warranted here because direct purchaser actions arising from similar facts and circumstances and making substantially the same allegations as those asserted in this action will necessarily involve common questions of law and fact. *See id.* at *3 ("The cases involve essentially identical questions of law and fact, the same defendants, and will require much of the same evidence. Additionally, the cases are at the same early stage of litigation. Consolidating these cases will avoid duplicative discovery and promote judicial economy."). Consolidation of direct purchaser actions will promote the conservation of judicial and party resources in these cases and will ensure efficiency in their prosecution and final disposition. *See Atkinson v. Morgan Asset Mgmt., Inc.*, 2008 WL 11319683, at *6 (W.D. Tenn. Sept. 23, 2008) (granting consolidation where "[t]he proposed consolidation would save judicial resources and prevent unnecessary cost and delay[;] [n]o party has objected to consolidation, and the Court has no reason to conclude that any party would be prejudiced if the Court grants the motions for consolidation"). It is well within this Court's discretion to consolidate such matters and will promote both consistency and judicial economy to do so.[3]

---

[3] Plaintiffs are aware of a class action case recently filed in the Northern District of Georgia based on similar facts and circumstances, but which is proceeding primarily on behalf of alleged impaired competitors to the Varsity Defendants, *i.e.*, not direct purchasers from Varsity (like Plaintiffs here) and includes multiple additional defendants. Should that case eventually be transferred to this District, Plaintiffs submit that it should not be consolidated with this case because of certain different issues that may exist between the two sets of cases, but instead should merely be coordinated for pre-trial discovery matters.

## IV.  THE PROPOSED SCHEDULE FOR RESPONSES TO PLAINTIFFS' CLASS ACTION COMPLAINT IS REASONABLE

The Plaintiffs' and Defendants' proposed CMO No. 1 provides that Defendants will respond to Plaintiffs' Complaint, including by filing any motion pursuant to Fed. R. Civ. P. 12(b), within 30 days following the entry of CMO No. 1. Any opposition by Plaintiffs would be filed within 30 days of such motion, and Defendants would then file any reply to such motion within 15 days of Plaintiffs' opposition. The proposed schedule is jointly proposed, and so does not prejudice any party. The timing allotted closely approximates the lengths of time set forth in Local Rule 12.1. Lastly, the proposed schedule is reasonable as it efficiently moves this litigation forward, which has been pending against Defendants since May 2020.[4]

## V.  APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL WOULD PROMOTE EFFICIENCY

Under Fed. R. Civ. P. 23(g)(3), a court has discretion whether to appoint class counsel before class certification.[5] The "[d]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual*, §21.11 at 246. By appointing Proposed Interim Co-Lead Counsel, the Court will ensure that the litigation is conducted in an organized and efficient manner by skillful and experienced counsel. The most common and desirable means of selecting class counsel is "private ordering." *Manual*, §21.272 at 279. "The lawyers agree who should be

---

[4] Plaintiffs also intend to ask, separately, for a Fed. R. Civ. P. 16 conference so that the case can move forward pending a decision on the motion to dismiss.

[5] A court may designate interim counsel to act on behalf of a proposed class before determining whether to certify the action as a class action. Fed. R. Civ. P. 23(g)(3). While neither Rule 23(g) nor the Advisory Committee Notes explicitly set forth the standards to be applied in choosing *interim* class counsel, courts have held that the same factors that apply in choosing class counsel upon class certification apply in choosing interim class counsel. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *Parkinson v. Hyundai Motor Am.*, No. CV06-345AHS (MLGx), 2006 WL 2289801 at *2 (C.D. Cal. Aug. 7, 2006).

lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id.* Efforts of plaintiffs' counsel to coordinate their activities among themselves are to be encouraged. *Manual*, §10.22 at 24.

A court considering the appointment of class counsel must assess the following criteria: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). As set forth below, each of these factors supports the appointment of Berger Montague PC and Cuneo Gilbert & LaDuca, LLP as Interim Co-Lead Class Counsel in this case and J. Gerard Stranch of Branstetter, Stranch & Jennings, PLLC as Plaintiffs' Interim Liaison Counsel.

### A.    Proposed Interim Co-Lead Counsel Have Undertaken All the Investigation and Research Underpinning this Litigation

Fed. R. Civ. P. 23(g) (1)(A)(i) directs the Court to consider "the work counsel has done in identifying or investigating" claims in the present action when weighing the appointment of lead counsel. Fed. R. Civ. P. 23(g)(1)(A)(i). Proposed Interim Co-Lead Counsel have investigated the underlying facts and law and filed the first lawsuits against Defendants alleging an unlawful and anticompetitive Exclusionary Scheme that artificially inflated prices for All-Star Competitions and All-Star Apparel in violation of Section 2 of the Sherman Act. *See* Ex. 1, Declaration of Eric L. Cramer, Esq. ("Cramer Decl.") ¶19. They have diligently prosecuted the litigation to date and demonstrated the ability to work cooperatively with others, including other attorneys for Plaintiffs. *See id.* at ¶¶22-24.

**B.     Proposed Interim Co-Lead Class Counsel and Plaintiffs' Interim Liaison Counsel Have Substantial Experience in Leading the Prosecution of Antitrust Class Actions, and Are Leading Figures in the Antitrust Bar**

Fed. R. Civ. P. 23(g)(1)(A)(ii) directs the Court to consider proposed class counsel's experience "in handling class actions, other complex litigation, and the types of claims asserted in the [present] action[.]" *See* Fed. R. Civ. P. 23(g)(1)(A)(ii). Similarly, Fed. R. Civ. P. 23(g)(1)(A)(iii) directs the Court to consider "counsel's knowledge of the applicable law" in the present case. *See* Fed. R. Civ. P. 23(g)(1)(A)(iii).

Proposed Co-Lead Class Counsel have decades of substantial experience prosecuting complex litigation on behalf of plaintiffs in a wide range of antitrust and other types of class action litigation. They are extraordinarily well-qualified to litigate this matter effectively. As detailed in the Cramer and Sims declarations,[6] and as summarized below, Proposed Co-Lead Class Counsel have generated billions of dollars in settlements and verdicts for their clients in some of the largest and most complex class actions in federal courts and have the necessary experience and resources to prosecute this litigation.

**1.     The Accomplishments of Berger Montague PC[7]**

Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in complex antitrust litigation," Berger Montague PC pioneered the antitrust class action and has been engaged in the practice of complex and class action litigation for 50 years. Since its founding by David Berger—one of the "fathers of the class action practice"—Berger Montague has been a leading national advocate for clients and class members in many of the most important complex antitrust cases ever litigated, including, more recently, the largest private antitrust settlement ever

---

[6] *See* Cramer Decl., Ex. 1; Declaration of Victoria Sims ("Sims Decl."), Ex. 2.
[7] Detailed information regarding Berger Montague and its lawyers can be found at www.bergermontague.com.

achieved (approximately $5.62 billion) in the *Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.). Berger Montague has won verdicts and settlements recovering over $40 billion for clients and class members. Cramer Decl. ¶5.

The U.S. edition of The Legal 500 has recommended Berger Montague as a "Top Tier Firm" for representing plaintiffs in antitrust class action litigation and describes the firm as "excellent," "easy to deal with," and "noted for the depth of its team." The Firm also appeared on *The National Law Journal*'s "Hot List" of the Top Plaintiffs' Law Firms in the United States in twelve of the last fifteen years the list was compiled (from 2003-2017). Then, beginning in 2018 and each year thereafter, *The National Law Journal* and Law.com included Berger Montague in their list of "Elite Trial Lawyers" recognizing law firms that "have done exemplary and cutting-edge work on behalf of their clients and are established leaders in the area of plaintiff law." Similarly, *Chambers & Partners* has repeatedly named the Firm a leading antitrust law firm in Pennsylvania and nationally for years.

For more than 50 years, Berger Montague has served as lead or co-lead counsel in myriad antitrust cases representing plaintiff classes alleging price fixing, vertical trade restraints, monopolization and other anticompetitive conduct in diverse markets. Berger Montague is currently serving in a leadership role in the following antitrust cases, among many others: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-5075 (E.D.N.Y.); *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, No. 14-md-2548 (S.D.N.Y.); *In re Rotavirus Vaccines Antitrust Litig.*, No. 18-cv-1851 (E.D. Pa.); *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.); *Le v. Zuffa, LLC, d/b/a Ultimate Fighting Championship*, No. 2:15-cv-1045 (D. Nev.); *In re Broiler Chicken Grower Antitrust Litigation*, No. 17-cv-33 (E.D. Okla.); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 1:15-cv-7488

10

(S.D.N.Y.); and *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.); *In re Opana ER Antitrust Litig.,* No. 1:14-cv-10150 (N.D. Ill.). *See* Cramer Decl. ¶7.

Most recently, the firm, led by Mr. Montague, reached a landmark $6.3 billion settlement—the largest-ever monetary settlement of a private antitrust class action—in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.* (approximately $5.62 billion after reduction for opt outs). The firm also recently obtained a settlement of $60 million from one of many defendants, Deutsche Bank, in *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, No. 14-md-2548 (S.D.N.Y.). In addition, the firm obtained a settlement of $80 million from the three largest distributors of dental supplies in the U.S. as co-lead counsel in *In re Dental Supplies Antitrust Litig.,* 16-cv-696 (E.D.N.Y.), which Judge Cogan noted was "a substantial recovery that has the deterrent effect that class actions are supposed to have, and [that] . . . it was done because we had really good Plaintiffs' lawyers in this case who were running it." The firm also achieved settlements of $190.7 million as co-lead counsel for the class in *In re Domestic Drywall Antitrust Litig.*, 13-md-2437 (E.D. Pa.); and $61.5 million for the class in *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.); and a $130 million settlement for the class in a case concerning the over-the-road fleet payment card market in *Marchbanks Truck Service Inc. v. Comdata Network, Inc.*, No. 07-1078 (E.D. Pa.).

Over the past decade, Berger Montague has also been in the vanguard of challenging pay-for-delay and other means by which pharmaceutical companies have sought to delay generic competition. The firm has achieved approximately $2 billion in settlements in these pharmaceutical cases, including in *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012), which helped set the stage for the Supreme Court's decision in *Federal Trade Commission v. Actavis*, 133 S. Ct. 2223 (2013); and *King Drug Company of Florence, Inc. v. Cephalon, Inc.*,

No. 2:06-cv-01797-MSG (E.D. Pa.), in which the firm obtained a partial settlement of $512

million. Recently, Judge McMahon in the Southern District of New York granted final approval

to a $750 million settlement—one of the largest settlements ever from a single drugmaker in an

antitrust case—negotiated by Berger Montague as co-lead counsel in *In re Namenda Direct*

*Purchaser Antitrust Litig.*, No. 1:15-cv-7488 (S.D.N.Y.).

   **H. Laddie Montague Jr.** is Chairman Emeritus, Managing Shareholder, and Co-

Chairman of the Antitrust Department at Berger Montague, where he co-founded the firm in

1970. Praised by judges and long held in the highest regard by his peers, Mr. Montague has been

repeatedly named as one of the top competition lawyers in the U.S. and internationally. Mr.

Montague is known for his long-term stewardship of his firm's antitrust department, regarded by

his peers in the legal profession as "the dean of the Bar," and widely recognized and respected as

"fair-minded." Mr. Montague has been repeatedly singled out by *Chambers USA* as one of the

top antitrust attorneys in Pennsylvania. He has also been listed in *Lawdragon, An International*

*Who's Who of Competition Lawyers*, *The Legal 500: United States (Litigation)*, and has

repeatedly been selected by *Philadelphia Magazine* as one of the top 100 lawyers in

Pennsylvania. In 2018, Mr. Montague was one of only two inductees in the American Antitrust

Institute's inaugural Private Antitrust Enforcement Hall of Fame.

   Mr. Montague has been litigating complex antitrust class actions since David Berger

helped pioneer the use of the class action device in antitrust litigation. In 1976, Mr. Montague

was co-lead and co-trial counsel in *In re Master Key Antitrust Litig.*, MDL No. 45 (D. Conn.),

which settled for $21 million after plaintiffs tried their case before a jury. In 1980, Mr. Montague

was co-lead and co-trial counsel in *In re Corrugated Container Antitrust Litig.*, MDL No. 310

(S.D. Tex.), for a corrugated sheet plant subclass and successfully tried the case against the lone

12

non-settling defendant, yielding a settlement of $366 million following trial. In 1998, Mr. Montague was one of the co-lead and co-trial counsel who partially tried *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94C897, MDL 997 (M.D. Ill.), obtaining a settlement of $723 million. Although not an antitrust case, Mr. Montague was one of three co-trial counsel in the *Exxon Valdez Oil Spill Litig.* trial, No. A89-0095-CV (D. Alaska). For his work as trial counsel in the *Exxon Valdez Oil Spill Litig.*, Mr. Montague shared the Trial Lawyers for Public Justice 1995 Trial Lawyer of the Year Award.

In addition to his extensive trial experience, Mr. Montague has served as lead or co-lead counsel in numerous other significant class actions, including *In re Domestic Drywall Antitrust Litig.*, 13-md-2437 (E.D. Pa.) (price fixing case against drywall manufacturers that resulted in settlements totaling more than $190 million), *High Fructose Corn Syrup Antitrust Litig.* MDL No. 1087 (C.D. Ill.) (price fixing case against five producers of high fructose corn syrup that settled on the eve of trial for $531 million), *In re Infant Formula Antitrust Litig.* MDL No. 878 (N.D. Fla.) (recovery of $125 million), and *Bogosian v. Gulf Oil Corp.*, No. 71-1137 (E.D. Pa.), a landmark class action against thirteen major oil companies that led to settlements of over $35 million plus equitable relief on the eve of trial. Mr. Montague was also co-lead counsel for the State of Connecticut in its litigation against the tobacco industry. He is currently co-lead counsel *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, (Damages Class only), M.D.L. 1720 (E.D.N.Y.), in which the district court recently granted final approval of the largest private antitrust class action settlement ever achieved.

**Eric L. Cramer**, who is the Firm's Chairman and Managing Shareholder, has a national practice in the field of complex litigation, primarily in the area of antitrust class actions. In 2020, *Law360* named Mr. Cramer a Titan of the Plaintiffs Bar, and *Who's Who Legal* identified

13

him as a Global Elite Thought Leader, stating that he "comes recommended by peers as a top name for antitrust class action proceedings." In 2019, *The National Law Journal* awarded Mr. Cramer the 2019 Keith Givens Visionary Award, which was developed to honor an outstanding trial lawyer who has moved the industry forward through his or her work within the legal industry ecosystem, demonstrating excellence in all aspects of work from client advocacy to peer education and mentoring. In 2018, he was named Philadelphia Antitrust "Lawyer of the Year" by *Best Lawyers*, and in 2017, he won the American Antitrust Institute's Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice for his work in *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.). He has also been identified as a top tier antitrust lawyer by *Chambers & Partners* in Pennsylvania and nationally. In 2020, *Chambers & Partners* observed that Mr. Cramer is "a fantastic lawyer…He has real trial experience and is very capable and super smart." He has been highlighted annually since 2011 by *The Legal 500* as one of the country's top lawyers in the field of complex antitrust litigation, and repeatedly deemed one of the "Best Lawyers in America," including in 2020. In 2014 and 2018, Mr. Cramer was selected by *Philadelphia Magazine* as one of the top 100 lawyers in Philadelphia.

Mr. Cramer has prosecuted multiple complex antitrust matters and is responsible for winning numerous significant settlements for his clients and class members totaling over $3 billion. Recently, Mr. Cramer has achieved substantial settlements in multiple antitrust class actions while serving as co-lead counsel, including, *e.g., In re Dental Supplies Antitrust Litig.*, No. 1:16-cv-696 (E.D.N.Y.) (price fixing case against dental supplies distributors that resulted in an $80 million settlement in 2019); *In re Domestic Drywall Antitrust Litig.*, 13-md-2437 (E.D. Pa.) (price fixing case against drywall manufacturers that resulted in settlements totaling more than $190 million); *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-7178 (D.N.J.) ($61.5 million

settlement in 2017 in antitrust matter involving the monopolization of pediatric meningitis vaccines).

### 2.      The Accomplishments of Cuneo Gilbert & Laduca, LLP[8]

Cuneo Gilbert & LaDuca LLP ("CGL") provides a wealth of litigation, leadership, claims resolution, and strategy experience, and has achieved success for clients in a wide range of class actions and complex litigation. CGL devotes the majority of its practice to the representation of clients involved in antitrust, securities, corporate governance, consumer protection, and products liability complex and class action litigation. *See* Sims Decl. at ¶2. The firm has achieved success for a range of clients by helping to recover billions of dollars in shareholder litigation, obtaining compensation for Holocaust survivors, and working to recover hundreds of millions of dollars for homeowners with defective construction materials. *Id*. at ¶4. The firm has years of experience litigating and prosecuting complex class actions like this one, including such cases as the *Enron Securities Litigation* where more than $7 billion was recovered for defrauded investors and the *CertainTeed Roofing Shingle* litigation where the firm, as co-lead counsel, secured a settlement valued at more than $700 million. *See* Sims Decl. at ¶4.

CGL specializes in representing small businesses in antitrust litigation. CGL is interim co-lead counsel for the Automobile Dealership Class in the *Automotive Parts Antitrust Litig.* ("*Auto Parts*"), 12-md-02311 (E.D. Mich.), a case based on the largest antitrust conspiracy in history.[9] *See* Sims Decl. at ¶4. CGL represents 40 dealerships, representing a class of dealerships in 30 jurisdictions, alleging a more than decade-long conspiracy, by over 70 defendant families,

---

[8] Detailed information regarding CGL and its lawyers can be found at www.cuneolaw.com .
[9] *See* https://www.reuters.com/article/carparts-dojprobe/auto-parts-price-fixing-probe-has-expanded-doj-official-idUSL1N0BF74T20130215  (Former Deputy Attorney General Scott Hammond described it thusly: "I say (it is) the biggest with respect to the impact on U.S. business and consumers, and the number of companies and executives that are subject to the investigation.").

to fix the prices of 41 different automotive parts and systems, found in a variety of American, Japanese and German vehicles. In the eight-plus years that CGL has represented the class, it has recovered more than $400 million on their behalf. In its representation, CGL has led the dealerships' claims past dozens of motions to dismiss, creating significant favorable caselaw in the Sixth Circuit; prevailed in the majority of contested motions in the case; and gotten the Dealership class certified many times over, in the settlement context.

CGL is also co-lead counsel for Commercial and Institutional food preparers in the *Pork Antitrust Litig.*, No. 0:18-cv-01776-JRT-HB (D. Minn.), and in the *Packaged Seafood Products Antitrust Litig.*, No. 15-md-2670 (S.D. Cal. Mar. 24, 2016), where it has successfully obtained certification of the commercial and institutional food preparer class. *See* Sims Decl. at ¶4. The firm is also lead counsel for independent pharmacies in the *Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa.), bringing claims on behalf of pharmacies in 30 jurisdictions, against 42 corporate and 23 individual defendants, concerning a conspiracy to fix prices on over 250 generic drugs, including numerous critical, life-saving pharmaceuticals. *See* Sims Decl. at ¶4. CGL also represents hospitals in the *National Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio). *See* Sims Decl. at ¶4.

**Jonathan W. Cuneo**, the founding partner of CGL and its predecessor firm, brings to his private legal practice nearly a decade of prior government service—first as an attorney in the Office of the General Counsel of the Federal Trade Commission and then as Counsel to the Subcommittee on Monopolies and Commercial Law of the U.S. House of Representative's Committee on the Judiciary. He began his legal career as a law clerk to Judge Edward Tamm of the U.S. Court of Appeals for the District of Columbia Circuit.

Mr. Cuneo has been recognized for his achievements as an attorney in private practice. The Trial Lawyers for Public Justice selected him as a finalist for its 2006 Trial Lawyer of the Year award. He was recently elected as a fellow to the prestigious Litigation Counsel of America. Mr. Cuneo has also been recognized for his contributions to the field of antitrust law. He was honored by the American Antitrust Institute with the Alfred E. Kahn Award for Antitrust Achievement, previously awarded to distinguished individuals such as Joel Klein, Robert Pitofsky, F.M. Scherer, Mario Monti, and Donald I. Baker. The AAI lauded his efforts to defend the antitrust laws even when there existed immense external pressure to weaken them in the 1980s, stating, "Mr. Cuneo was the only person outside of the government to be a spokesperson, clearinghouse, and advocate for strong antitrust enforcement."

Mr. Cuneo has lectured and published on antitrust law, class action litigation, and other legal subjects. His publications include articles in Class Action Reports, the Georgetown Law Journal, the George Washington Law Review, the Legal Times, and the Yale Human Rights & Development Law Journal. With Albert A. Foer, Mr. Cuneo co-authored *The International Handbook of Private Enforcement of Competition Law* (Edward Elgar Publishing Inc., 2010).

**Victoria Sims**, a partner at CGL, has likewise acquired special experience representing retailers and small businesses in complex antitrust litigation. She is the recipient of the American Antitrust Institute's Outstanding Litigation Achievement by a Junior Lawyer Award (2017) for her work in *Auto Parts*, where she was the lead attorney responsible for litigating all manner of dispositive and discovery issues, which she successfully argued to the Master and the Court, winning the majority of contested motions, and helping to recover nearly $400 million for the small businesses injured by the defendants' collusive conduct.

17

Last year, Ms. Sims was appointed lead counsel for retailers and other resellers in *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918-MMC (N.D. Cal.), a case concerning a more than decade-long criminal conspiracy to fix prices and allocate markets for hard disk drive suspension assemblies. Ms. Sims also represents independent pharmacies in the *Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 16-md-2724. She has co-authored multiple publications on antitrust litigation, including *Running Up Against the Illinois Brick Wall*, Class Action Monthly (2020), *Remediation and Deterrence: The Real Requirements of the Vindication Doctrine* (2014) (George Washington Law Review), and a chapter on *Proposals for Reform* in *Private Enforcement of the Antitrust Law in the United States* (edited by Albert A. Foer and Randy M. Stutz) (2012).

**Katherine Van Dyck**, also a partner at CGL, brings over 15 years of experience before federal courts and an expertise in class action and antitrust litigation. Ms. Van Dyck's recent successes include securing a $113.7 million verdict and partial summary judgment in favor of over 13,000 correctional officers owed backpay by the Missouri Department of Corrections. She also represented indirect purchasers of titanium dioxide in a case alleging violations of federal and state antitrust and consumer protection laws, *Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours and Co.*, No. 3:13-cv-01180-WHO (N.D. Cal.), and negotiated a $2.2 million settlement on behalf of consumers nationwide who alleged false labeling of children's bath and body products in *Mayhew. v. KAS Direct, LLC and S.C. Johnson & Son, Inc.*, No. 16-cv-6981 (S.D.N.Y.). Ms. Van Dyck was a faculty member at the American Association for Justice seminar, Trying the Class Action: Practical Tips from the Pros, and served as a law clerk to the Honorable Hayden W. Head, Jr. in the U.S. District Court for the Southern District of Texas.

### 3.   The Accomplishments of the Proposed Plaintiffs' Liaison Counsel

Plaintiffs request that the Court appoint J. Gerard Stranch of Branstetter, Stranch & Jennings, PLLC ("BSJ") as Plaintiffs' Interim Liaison Counsel for the proposed class.

**Branstetter, Stranch & Jennings, PLLC**[10] ("BSJ") is located in Nashville, Tennessee and is one of the largest law firms based solely in the South doing complex, multiparty litigation on a national level. The firm has litigated numerous cases in the federal courts of Tennessee and enjoys a national reputation of prominence in the complex litigation arena for its work in class actions, shareholder derivative claims, securities, ERISA, labor and employment, and other complex cases, both at the trial and appellate levels. BSJ has been appointed to serve as lead counsel and in other leadership roles in numerous complex consumer fraud, antitrust, and other class actions including: *In re Volkswagen "Clean Diesel,"* MDL No. 2672 (N.D. Cal.) (nationwide class settlements totaling over $15 billion, which is the largest ever consumer class settlement); *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-1238 (D. Mass.) (executive committee and lead on all Tennessee litigation in antitrust case that reached a $590.5 million settlement); *In re Wellbutrin XL Antitrust Litig.*, No. 08–2433 (E.D. Penn.) (co-lead counsel in pharmaceutical antitrust case on behalf of end-payor purchasers; $12 million settlement); *In re Prograf*, No. 1:11-md-02242 (D. Mass) (co-lead counsel on behalf of end-payor purchasers); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-cv-00194 (E.D. Tenn.) (Collier, J.) (co-lead counsel on behalf of end-pay purchasers; $9 million settlement). BSJ has also served as lead counsel in numerous Tennessee state antitrust actions, including: *Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Bristol-Myers Squibb Co.*, No. 00-C-2524 (Davidson Cnty.,

---

[10] Detailed information regarding Branstetter, Stranch & Jennings, PLLC and its lawyers can be found at www.bsjfirm.com.

Tenn.) (Shipley, J.); *Sherwood v. Microsoft Corp.*, No. 99-C-3562 (Davidson Cir., Tenn.) (Kurtz, J.); and *Lankford v. Dow Chemical*, No. 04-1517 (Davidson Cir., Tenn.) (Shipley, J.).

### C.     Proposed Interim Co-Lead Class Counsel Will Commit the Time, Staffing and Monetary Resources Necessary to Prosecute this Action

Proposed Interim Co-Lead Class Counsel has committed, and will commit, the resources to staff and prosecute this case, including the funds necessary to pay the often-considerable expenses of a complex antitrust class action. Under Rule 23(g), the Court must consider whether the proposed lead class counsel is able to dedicate significant resources to advance the claims of the proposed class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). Plaintiffs' and proposed Class members' businesses have much at stake in this litigation, which seeks recovery for years of alleged artificially inflated prices of All-Star Competitions, All-Star Apparel, and related goods and services bought directly from the Varsity Defendants as well as important prospective relief.

Plaintiffs face a resource-intensive fight. Defendants have the resources to hire, and have hired, world-class defense counsel to fight Plaintiffs' claims. Proposed Co-Lead Class Counsel have shown they possess the ability and willingness to spend the time and money, and to commit a roster of talented attorneys and capable professional staff, to litigating Plaintiffs' claims efficiently and aggressively.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court enter a case management order: (1) creating a consolidated docket for direct purchaser actions against Defendants; (2) setting a schedule for responding to the Complaint, including for possible motion to dismiss briefing; and (3) appointing (a) Berger Montague PC and Cuneo Gilbert & LaDuca LLP as Interim Co-Lead Class Counsel; and (b) J. Gerard Stranch of Branstetter, Stranch & Jennings, PLLC as Plaintiffs' Interim Liaison Counsel for Direct Purchaser Plaintiffs.

Dated: August 19, 2020                    Respectfully submitted,

*s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
**BRANSTETTER, STRANCH &**
**JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, Tennessee 37203
Telephone: 615-254-8801
Facsimile: 615-255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

H. Laddie Montague, Jr.*
Eric L. Cramer*
Mark R. Suter*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Tel: (215) 875-3000
hlmontague@bm.net
ecramer@bm.net
msuter@bm.net

Jonathan W. Cuneo*
Katherine Van Dyck*
Victoria Sims*
**CUNEO GILBERT & LADUCA LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
jonc@cuneolaw.com
kvandyc@cuneolaw.com
vicky@cuneolaw.com

Benjamin D. Elga*
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street
Brooklyn, NY 11201
Tel: (518) 732-6703
belga@justicecatalyst.org

21

Brian Shearer*
Craig L. Briskin*
**JUSTICE CATALYST LAW, INC.**
718 7th Street NW
Washington, DC 20001
Tel: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Roberta D. Liebenberg*
Jeffrey S. Istvan*
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C**
One South Broad St., 23rd Floor
Philadelphia PA  19107
215-567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

*Pro Hac Vice* forthcoming

*Attorneys for Plaintiffs and the Proposed Class*

# CERTIFICATE OF SERVICE

The undersigned certifies the foregoing document was filed with the Court's Case

Management/Electronic Case Filing System, this 19th day of August, 2020, and served upon

counsel known to be representing the Defendants, including the following:

George S. Cary
Steven J. Kaiser
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Ave., NW
Washington, DC 20037
Tel: (202) 974-1500
gcary@cgsh.com
skaiser@cgsh.com

*Attorneys for Defendants Varsity Brands,*
*LLC, Varsity Spirit, LLC,*
*and Varsity Spirit Fashion & Supplies, LLC*

Grady Garrison
Nicole D. Berkowitz
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
165 Madison Ave., Suite 2000
Memphis, TN 38103
Tel: (901) 577-8166
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorney for U.S. All Star Federation, Inc.*

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV