# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FUSION ELITE ALL STARS, et al., | |
| Plaintiffs, | Case No. 2:20-cv-02600-SHL-cgc |
| v. | |
| VARSITY BRANDS, LLC, et al., | **Jury Trial Demanded** |
| Defendants. | |

## JOINT RULE 26(f) REPORT

By Order dated September 18, 2020, this Court consolidated two substantially similar antitrust class actions brought against the same defendants. *See* Dkt. No. 37 (consolidating *Fusion Elite All Stars, et al. v. Varsity Brands, LLC et al.,* 2:20-cv-02600-SHL-cgc (W.D. Tenn.) (the "*Fusion* Action") and *Radek, et al. v. Varsity Brands, LLC, et al.*, No. 20-cv-02649 (W.D. Tenn.) (the "*Radek* Action")).[1] Pursuant to Federal Rule of Civil Procedure 26(f) and the Court's letter dated August 25, 2020, Plaintiffs[2] and Defendants[3] (the "Parties") submit the following joint status report. The Parties have met and conferred extensively and in good faith regarding this submission, including exchanging drafts and participating in multiple telephonic conferences.

In **Section I**, the Parties each provide brief statements of the case. In **Section II,** the Parties set forth the various issues upon which the Parties have reached agreement. In **Section III**, the Parties describe the issues about which they disagree, including the threshold issue of whether there should be a stay of discovery pending the outcome of Defendants' anticipated motions to dismiss. And, finally, in **Section IV**, the Parties describe their mostly agreed schedule, which would begin either at the date of the Status Conference (as Plaintiffs propose) or at the date the Defendants file their answers (as Defendants propose).[4]

---

[1] The Court administratively closed the Radek Action and consolidated that case with the Fusion Action on the Fusion Action docket. *Id*. at 2. The Court further provided that "any subsequent direct purchaser actions against Defendants [filed] in the Western District of Tennessee" would be consolidated with this one, and set a deadline of October 2, 2020 for the filing of Plaintiffs' Consolidated Class Action Complaint. *Id*. at 2, 3.

[2] "Plaintiffs" are Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro on behalf of themselves and all others similarly situated.

[3] "Defendants" are Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashion & Supplies, LLC (collectively, the "Varsity Defendants"); and U.S. All Star Federation, Inc. ("USASF").

[4] As noted in Section IV below, the only issue within the schedule about which the Parties disagree is the deadline for filing summary judgment motions (and the subsequent dates on the calendar), which Plaintiffs believe should be a date certain and Defendants believe should await the outcome of this Court's ruling on Plaintiffs' motion for class certification.

## I.        Statements of the Case

### A.  Plaintiffs' Statement of the Case

Plaintiffs are All Star Cheer Gyms and parents of current and former All Star

Cheerleaders alleging that Defendants engaged in a scheme in violation of Sections 1 and 2 of

the Sherman Act, 15 U.S.C. §§ 1 & 2. Cheerleading is a multi-billion-dollar sport with over 4

million participating child and student athletes nationwide. *Fusion* Compl. ¶1. "All Star Cheer"

is an elite, competitive type of cheerleading. Unlike teams in the other cheerleading sectors, "All

Star Teams," which are the teams that compete in All Star Cheer, do not cheer to support another

athletic team from the sidelines; All Star Teams exist solely to compete. *Fusion* Compl. ¶¶2-3;

*Radek* Compl. ¶28. All Star Team members are highly skilled athletes who perform potentially

dangerous gymnastic and acrobatic stunts, and team membership is highly coveted and

competitive. *Fusion* Compl. ¶5; *Radek* Compl. ¶29. All Star Teams are fielded through privately

owned and operated businesses ("All Star Gyms") that organize training and practices. *Fusion*

Compl. ¶5; *Radek* Compl. ¶58. All Star Gyms coordinate the All Star Teams' participation in

"All Star Competitions"[5]—paying registration fees, organizing schedules and logistics, and

purchasing their "All Star Apparel."[6]

Per the Court's September 18 Order, Plaintiffs intend to file a Consolidated Class Action

Complaint on or before October 2, 2020. As set out in the presently operative complaints,

Plaintiffs seek to represent a Class, currently defined as "[a]ll natural persons or entities in the

United States that directly paid Varsity or any wholly or partially owned Varsity subsidiary …

for: (a) registration, entrance, or other fees and expenses associated with participation by an All

---

[5] "All Star Competitions" are events at which several All Star Teams compete against each other—
above the "recreational" level—in the choreographed performance of routines comprised of
combinations of stunts, pyramids, dismounts, tosses, and/or tumbling. *Fusion* Compl. ¶5; *Radek*
Compl. ¶¶51-57.

[6] "All Star Apparel" includes clothing, shoes, accessories, and equipment purchased for use by All
Star Cheerleaders at All Star Competitions and during All Star Team practices and training. *Fusion*
Compl. ¶5; *Radek* Compl. ¶¶70-73.

Star Team or Cheerleader in one or more All Star Competitions; and/or (b) All Star Apparel." ("Direct Purchaser Plaintiff Class").[7]

The Varsity Defendants are three separate corporate entities but are part of the same corporate family. Varsity describes itself as "the worldwide leader" in "cheerleading . . . apparel, educational camps and competitions." *Fusion* Compl. ¶15. Varsity organizes, promotes, and produces All Star Competitions and manufactures, distributes, and sells All Star Apparel throughout the United States. Defendant USASF, which is deeply intertwined with Varsity and its executives, is the self-appointed "governing body" and "national authority" for All Star Cheer.[8]

Plaintiffs allege that Varsity has, in combination with USASF, acquired, enhanced, and maintained monopoly power in the All Star Competition Market and All Star Apparel Market ("Relevant Markets") through an unlawful scheme consisting of exploiting its substantial market power in the Relevant Markets to, without limitation, (a) impair and then buy up any actual or potential rivals that could possibly threaten Varsity's dominance in certain alleged relevant markets; (b) deploy its monopoly power in the primary All Star Competition Market to impose exclusionary agreements or terms on All Star Gyms, causing Gyms to agree, on their own behalf and on behalf of their members, to patronize Varsity exclusively (or nearly exclusively) in the primary All Star Competition Market as well as in the ancillary All Star Apparel Market; and (c) leverage its control of All Star Cheer's governing bodies, including USASF, to impair actual and potential rivals. As a direct and proximate result of Varsity's unlawful and anticompetitive conduct, Plaintiffs allege that Varsity has substantially foreclosed competition in the Relevant Markets, and as a result, that Plaintiffs and the Class have paid higher prices for All Star Competitions, All Star Apparel, and related goods and services bought directly from Varsity than they would have paid absent the alleged anticompetitive conduct.

---

[7] *Fusion* Compl. ¶32; *Radek* Compl. ¶186.

[8] *Id.* at ¶¶87, 145-49.

Plaintiffs have alleged a long-standing, wide-ranging, and ongoing scheme to obtain, enhance, and maintain monopoly power in the Relevant Markets. Given the nature of the allegations, while mindful of the need for proportionality, Plaintiffs expect that the following topics, among others, will be subject to discovery:

- The relationship between and among the Varsity Defendants and USASF;
- Defendants' organizational structures;
- Defendants' dealings with third party vendors, including hotels and other venues, that provide goods and services at USASF-sanctioned All Star Competitions;
- Defendants' costs of production and earnings in the Relevant Markets;
- Bain Capital's recent acquisition of Varsity;
- Varsity's acquisition of rival All Star Apparel and All Star Competition businesses;
- Varsity's competition, if any, in the All Star Apparel and All Star Competition markets, and Varsity's dealings with any competitors;
- Pricing, sales, and distribution by Varsity Defendants in the Relevant Markets;
- Varsity's allegedly exclusive dealing contracts and agreements with All Star Gyms and parents, concerning the Relevant Markets issues relating to the definitions of the Relevant Markets;
- USASF rule-making for All Star Competitions;
- Scoring at USASF-sanctioned All Star Competitions;
- All Star Competition, All Star Gym, All Star Team coaches, and All Star Cheerleader membership policies, rules, and procedures at USASF;
- Policies and procedures governing the award and distribution of Bids to Worlds, The Summit, and the U.S. Finals (the three national All Star Championships recognized by USASF).[9]
- Antitrust injury and quantum of damages (in the form of overcharges) incurred by

---

[9] "Bids" are highly coveted formal invitations to compete in these All Star Championships. All Star Teams cannot attend the All Star Championships without one. *Fusion* Compl. ¶63.

Plaintiffs and the thousands of members of the proposed Class in the two Relevant Markets (All Star Competitions and All Star Apparel).

Interim Co-Lead Class Counsel have experience litigating dozens of complex monopolization cases and speak from experience: fact discovery on these topics will require, at minimum:

- Collection and analysis of detailed transactional data from Defendants in at least each Relevant Market;
- Collection and review of relevant documents collected from custodians at the company-wide decision-making level to lower level employees responsible for implementation;
- Multiple depositions of current and former employees familiar with the operations of the companies in each Relevant Market; and
- Document production from and depositions of non-parties with familiarity of the subject matter alleged, including choreographers, judges, independent event producers, venues, All Star apparel manufacturers, and music producers.

Many of the topics listed above will also require analysis from economic experts on a variety of issues, including, among others, the Varsity Defendants' market power, anticompetitive conduct, impact on the class members in terms of artificially inflated prices, and damages. The Parties will engage expert economists who will produce reports on those and other issues. Finally, the standards for class certification are such that Plaintiffs will need to show that their case is capable of being adjudicated with predominantly class-wide evidence. Accordingly, in order to conduct this litigation in the most efficient manner possible, Plaintiffs will need to build their case on the merits—in fact discovery and through experts—at the same time that they gather the information necessary for class certification briefing.

## B. Defendants' Statement of the Case

From Defendants' perspective, this is a lawyer-created case brought by a consortium of national class action plaintiffs' attorneys who appear to have been working in the background to

encourage gyms, cheer participants, and others to participate in this lawsuit.  Plaintiffs first filed

this case in May in the Northern District of California.  In July, without any forewarning of any

kind that could have enabled Defendants to avoid needless expense preparing to litigate the case

in that district, they dismissed that case and filed an identical complaint in the Eastern District of

Pennsylvania.  Defendants moved to transfer the case and the other case that is now consolidated

from the Eastern District of Pennsylvania to this district.  Although Plaintiffs put Defendants to

the task of preparing and filing a motion to transfer those cases to this Court, when faced with

the transfer motion, Plaintiffs agreed to the transfer and refiled here in August.  Plaintiffs then

asked Defendants to agree to consolidation of the two cases and to permit the filing of yet

another amended complaint.  In an effort to avoid further waste of party and judicial resources,

Defendants agreed.  Even to date, however, Defendants have not seen the complaint that they

will be addressing in this Court.

Based on the complaints that Defendants have seen, the case itself has no merit and is

simply an attack on a successful business that has developed competitive cheerleading from

essentially nothing to an endeavor in which millions of young people participate.  Once Plaintiffs

file their complaint, Defendants expect to file a motion to dismiss in which they will explain the

myriad reasons why Plaintiffs have failed to state a claim as a matter of law under well-

established precedent.

As Plaintiffs make plain in their statement, should the case be allowed to proceed to

discovery, Plaintiffs will seek truly massive amounts of documents and data, all in the hopes that

somewhere in some email they will find some statement that they can use against Defendants.

That is unfortunately the incredibly wasteful and inefficient way of modern class action practice,

particularly in the antitrust area.  But the fact that they say they need such massive quantities of

discovery illustrates two fundamental points:  (1) that Plaintiffs' case as presently framed is

based on speculation and hope, not facts; and (2) that Defendants' request to begin discovery

only after their motion to dismiss is resolved makes eminent sense.

For their part, if forced to defend themselves in this action past their motion to dismiss,

Defendants expect to require discovery of the Plaintiffs and the putative class they seek to represent to test all of the various allegations in the forthcoming complaint.  This will include discovery of each Plaintiffs' relationship to cheerleading or to Defendants, and any claim that they have been injured by Defendants' conduct.  Defendants will likewise be required to employ experts to counter Plaintiffs' experts, with the attendant discovery needs.

## II.    Issues Upon Which the Parties Reached Agreement

### A.  Electronic Service

The Parties agree to accept service via email transmission under Fed. R. Civ. P. 5(b)(2)(E).

### B.  Proposed Expert Discovery Order

The Parties have attached as **Exhibit 1** a proposed stipulated order governing discovery of expert-related materials.

### C.  Stipulated Protective Order

The Parties have reached an agreement regarding the terms of a protective order governing confidentiality of documents pursuant to Fed. R. Civ. P. 26 and Fed. R. Evid. 502(d), and hereby submit a proposed stipulated protective order as **Exhibit 2** for the Court's approval.

### D.  Motion Practice

The Parties agree that, pursuant to Local Rule 7.2(a)(1)(A), all motions, except motions pursuant to Fed. R. Civ. P. 12, 23, 56, 59, and 60 shall, be accompanied by a proposed order in a word processing format sent to the ECF mailbox of the presiding judge.

The Parties agree further that, pursuant to Local Rule 7.2(a)(1)(B), the Parties are required to consult prior to filing any motion (except motions filed pursuant to Fed. R. Civ. P. 12, 23, 56, 59, and 60).

The opposing Party must file a response to any opposed motion. Pursuant to Local Rule 7.2(a)(2), a Party's failure to respond timely to any motion, other than one requesting dismissal of a claim or action, may be deemed good grounds for granting the motion.

Neither Party may file an additional reply to any motion, other than those motions

specifically set forth in the schedule above, without leave of the Court. Pursuant to Local Rule 7.2(c), if a Party believes that a reply is necessary, it shall file a motion for leave to file a reply within seven (7) days of service of the response, setting forth the reasons why a reply is required.

### E.  Magistrate Jurisdiction

The Parties do not consent to trial before the Magistrate Judge.

### F.  Alternate Dispute Resolution

Pursuant to Local Rule 16.3(d), within 7 days of completion of ADR, the Parties shall file a notice via ECF confirming that the ADR was conducted and indicating whether it was successful or unsuccessful, without disclosing the Parties' respective positions at the ADR.

### G.  Discovery of Electronically Stored Information

As required by Local Rule 26.1(e), the Parties are in the process of meeting and conferring regarding a proposed stipulation covering discovery of electronically stored information ("ESI") and the timing and sequence of production of privilege logs, and respectfully request an additional 14 days from the Rule 16 Conference to submit either an agreed ESI protocol or the Parties' disputes regarding such a protocol.

### H.  Discovery Limitations

- **Requests for Production of Documents**

The Parties agree that each side shall be permitted to propound no more than two (2) sets of requests for production of documents on any Party absent agreement of the Parties or a showing of good cause why developments in discovery should permit additional requests.

- **Interrogatories**

The Parties agree that no more than 30 different interrogatories may be propounded on any one corporate group. For these purposes, a corporate group shall include any Party under common ownership with any other Party, which, for the avoidance of doubt, means that Varsity Brands, LLC, Varsity Spirit LLC, and Varsity Spirit Fashion & Supplies, LLC shall be considered to be a corporate group. To the extent an interrogatory is propounded on all of the members of a corporate group or an identical interrogatory is propounded on more than one of

the members of a corporate group, it will count as one interrogatory and be responded to jointly by the members of the corporate group on which it is propounded. Similarly, no more than 30 different interrogatories may be propounded on the members of any Plaintiff group. For these purposes, one Plaintiff group shall be comprised of all commercial plaintiffs that operate gyms and another Plaintiff group shall be comprised of individual plaintiffs. For the avoidance of doubt, Fusion Elite All Stars; Spirit Factor LLC d/b/a Fuel Athletics; and Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center are, together, one Plaintiff group, and Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro are, together, another Plaintiff group. Each Plaintiff shall separately respond to the interrogatories that are propounded on him, her, or it, to the extent the answers are different from those of the other Plaintiffs.

- **Requests for Admission**

The Parties agree that each side may collectively be subject to no more than 100 requests for admission under Fed. R. Civ. P. 36.

- **Deposition**s

The Parties agree that each side will be limited to a total of 55 non-expert depositions, inclusive of third-party depositions, in this Complex Track case. The Parties further agree that out of the total of 55 non-expert depositions, Plaintiffs will be limited to 25 depositions of Defendants, including Defendants' current employees or corporate representatives, and Defendants will be limited to 15 depositions of Plaintiffs, including Plaintiffs' current employees or corporate representatives. The Parties also agree that, out of the 55 total non-expert party depositions, the Varsity Defendants shall collectively be subject to no more than 15 hours of deposition testimony under Fed. R. Civ. P. 30(b)(6), which will count as one deposition against the deposition limits no matter how many witnesses the Varsity Defendants elect to produce. Defendant USASF and each corporate Plaintiff shall be subject to no more than 7 hours of deposition testimony under Fed. R. Civ. P. 30(b)(6), which will count as one deposition against the deposition limits no matter how many witnesses the Party elects to produce. These limits do

not include depositions of expert witnesses disclosed under Fed. R. Civ. P. 26(a)(2).  Except as otherwise provided herein, absent further agreement of the Parties and, for third-party witnesses, agreement of the witness, or leave of Court for good cause shown, no witness shall be deposed for more than one day of 7 hours, except that counsel for a party witness may continue questioning the witness on the same day after the noticing party's 7 hours are finished.

The Parties reserve the right to request additional depositions, which shall be allowed by agreement of the Parties or by Order of the Court on good cause shown.

All potential trial witnesses, other than those deposed in this action or who are discovery custodians, shall be specifically identified by name in initial disclosures (or supplements thereto, served at least thirty days prior to the conclusion of fact discovery). No other persons shall testify at trial absent agreement of the Parties or by leave of Court for good cause shown.

Absent agreement of the Parties or leave of Court on good cause shown, regarding the time for questioning at depositions:[10]

(a)    for third-party witnesses, whose depositions are noticed by both sides, the time shall be split among each side evenly;

(b)    for third-party witnesses who were previously employed by any Party and whose depositions are noticed by both sides, the side without the Party that previously employed the witness shall get up to 5 hours, and the opposing side shall have the remaining time;

(c)    for party witnesses, the side that does not employ the witness shall get up to seven hours, and the side that employs the witness may, with notice to the other side, make its own witness available for up to 7 additional hours for questioning by the side that currently employs the witness;

(d)    Cross-noticed depositions of witnesses in categories (b) and (c) above shall not count against the deposition limits set forth above for the cross-noticing side, but will count against the deposition limits set forth above for the initially-noticing side. Cross-noticed

---

[10] For (a) and (b), the Parties will endeavor in good faith to notify each other in advance of a rough estimate of how much time they intend to spend with the witness.

depositions of witnesses in category (a) shall count against the deposition limits set forth above for both sides;

(e)     To the extent either side chooses not to use its fully allotted time at a deposition, the remaining time will revert to the other side. Nothing in these deposition guidelines shall preclude a Party who did not notice or cross-notice a deposition from cross-examining a witness at deposition, however such cross examination must by a non-noticing party must remain within the scope of the direct examination.

**Remote Depositions due to Covid-19**: The Parties agree that solely due to the Covid-19 pandemic, absent agreement of the Parties or a further order of this Court on good cause shown, all depositions shall be held remotely. Should any Party believe that developments warrant a change to this procedure, for example, improvements in public health, the Parties shall meet and confer, with each Party reserving its right to raise any disagreements with the Court.  The Parties will submit a remote deposition protocol to the Court within 60 days of the Triggering Date, which will include any disagreements (which are not anticipated) for the Court's resolution. Notwithstanding the foregoing, and should the Parties agree or the Court order that depositions may proceed in person, any Party (other than a witness) that wishes to attend a deposition remotely may do so, and the Parties will cooperate to facilitate the technological requirements of such remote attendance, including video and audio. Any incremental costs incurred by remote attendance will be split evenly among the Parties choosing to attend remotely.

**III.     The Issues Upon Which the Parties Have Not Reached Agreement**

**A. The Parties' Positions on Whether Discovery Should Be Stayed Until Defendants' Motion to Dismiss Is Resolved**

**1.   Plaintiffs' Position**

Discovery should not be stayed pending the resolution of Defendants' anticipated motions to dismiss. Sixth Circuit courts have regularly found that the existence of an outstanding

case-dispositive motion is ordinarily insufficient on its own to support a stay.[11] These rulings are consistent with those in other antitrust class actions from courts nationwide, holding that antitrust class actions are no exception to the general rule that stays of discovery pending a dispositive motion are disfavored.[12]

---

[11] *See, e.g.*, *Avery Outdoors Llc v. Peak Rock Capital*, No. 16-cv-2229, 2016 U.S. Dist. LEXIS 202123, at *16 (W.D. Tenn. Aug. 3, 2016) (Lipman, J.) (denying defendants' motion for protective order seeking stay of all discovery pending resolution of their motion to dismiss); *Raymond James & Assocs. v. 50 N. Front St., Tenn., LLC*, No. 18-cv-2104, 2019 U.S. Dist. LEXIS 105987, at **2-3 (W.D. Tenn. June 25, 2019) (denying defendant' motion to stay discovery pending resolution of motion to dismiss because "[a] stay of discovery will unnecessarily delay this case from reaching its ultimate resolution, resulting in prejudice to [plaintiff]"); *Fowler v. Nelson*, No. 2:16-cv-02698, 2017 U.S. Dist. LEXIS 110981, at *4 (W.D. Tenn. Apr. 14, 2017) (denying defendant's motion to stay discovery where court did not find "good cause" to stay discovery); *Burges v. BancorpSouth, Inc.*, No. 3:14-1564, 2015 U.S. Dist. LEXIS 145635, at *10 (M.D. Tenn. Oct. 26, 2015) ("Had the Federal Rules contemplated that a motion to dismiss . . . would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation.") (quoting *Skellerup Indus., LTD v. City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995)); *Toho Tenax Am., Inc. v. Linde, Inc.*, No. 3:12-CV-157, 2014 U.S. Dist. LEXIS 77836, at **4-5 (E.D. Tenn. June 9, 2014) (denying motion to stay discovery and noting "the fact that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery") (quoting *Bowens v. Columbus metro. Library Bd. of Trustees*, No. 2:10-cv-00219, 2010 U.S. Dist. LEXIS 103399 (S.D. Ohio. Sept. 16, 2010)); *Marshall v. Decatur Cty. Gen. Hosp.*, No. 08-01159, 2009 U.S. Dist. LEXIS 110567, at *4 (W.D. Tenn. Jan. 30, 2009) (denying defendant's motion to stay discovery pending resolution of whether he was entitled to qualified immunity).

[12] *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2017 U.S. Dist. LEXIS 160411, at **32-33 (N.D. Ill. Sept. 28, 2017) (requiring defendants to respond to discovery requests prior to resolution of motion to dismiss; "The Court recognizes that discovery in an antitrust case quickly can become enormously expensive. These hefty costs do not justify a full stay of discovery simply because a defendant has moved to dismiss all of a plaintiff's claims.") (citations omitted); *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-PAL (D. Nev. July 28, 2015), Dkt. No. 139 (attached as **Exhibit 3**) (denying defendant's motion to stay discovery pending resolution of motion to dismiss); *In re Capacitors Antitrust Litig.*, No. 3:14-civ-03264 (N.D. Cal. Jan. 14, 2015), Dkt. No. 514 (attached as **Exhibit 4**), at 2 (directing discovery to proceed pending a motion to dismiss); *Castro v. Sanofi Pasteur Inc.*, No. 2:11-civ-7178 (D.N.J. Jul. 18, 2012), Dkt. No. 102 (attached as **Exhibit 5**) (denying motion to stay discovery, rejecting defendant's argument that "failure to grant a stay could impose significant, needless, and asymmetric costs"); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2013 U.S. Dist. LEXIS 72868, at *30 (N.D. Cal. May 21, 2013) ("the costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust

In considering whether to order a stay of discovery pending a ruling on a motion to dismiss, courts focus on "whether the pending motion will dispose of the entire case, whether discovery is necessary to gather facts in order to defend against a dispositive motion, and whether the party seeking the discovery will be prejudiced by the delay." *Raymond James*, 2019 U.S. Dist. LEXIS 103399 at *2. Here, these factors weigh in Plaintiffs' favor. First, Defendants' anticipated motion to dismiss is unlikely to dispose of the entire case.[13] Plaintiffs have pled a detailed anticompetitive scheme in violation of Sections 1 and 2 of the Sherman Act, satisfying all elements of the claims. Second, Defendants' continuing anticompetitive conduct has caused, *and continues to cause*, harm to Plaintiffs and members of the proposed class, and a stay will unnecessarily delay the case and prejudice Plaintiffs by prolonging the alleged wrongdoing and its effects.[14] Defendants' alleged scheme to enhance its monopoly power in the markets for All Star Competition and All Star Apparel Market continues to foreclose competition in both markets—which over time, as actual and potential rivals in both markets are bought out or shutter makes it more and more difficult to cure the competitive harms. The Court should allow

---

defendant challenges the sufficiency of a complaint. . . . At this time, the Court will not disallow discovery simply because Defendants anticipate filing motions to dismiss."); *Forest River, Inc. v. Heartland Rec. Vehicles, LLC*, 2012 U.S. Dist. LEXIS 130689, at *9 (N.D. Ind. Sept. 12, 2012) (denying motion to stay antitrust claims where "movants do not provide the Court with any specifics regarding the anticipated costs of providing the discovery or any evidentiary support as to such cost estimates" but "make only bald assertions that discovery relative to the claims would be an 'enormous, needless expense'"); *Universal Del., Inc. v. Comdata Corp.*, No. 2:07-civ-1078 (E.D. Pa. Nov. 12, 2009), Dkt. No. 180 (attached as **Exhibit 6**), at n.1 (directing the parties to engage in discovery in an antitrust class action, noting "[t]his court is unaware of any Federal Rule of Civil Procedure or case law precluding discovery [where motions to dismiss are pending or a motion to amend the pleadings is pending]").

[13] *See, generally*, *Dummen Na, Inc. v. Proven Winners N. Am. LLC*, No. 16-cv-00709, 2017 U.S. Dist. LEXIS 217181, at *4-*5 (S.D. Ohio May 3, 2017) (explaining that it is "unpersuasive for a party to rely on the strength of the motion to dismiss in moving for a motion to stay, unless the complaint is clearly frivolous," and that courts are "not inclined to grant a stay based on one party's view of the strength of its [m]otion to [d]ismiss").

[14] *See, e.g.*, *Lakatos v. Canberra Indus.*, No. 14-CV-73, 2014 U.S. Dist. LEXIS 153018, at *2 (E.D. Tenn. Oct. 29, 2014) ("Defendant's filing of a Motion to Dismiss . . . does not amount to good cause supporting a stay of discovery . . . [and] granting of [a] stay would unnecessarily delay the adjudication of [the] case.").

the case to move forward without delay.

The Parties also disagree about whether the case should be stayed after briefing on class certification has been completed pending the Court's ruling on class certification. In Plaintiffs' view, while the Court is considering class certification, the Parties can use the time productively to brief summary judgment. Plaintiffs of course believe they will prevail on class certification and thus any delay would be wasted time, but even if they do not, the individual plaintiffs will still move forward with the case and it would thus be highly inefficient for the case to be effectively stayed pending resolution of the class issue. Whether Plaintiffs have amassed sufficient evidence to raise a disputed issue of material fact on the elements of their claims will not be affected one way or the other by the Court's class certification ruling, and thus there is no reason to delay the case as Defendants request.

### 2.  Defendants' Position

It would be manifestly unjust to require the parties to move forward on a massive discovery undertaking—the burden of which will fall mostly on Defendants—before the as-yet-unfiled "consolidated and amended complaint" is subject to Defendants' anticipated motion to dismiss.

Any professions of urgency ring particularly hollow in this case.  Plaintiff Fusion Elite first filed this case in May in the Northern District of California.  In July, it dismissed its complaint in that court and filed an identical complaint in the Eastern District of Pennsylvania. Defendants moved to transfer the case and the other case that is now consolidated from the Eastern District of Pennsylvania to this district.  Although Plaintiffs put Defendants to the task of preparing and filing a motion to transfer those cases to this Court, when faced with that motion, Plaintiffs agreed to the transfer and refiled here in August.  Plaintiffs then asked Defendants to agree to consolidation of the two cases and to permit the filing of yet another amended complaint.

This history is noteworthy because it reflects the fact that Plaintiffs have let this case bob around the country for four months but now profess to be in a hurry to begin discovery, even

before they have filed the operative complaint in this Court. Defendants, in the meantime, have expended considerable resources preparing their motion to transfer, not to mention wasted work preparing to move to dismiss the case(s), first in California and then in Pennsylvania.

Defendants simply ask that the Court rule on its expected motion to dismiss Plaintiffs' forthcoming, but still not yet filed, consolidated and amended complaint. Particularly in light of the hardship that Defendants have already endured since May, this is an eminently reasonable request that will not delay the ultimate adjudication of this case by any significant amount, if at all.

Defendants' position is sensible and efficient. As the Supreme Court cautioned in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007), the expense of discovery in antitrust cases makes it particularly important that such cases be carefully scrutinized to ensure that a viable antitrust claim is stated. Similar to the case at hand, in *Twombly* the plaintiffs sought to represent a large class in an action relating to antitrust violations that allegedly took place over a seven-year period. Allowing discovery to go forward prior to resolution of Defendants' forthcoming motion to dismiss would in essence eviscerate the pleading protections the Supreme Court put in place with *Twombly*, particularly when coupled with Plaintiffs' other efforts to accelerate document discovery.

These very concerns have led many courts in this circuit and around the country to stay discovery pending the resolution of a defendant's motion to dismiss antitrust claims. *See, e.g.*, *Wagner v. Mastiffs*, No. 2:08-CV-431, 2:-09-cv-0172, 2009 WL 5195862 (S.D. Ohio Dec. 22, 2009); *see also Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-cv-00363-BLF, 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) (staying discovery until the motion to dismiss hearing, with opportunity for extension, because the pending motion was potentially dispositive and could be decided without additional discovery); *In re Broiler Chicken Grower Litigation*, No. 6:17-CV-00033, 2017 WL 3841912, at *5 (E.D. Okla. Sept. 1, 2017) (staying discovery pending the resolution of the motion to dismiss in part because "the complex antitrust subject matter of this case necessarily means that discovery will be extremely costly and burdensome"); *Nexstar*

*Broad., Inc. v. Granite Broad. Corp*., No. 1:11-cv-249, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (staying discovery and noting that "[i]f the case is susceptible to burdensome and costly discovery, the district court should limit discovery once a motion to dismiss for failure to state a claim has been filed"); *Integrated Systems and Power, Inc. v. Honeywell Inter., Inc*., 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (staying discovery pending resolution of the motion to dismiss due to the breadth of the requested discovery and the fact that although the Court could not "predict the outcome of the pending motion," it did not appear to be "unfounded in the law") (citation omitted); *DSM Desotech Inc. v. 3D Sys. Corp*., No. 08 CV 1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) (staying discovery because "[a]bsent circumstances presenting a compelling need for prompt discovery . . . the principles underlying *Twombly* counsel in favor of granting defendants' motion to stay").

As Plaintiffs note, other courts have allowed discovery to go forward based on the particular circumstances before them.  Plaintiffs' string cite of cases, however, is misleading because often the discovery that was allowed was very limited.  For example, in *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637, 2017 WL 4417447, at *5-7 (N.D. Ill. Sept. 28, 2017), the court merely ordered the defendants to produce a subset of materials that had previously been produced to the government, hardly what is at issue here.  Likewise, in another case Plaintiffs cite, *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420, 2013 WL 2237887, at *3 (N.D. Cal. May 21, 2013), the court only permitted discovery in advance of the yet-to-be-filed motion to dismiss for documents that had already been produced by certain defendants to the Department of Justice or a Grand Jury.  For the other defendants, the Court *stayed* discovery because it found that the burden of producing the documents (that had already been produced to the government) was substantial and outweighed the benefits of disclosure.  In *In re Capacitors Antitrust Litigation*, No. 3:14-civ-03264 (N.D. Cal. Jan. 14, 2015), only very limited discovery was allowed to go forward, specifically on (i) organizational structure, (ii) identification of products, (iii) pricing, (iv) sales, (v) transactional data, (vi) FTAIA, (vii) personal jurisdiction, and (viii) non-party discovery, most of which are not even relevant here.

In other words, the incredibly expensive ESI discovery that Plaintiffs apparently will seek prior to the resolution of the motion to dismiss here was *not* allowed to go forward until the motion to dismiss was resolved.

In any event, Defendants should at a minimum be afforded the opportunity to file a motion to stay with appropriate briefing.  Particularly insofar as Plaintiffs' serial refiling of this case has already caused Defendants to expend extensive resources unnecessarily and Plaintiffs have not even filed the operative Complaint in this case, discovery should not commence until the resolution of that motion.

All of the dates in Defendants' proposal accordingly are keyed off the resolution of their motion to dismiss.

The other disagreement among the parties relating to the schedule concerns the timing of any motions for summary judgment relative to the resolution of Plaintiffs' class certification motion.  At Plaintiffs' request, Defendants have agreed that, should the case proceed to discovery, Plaintiffs may wait for all fact discovery to be complete prior to moving for class certification, notwithstanding the requirement of Fed. R. Civ. Pro. 23(c)(1)(A) that the Court "must determine" "whether to certify the action as a class action" at an "early practicable time."

How the Court resolves Plaintiffs' motion for class certification—including narrowing the class or eliminating certain claims or theories of liability—will be important to the summary judgment process and may well impact resolution of the case.  It therefore makes no sense for the summary judgment process to proceed until the class certification decision is made, as Plaintiffs' approach would necessarily entail.  Defendants accordingly propose that summary judgment motions be due 60 days after the Court's ruling on class certification.

## IV.     The Parties' Largely Agreed Case Schedule

As discussed above, the Parties disagree about what should trigger the initiation of the schedule (Plaintiffs believe it should be the date of the Rule 16 Conference and Defendants believe it should be the date on which their answers are due) ("Triggering Date"). However, the Parties have in fact almost entirely agreed to a structure for the case schedule after the Triggering

Date. Accordingly, the Parties set out below their proposed agreed schedule, which would begin at whichever Triggering Date the Court selects, while highlighting for the Court the very few areas where the Parties continue to disagree.

The Parties jointly propose the following dates and structure for the schedule in this case beginning on the Triggering Date (other than the dates for filing the Consolidated Class Action Complaint and for the filing and briefing of the motion to dismiss, which dates have already been set by the Court's entry of CMO No. 1):

**CONSOLIDATED CLASS ACTION COMPLAINT**: October 2, 2020

**INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)**: Within 30 days of the Triggering Date.

**FIRST DAY TO SERVE WRITTEN DISCOVERY REQUESTS:** Within 14 days of the Triggering Date.

**PRODUCING PARTIES TO PROVIDE ORGANIZATIONAL CHARTS (IF AVAILABLE)**: 30 days after being served with the requesting Parties' first requests for production of documents.

**MOTION TO DISMISS:** December 1, 2020

**OPPOSITIONS TO MOTION TO DISMISS:** January 15, 2021

**REPLIES IN SUPPORT OF MOTION TO DISMISS:** February 15, 2021

**PARTIES TO SUBMIT DISPUTES TO COURT REGARDING ANY AREAS OF DISPUTE REGARDING DOCUMENTS TO BE PRODUCED IN RESPONSE TO REQUESTS FOR PRODUCTION**: 90 days from service of the Parties' first Requests for Production.

**ALTERNATIVE DISPUTE RESOLUTION**

> **(a)** **ADR DEADLINE PURSUANT TO ADR PLAN RULE 4.3(a)**: Within 60 days of the Triggering Date

> **(b)** **SELECTION OF MEDIATOR PURSUANT TO ADR PLAN RULE 5.4(c)**:

> **MEDIATOR'S NAME**: To be Determined.

> **ADR STIPULATION FILING DATE:** Within 60 days of the Triggering Date.

**COMPLETING FACT DISCOVERY**:

**(a)    DOCUMENT PRODUCTION**[15]

**(1)    BEGIN ROLLING PRODUCTION OF DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION**: Within 75 days of service of the relevant requests for production of documents, subject to any unresolved objections of the producing Party.

**(2)    COMPLETION OF PRODUCTION OF TRANSACTIONAL DATA IN RESPONSE TO REQUESTS FOR PRODUCTION**: Within 100 days of service of the relevant requests for production of documents, subject to any unresolved objections of the producing Party.

**(3)    COMPLETION OF DOCUMENT PRODUCTION IN RESPONSE TO REQUESTS FOR PRODUCTION**: Within 165 days of the service of relevant requests for production of documents, subject to any unresolved objections of the producing Party.

**(b)    DEADLINE FOR COMPLETION OF DEPOSITIONS**: Nineteen months after the Triggering Date.

**(c)    DEADLINE FOR SERVING INTERROGATORIES AND REQUESTS FOR ADMISSION**: Eighteen months after the Triggering Date.

**(d)    CLOSE OF FACT DISCOVERY**: Nineteen months after the Triggering Date.

**EXPERT WITNESS DISCLOSURES**

**(a)    DEADLINE TO SERVE EXPERT REPORTS ON ALL ISSUES ON WHICH A PARTY HAS THE BURDEN OF PROOF**: 60 days after the close of fact discovery.

**(b)    DEADLINE TO SERVE OPPOSING EXPERT REPORTS**: 150 days after the close of fact discovery.

**(c)    DEADLINE TO SERVE REBUTTAL EXPERT REPORTS**: 210 days after the close of fact discovery.

**(d)    DEADLINE FOR EXPERT WITNESS DEPOSITIONS**:[16] 240 days after the close of fact discovery.

---

[15] All requests for production must be served at least 45 days before the end of Fact Discovery.

[16] Absent agreement of the Parties, each expert is subject to a maximum of one deposition lasting no more than seven hours.

**DEADLINE FOR MOTIONS TO JOIN PARTIES**: 45 days before the close of fact discovery.

**MOTIONS TO AMEND PLEADINGS**: 45 days before the close of fact discovery.[17]

**MOTIONS FOR CLASS CERTIFICATION AND TO EXCLUDE EXPERTS UNDER F.R.E. 702/DAUBERT MOTIONS**: 270 days after the close of fact discovery.

**OPPOSITIONS TO MOTIONS FOR CLASS CERTIFICATION AND TO EXCLUDE EXPERTS UNDER F.R.E. 702/DAUBERT MOTIONS**: 300 days after the close of fact discovery.

**REPLIES IN SUPPORT OF MOTIONS TO EXCLUDE EXPERTS UNDER F.R.E. 702/DAUBERT MOTIONS**: 330 days after the close of fact discovery.

**REPLIES IN SUPPORT OF MOTIONS FOR CLASS CERTIFICATION**: 345 days after the close of fact discovery.

**SUMMARY JUDGMENT MOTIONS**:

>   **Plaintiffs' Position:** 405 days after the close of fact discovery.

>   **Defendants' Position:** 60 days after the Court's ruling on class certification.

**OPPOSITIONS TO SUMMARY JUDGMENT MOTIONS**: 60 days after the filing of any summary judgment motions.

**REPLIES IN SUPPORT OF SUMMARY JUDGMENT MOTIONS**: 90 days after the filing of any summary judgment motions.

**JOINT PROPOSED PRETRIAL ORDER DUE**: To be set by the Court.

**PRETRIAL CONFERENCE DATE**: To be set by the Court.

**JURY TRIAL**: To be set by the Court. The Parties will provide the anticipated trial length in the Joint Proposed Pretrial Order or at such other time as the Court directs.

---

[17] To the extent the Court permits additional Parties to be added or the pleadings to be amended fewer than 90 days before the close of fact discovery, fact discovery as to the additional Parties or amendments, as the case may be, shall be permitted until 90 days after the Court's order adding the new Parties or allowing the amendment of the Complaint.

Respectfully submitted,

Dated: September 25, 2020

By:  _s/ Benjamin A. Gastel_
J. Gerard Stranch, IV (TN BPR #23045)
Benjamin A. Gastel (TN BPR #28699)
**BRANSTETTER, STRANCH &
JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com
beng@bsjfirm.com

*Liaison Counsel for the Proposed Direct Purchaser
Class*

H. Laddie Montague, Jr.*
Eric L. Cramer*
Mark R. Suter*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Telephone: (215) 875-3000
hlmontague@bm.net
ecramer@bm.net
msuter@bm.net

Jonathan W. Cuneo***
Katherine Van Dyck***
Victoria Sims*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
kvandyc@cuneolaw.com
vicky@cuneolaw.com

Gregory S. Asciolla*
Karin E. Garvey*
Veronica Bosco*
Ethan H. Kaminsky*
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700

gasciolla@labaton.com
kgarvey@labaton.com
vbosco@labaton.com
ekaminsky@labaton.com

\* Admitted *pro hac vice*
\*\* *Pro hac vice* application pending
\*\*\* *Pro hac vice* application forthcoming

*Interim Co-Lead Counsel for the Proposed Direct
Purchaser Class*

Benjamin D. Elga***
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Brian Shearer***
Craig L. Briskin***
**JUSTICE CATALYST LAW, INC.**
718 7th Street NW
Washington, DC 20001
Telephone: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Roberta D. Liebenberg**
Jeffrey S. Istvan**
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

* Admitted *pro hac vice*
** *Pro hac vice* application pending
*** *Pro hac vice* application forthcoming

*Attorneys for the Proposed Direct Purchaser Class*

Nathan A. Bicks (TN BPR #10903)
Frank B. Thacher III (TN BPR #23925)
**BURCH, PORTER, & JOHNSON, PLLC**
130 North Court Ave.
Memphis, TN 38103
Telephone: (901) 524-5000
nbicks@bpjlaw.com
fthacher@bpjlaw.com

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)
Aubrey B. Harwell III (TN BPR #017394)
**NEAL & HARWELL, PLC**

23

1201 Demonbreun St., Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Attorneys for the Proposed Direct Purchaser Class*

Dated: September 25, 2020                    By:   /s Steven J. Kaiser

                                             George S. Cary*
                                             Steven J. Kaiser*
                                             **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
                                             2112 Pennsylvania Ave., NW
                                             Washington, DC 20037
                                             Tel: (202) 974-1500
                                             gcary@cgsh.com
                                             skaiser@cgsh.com

                                             * Admitted *pro hac vice*

                                             *Attorneys for Defendants Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashion & Supplies, LLC*

Dated: September 25, 2020    By: /s Nicole D. Berkowitz

            Grady Garrison
            Nicole D. Berkowitz
            **BAKER, DONELSON, BEARMAN,**
            **CALDWELL & BERKOWITZ, PC**
            165 Madison Ave., Suite 2000
            Memphis, TN 38103
            Tel: (901) 577-8166
            ggarrison@bakerdonelson.com
            nberkowitz@bakerdonelson.com

            *Attorneys for U.S. All Star Federation, Inc.*