# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| FUSION ELITE ALL STARS, et al., <br>     Plaintiffs, <br> v. <br> VARSITY BRANDS, LLC, et al., <br>     Defendants. | No. 2:20-cv-2600-SHL-cgc |

## PROTOCOL FOR THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

The Parties have stipulated to this Joint Stipulated Protocol for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol" or "Protocol") to facilitate discovery in this litigation.

The parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a Producing Party, notwithstanding its good-faith efforts, is unable to reasonably comply with any material aspect of this ESI Protocol, such party shall inform the Receiving Party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is unreasonable. All productions in this litigation are subject to the confidentiality order separately entered by the Court in this litigation. Nothing herein is intended to alter the parties' rights and obligations under the Federal Rules of Civil Procedure and applicable law. The parties specifically reserve all of their rights and objections to any discovery that may be served upon them in this matter.

## I. DEFINITIONS

1. A reference to "document(s)" shall include both ESI and hard-copy documents, as defined herein.

2. **"Document Family"** refers to a group of related ESI that includes parent and child documents as maintained in the ordinary course of business (e.g., a parent email and any attachments thereto).

3. **"Electronically stored information"** or **"ESI,"** as used herein, means, as referenced in the Federal Rules of Civil Procedure, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

4. **"Extracted Text"** means the text extracted from an electronic document and includes all header, footer and document body information when reasonably available.

5. **"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

6. **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer or other device on which data is or was stored.

7. **"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

8. **"Native" or "Native Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

9. **"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

10. **"Producing Party"** means or refers to any party in the litigation from which production of ESI or hard copy documents are sought.

11. **"Receiving Party"** means or refers to any party in the litigation seeking production of ESI or hard copy documents.

## II.   E-DISCOVERY LIAISONS

Each party will identify an E-discovery Liaison who will be primarily responsible for meeting and conferring concerning ESI.  Each E-discovery Liaison will:  (1) be knowledgeable about the party's e-discovery efforts; (2) be familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions, or have reasonable access to those who are; and (3) be knowledgeable about the technical aspects of e-discovery—including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology—or have reasonable access to those who are.  Each party shall designate its ESI Liaison within 10 days after entry of this Order.  Each party will provide written notice to the other parties of any changes of its designated E-discovery Liaison.

### III. PRESERVATION

The parties have taken and will continue to take reasonable steps to preserve reasonably accessible documents and data from custodians and non-custodial sources they have identified as potentially possessing relevant information that could be subject to discovery. To the extent that a party wishes to exclude a category of documents from production on the basis of proportionality or undue burden, the responding party will disclose said document category.

### IV. IDENTIFICATION AND COLLECTION OF DOCUMENTS

To the extent a discovery request calls for the production of ESI, prior to any production the parties anticipate discussing: (i) the identity and role of custodians from which documents will be obtained for the production; (ii) the identity, scope and format of custodial and non-custodial sources from which documents will be considered for production. In addition, the Producing Party shall disclose any relevant existing document retention polices and/or any document destruction schedules that may be applicable to the sources of data collected.

The Receiving Party may propose additional custodians or non-custodial sources. The Producing Party will consider in good faith such requests. If the Producing Party chooses to use search terms to filter documents for review in response to any discovery request, the Producing Party will disclose the list of search terms, date filters, or other culling methods that it intends to use. The Receiving Party may propose additional terms or culling parameters. The Producing Party will consider in good faith such requests and the burden they would impose on it. The parties will confer regarding testing of search terms.

If the Producing Party plans to use TAR, including "predictive coding," to identify or cull documents to be reviewed or produced, the Producing Party will notify the Receiving Party and will

4

provide information on the TAR review technology, process, and validation, including: (1) the Custodial Data Sources and Non-Custodial Data Sources against which TAR will be run; (2) the TAR or advanced analytics methodology being deployed; (3) the quality control measures used to validate the results of the TAR methodology or similar advanced analytics, including a validation process, (4) any Documents, Document types, file types or other categories that the Producing Party proposes to exclude from the TAR process and the method of identifying such Documents to be excluded, (5) other disclosures that are reasonably necessary for the Requesting Party to evaluate the proposed TAR process, as well as information on date filters and other culling methods.  The Receiving Party may propose additional search terms or culling parameters.  The Producing Party will consider in good faith any such proposals.

The Producing Party will disclose methodology for analysis of ESI or Hardcopy Documents which are reasonably believed to be responsive to discovery requests but for which text-based search technologies may be ineffective.

## V.     FORM OF ESI PRODUCTIONS

**Images.** TIFF Images. All responsive ESI and Hardcopy documents, except that ESI which is produced in native format pursuant to paragraph 2 of this Section, shall be produced as black and white, single-page, 300 DPI, Group IV TIFF files.  Each TIFF file should be assigned a unique name matching the Bates number of the corresponding image.  Bates numbers and confidentiality designations should be electronically branded on each produced TIFF image.  These TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.  All TIFF images shall be processed to show and reveal track changes, comments, and hidden content in Word documents and speaker notes and hidden content in PowerPoint files.

In scanning Hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). If documents were scanned previous to this case, however, and are not logically unitized, they may be produced in the format in which they were maintained. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately. The parties will make their best efforts to unitize the documents correctly and to correct any unitization failures.

Documents containing color may, but do not need to, be produced in single-page color JPEG format. If an original document contains color necessary to understand the meaning or content of the document, the Producing Party shall honor reasonable requests for a color image and/or native file of the document.

**Natives.** Responsive spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in native format, except where such files are redacted. The parties agree to meet and confer regarding producing other files in native format, if necessary and appropriate. Responsive ESI produced in native format shall be produced with Metadata described in Exhibit 1 that is contained in or associated with that file to the extent extraction of metadata is reasonably possible. Each file produced in native format shall be assigned a unique Bates number, and for each a single page placeholder TIFF image stamped with this unique Bates number, a phrase indicating that the file has been produced in native format, and the corresponding confidentiality designation under the Confidentiality Order will be produced. To the extent extracted text is available, the original document text shall be provided in a document-level

6

UTF-8 text file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file.  The relative file path to the native file in the document production shall be included in the NativePath metadata field in the *.dat file as outlined in Exhibit 1.

**Non-English Documents**.  To the extent that documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written and collected.  The Producing Party has no obligation to create a translation of the documents or any portion thereof, but a Producing Party must produce any identified English translation of Non-English documents of which it is actually aware other than translations made at the request of counsel.

**Load File Formats**. ESI will be produced with a standard Concordance (*.dat) metadata load file format and an image load file that is in .OPT format.  The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

**Metadata to be Produced**. The metadata fields detailed in Exhibit 1 will be produced for each document to the extent that such information is reasonably available and extractable, except that if a field contains privileged information or information otherwise protected from disclosure under order of Court, that information may be redacted and privileged information may be noted in a corresponding privilege log.

**Extracted Text and OCR.**  Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein:

> i. <u>Extracted Text (Emails, Unredacted Native ESI, and Natively Redacted</u>

        Spreadsheets). All email, un-redacted ESI, and natively redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, track changes, and hidden content in Word documents and speaker's notes and hidden content in PowerPoint files.

    ii. OCR (Redacted Native ESI, Hard Copy Documents). In the event a document, other than natively redacted spreadsheets, contains text that is to be redacted, OCR text files should be provided for the entire document after the redaction has been applied. Document-level OCR text files should also be provided for Hardcopy documents, PDFs that do not have embedded text, and images that the Producing Party determines are likely to contain text.

    iii. Format of Extracted Text and OCR. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

**VI.** **De-duplication**. Global de-duplication (de-duplication both within a custodian's documents and across all custodians' documents) is to be executed at the document family level. De-duplication shall be done on exact duplicate documents using family level hash values derived from industry standard hashing algorithms, such as MD5 or SHA-1 algorithms (or a reasonably equivalent alternative).

1. The parties will meet and confer regarding deduplication of paper documents across custodians.

2. No party shall remove near-duplicate documents.

3. Standalone documents shall not be de-duplicated against email attachments.

4. For exact duplicate documents, the Producing Party will produce the metadata described in Exhibit 1 for the single production copy to the extent available. If more than one custodian possesses a duplicate, the Producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document (the "All Custodians" field).

5. In the event of a rolling production of documents or ESI items, to the extent the Producing Party de-duplicates across custodians the Producing Party shall, on at least two occasions during discovery, provide overlay load files with updated Custodian and AllCustodians Metadata fields, as appropriate, to indicate custodians for any duplicate copy of a document that was not produced. The first will be made the first business day following the middle of the scheduled discovery period and these fields will be updated 30 days before the end of the discovery period, if further productions have rendered them outdated.

6. Any document containing handwritten notes, highlighting, alterations, or markings would not be considered a duplicate of another version and if responsive must be produced as an original document.

    7. If during the course of its review, a Producing Party identifies a large number of duplicate documents the Parties may confer regarding a custom deduplication protocol.

## VII. Email Threading.

Email thread suppression may be applied in production so long as portions of the thread containing unique content are not suppressed. This unique content includes thread members with BCC metadata, attachments, or edits to body of the text. If email thread suppression is used, the producing party must produce the most inclusive email thread that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. If the most inclusive email thread does not show any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc., then the emails containing such changes shall be individually produced.

## VIII. Embedded Files.

Except for de minimis images embedded in ESI which, to the extent reasonably feasible should either not be extracted or should be suppressed from production (e.g., logo images), embedded files are to be extracted and produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

## IX. Databases, Structured, Aggregated or Application Data.

The parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source, including Enterprise Resource Planning databases, and Microsoft Access and Excel-based databases.

Productions from such databases are not subject to this protocol.

## X. Parent-Child Relationships.

For email families, the parent-child relationships (the association between emails and attachments) shall be preserved. All email attachments should be consecutively produced with the parent email record. To the extent a non-ordinary course-of-business email was used to transfer over twenty-five attachments, solely for the non-substantive purpose of moving data, those attachments shall be considered standalone documents.

## XI. Time Zone.

The time zone in which the data was processed will be disclosed by the Producing Party.

## XII. Bates Numbering.

Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number, or set of numbers, should be noted with a placeholder. All attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, each TIFF image will have its assigned Bates number electronically "burned" onto the image.

## XIII. Excluded File Types.

Absent good cause shown, the parties agree that there is no need to collect ESI from the following sources:

1. Deleted, slack, fragmented, or other data only accessible by forensics

2. Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

3. On-line access data such as temporary internet files, history, cache, cookies, and the like;

4. ESI data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to disaster recovery backup tapes, continuity of operations systems, or data or system mirrors or shadows that is duplicative of data produced from other sources.

5. Server, system, or network logs.

**XIV.    Redactions**.

A Producing Party may use redactions to protect any material that is legally privileged, otherwise exempt from disclosure by law, or is non-public personal information that the Producing Party contends does not need to be disclosed.[1]  Nothing herein, however, shall be deemed to be an agreement that any particular material may properly be redacted. To the extent parties seek to redact information other than what is listed in this paragraph, they may meet and confer prior to production.  Any redactions shall be clearly indicated on the face of the document, with each

---

[1] As used herein, "non-public personal information" ("NPPI") constitutes individuals' birthdates, Social Security numbers, taxpayer identification numbers, driver's license numbers, incomes, credit card numbers, financial account numbers, banking, and any other financial information and the names and addresses of minors.

redacted portion of the document stating that it has been redacted and, unless the redaction is for NPPI, the basis for that redaction, and a metadata field shall indicate that the document contains redactions. Where a responsive family of documents contains both redacted and non-redacted content, or both produced and withheld documents, the parties shall produce the remainder of the non-redacted portions of the family of documents as TIFFs rather than natives, except for Excel spreadsheets, which may be redacted in native form, and with the text/OCR corresponding to the non-redacted portions. The Producing party shall produce a field in the DAT file denoting which documents contain redactions. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is in its own right privileged. If the documents to be redacted and partially withheld from production are Microsoft Excel–type spreadsheets or other ESI that would otherwise be produced in native format in accordance with this ESI Protocol, but must be produced in TIFF format in order to effectuate the redactions, the entire Document shall be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user. For Microsoft Excel–type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########." If the receiving party finds that the TIFF images of the Microsoft Excel–type file is illegible or formatted in such a way that the document does not resemble how it was kept in the usual course of business or requires formulas to be shown, the Parties shall meet and confer. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unprivileged

13

portions of the content.  If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unprivileged portion of the content.  The production of a document in a redacted form does not affect the producing party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.

XV.     **Encryption**.

To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced shall be encrypted.  Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection.  In such cases, the parties shall transmit the encryption key or password to a Receiving Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

XVI.    **Exception Files**.

The parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI where the document appears to contain relevant content).  To the extent encrypted or password-protected documents are successfully processed, the Parties have no duty to identify further the prior encrypted status of such documents.  To the extent security protection for such Documents and ESI that appear to be responsive to a requesting party's request cannot be successfully processed despite reasonable efforts, the producing party shall notify the requesting party about such documents.

**XVII.   Logs.**

Documents or information that are withheld from production, in whole or in part, on the basis of privilege must be disclosed on a privilege log in compliance with the requirements of Federal Rule of Civil Procedure 26(b)(5), identifying, at a minimum, to the extent such information is available in metadata:

(a) the name of the document author;

(b) the names of the document's recipients;

(c) the names of the persons to whom copies were sent;

(d) the dates the document was created, sent, and received;

(e) the custodian of the document;

(f) the type of document (email, spreadsheet, PowerPoint, etc.);

(g) a brief description of the nature and subject matter of the document

(h) a statement of the privilege asserted and each basis upon which a privilege is claimed or on which the document is withheld;

(i) an indication of whether the Document or ESI has been redacted and produced or withheld in its entirety;

(j) the Bates number or other identifier for the document; and

(k) whether the document stands alone or was an attachment.

If the forgoing information is not contained in metadata, the following information must be logged manually, to the extent reasonably available: (i) the privileged document's beginning and ending Bates or unique identifying number; (ii) an indication of whether the document or ESI has been redacted or withheld in its entirety; (iii) the custodian from whom the document was collected; (iv)

the document's author; (v) all recipients of the document; (vi) the date the document was modified or sent; (vii) the type of document (email, spreadsheet, PowerPoint, etc.); (viii) the subject matter of the material claimed and (ix) the basis for the privilege(s) and protection(s) claimed. Parties will also identify which of the individuals listed as authors or recipients are attorneys, to the extent relevant to assess the privilege claim.

The parties agree to provide privilege logs as soon as practicable, but in any event, in at least three installments 1) no later than 60 days after the Producing Party's first production (i.e., 135 days after service of Requests for Production), 2) ninety days thereafter; and 3) 90 days before the court-ordered fact discovery cutoff, on which date all privilege logs must be complete.  Privilege logs for each agreed (or court-ordered) custodian must be complete 10 days before the custodian's deposition.

Documents presumptively not to be logged on a privilege log include: (a)  Communications exclusively between a party or its representative(s) and its trial counsel after the commencement of this litigation; and/or (b) Work product created by counsel or at the direction of counsel after commencement of this litigation.

## XVIII.    Hard Copy Documents

In addition to ESI addressed by this stipulation, the Producing Party shall perform a reasonable and diligent search to locate relevant non-ESI (i.e., paper documents, devices, prototypes, etc.) for the identified custodians and other relevant non-custodial sources, where appropriate, following a reasonable and diligent investigation.

**XIX.   Miscellaneous Provisions**

1.   **Effect of Order**. The parties' agreement to this Protocol is without prejudice to the right of any party to seek an order from this Court to rescind or amend this order for good cause shown.  Nothing in this Protocol abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

2.   **Effect on Discovery.** Nothing herein constitutes an admission by any party that any particular category of discovery is appropriate in this matter or that there exists producible ESI.

**IT IS SO ORDERED,** this 29th day of October, 2020.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE