# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

FUSION ELITE ALL STARS et al.,

          Plaintiffs,

   v.

VARSITY BRANDS, LLC et al.,

       Defendants.

**Civ. Action No. 2:20-cv-2600**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS AND ALLEGATIONS REGARDING SEXUAL ABUSE**

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................... 1

Factual Background ............................................................................................................... 2

Argument ............................................................................................................................... 4

    I.    Where the Complaint on Its Face Reveals No Class Can Be Certified, the Class Allegations Should Be Stricken ..................................................................................... 4

    II.   The Proposed Class Cannot Be Certified Because Of Myriad Internal Class Conflicts and Because Harm Cannot Be Shown Through Common Proof ...................................................... 5

        A.   The Proposed Class Is Rife With Disabling Internal Conflicts ....................................... 6

        B.   Because Harm Cannot Be Shown by Common Proof, Individual Issues of Fact Predominate ............................................................................................................... 8

    III.   Plaintiffs' Complaint Negates Any Injunctive Relief Class Under Rule 23(B)(2) ........ 11

    IV.   The Proposed Class Has Many Members Who Lack Standing ..................................... 12

    V.   Plaintiffs' Sexual Abuse Allegations If Anything Implicate Potential Class Members and Are Irrelevant to the Case ....................................................................................... 13

Conclusion ......................................................................................................................... 14

**<u>TABLE OF AUTHORITIES</u>**

**Federal Cases**

*Allstate Ins. Co. v. OMIC, LLC*,
  No. 17-13908, 2018 WL 8806551 (E.D. Mich. Sept. 24, 2018).............................................13

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003).................................................................................................8

*Bieneman v. City of Chicago*,
  864 F.2d 463 (7th Cir. 1988)..................................................................................................6

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...............................................................................................................10

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008).................................................................................................8

*Llewellyn-Jones v. Metro Prop. Grp., LLC*,
  22 F. Supp. 3d 760 (E.D. Mich. 2014).................................................................................13

*Loreto v. Procter & Gamble Co.*,
  No. 09-cv-815, 2013 WL 6055401 (S.D. Ohio, Nov. 15, 2013) ...............................4-5, 12-13

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011).................................................................................................4

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)..............................................................................................................13

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015).................................................................................................8

*Rikos v. Procter & Gamble Co.*,
  No. 11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012)..................................................4

*Romberio v. Unumprovident Corp.*,
  385 F. App'x 423 (6th Cir. 2009).........................................................................................12

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................................4

*Shumacher v. State Auto. Mut. Ins. Co.*,
   No. 13-cv-00232, 2015 WL 421688 (S.D. Ohio Feb. 2, 2015) .................................................4

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) ...................................................................................................6, 9

*Sutton v. St. Jude Med. S.C., Inc.*,
   419 F.3d 568 (6th Cir. 2005) ......................................................................................................12

*Swan ex rel. v. Bd. of Educ. of City of Chicago*,
   No. 13 C 3623, 2013 WL 4047334 (N.D. Ill. Aug. 9, 2013) .....................................................12

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ....................................................................................................6

**Federal Statutes**

15 U.S.C. § 15(a) ...............................................................................................................................13

**Other Authorities**

Fed. R. Civ. Pro. 12(f) .......................................................................................................................13

Fed. R. Civ. Pro. 23 ............................................................................................................... *passim*

Defendants Varsity Brands, LLC ("Varsity Brands"); Varsity Spirit, LLC ("Varsity Spirit"); and Varsity Spirit Fashions & Supplies, LLC ("Varsity Fashions," and, with Varsity Brands and Varsity Spirit, "Varsity") and U.S. All Star Federation ("USASF") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to strike Plaintiffs' class allegations and allegations relating to sexual abuse in the cheerleading industry.

## INTRODUCTION

Where the allegations in the complaint demonstrate that a proposed class is incapable of being certified, courts do not have to wait for a motion for class certification. In such circumstances, courts can, should, and, with increasing frequency, do strike the class allegations in the complaint.

That is precisely what should happen here. The class is far too disjointed and wide-ranging to satisfy the requirements for certification and has inherent and irreconcilable conflicts within it. It seeks to lump into a single class a hodgepodge of individuals and entities that only have in common that they paid something to one of the numerous defendants at some time over the last four and a half years for products and services ranging from entry fees for cheerleading competitions, to backpacks, to spectator tickets. It includes gyms that paid thousands of dollars a year to Varsity Brands to participate in competitions, as well as individuals who purchased a single article of clothing from Varsity Spirit and Varsity Fashions. The Complaint contains numerous allegations of acts that apply only to purchasers of a subset of the products and services at issue: an individual who once bought a hair bow from Varsity Fashions rather than Target does not have a claim that is typical of those of a gym that purchases entrance to Varsity Brands' events for thousands of dollars. Perhaps most importantly, taken at face value, the allegations in the Complaint confirm that many class members *benefitted* from the very conduct

1

that Plaintiffs label "illegal" and "anticompetitive."  For example, Plaintiffs complain of rebate programs and paid bids to certain events that Varsity made available to some gyms but not others.  But the proposed class includes *recipients* of those rebates and paid bids as well as those that did not receive them.  In other words, the very parties that *benefitted* from these programs are in the same class as those who complain they were injured by them.  Ultimately these inherent conflicts among class members and the impossibility of proving harm on a class-wide basis given the variety of conduct challenged and purchasers implicated, preclude any possibility of class certification.

Separately, in what is now their fourth Complaint, Plaintiffs for the first time added allegations relating to sexual abuse in the cheerleading industry.  These allegations are not germane to Plaintiffs' antitrust claims and should be recognized for what they are:  an attempt to embarrass and scandalize.  Plaintiffs' only hook to their claims is the attenuated speculation that, if Varsity had a lower market share or faced "effective competition," it would have "take[n] action" to stop others—primarily the very gyms that are members of Plaintiffs' proposed class— from employing "sex offenders."  (Compl. ¶ 241.)  These allegations further exacerbate the conflicts in the class as the allegations relate to inappropriate activities by members of Plaintiffs' proposed class and, in any event, have no place in an antitrust case.  Plaintiffs themselves have refused to provide any discovery on the issue, labelling it "irrelevant."

## FACTUAL BACKGROUND

The named Plaintiffs are three gyms in California, Florida, and Michigan that each sponsor one or more All Star Teams, and three parents of current or former All Star cheerleaders who allegedly financially supported their respective child's participation in All Star cheerleading.  (Compl. ¶¶ 29-34.)  Plaintiffs assert claims of monopolization and conspiracy to

monopolize two separate alleged relevant markets, the so-called "All Star Competition" and "All Star Apparel" markets.  (*Id.* ¶¶ 232-51.)

Plaintiffs seek to represent a *single* class comprised of "[a]ll natural persons or entities in the United States that directly paid Varsity or any wholly or partially owned Varsity subsidiary ... for:  (a) registration, entrance, or other fees and expenses associated with participation by an All Star Team or Cheerleader in one or more All-Star Competitions; and/or (b) All Star Apparel." (Compl. ¶ 40.)  Plaintiffs define All Star Apparel to be "specialized clothing such as uniforms, warm-up outfits, and team jerseys; and specialized accessories such as hair bows and headbands; and specialized equipment such as backpacks and shoes."  (*Id.* ¶ 142.)

The Complaint confirms that different members of this proposed class were differently situated.  For example, Plaintiffs allege that some gyms received "fully" or "partially" "Paid Bids" to certain All Star Competitions from Defendants.  (Compl. ¶¶ 88, 210.)  Others received only "At-Large" bids and were required to pay their own way.  Plaintiffs' proposed class includes recipients of those subsidies.  Similarly, Plaintiffs allege that Varsity offered discount and loyalty programs to some gyms and not others.  Among the gyms receiving discounts, some received greater discounts than others.  (*Id.* ¶ 176.)  But the proposed class includes gyms that received large discounts, small discounts, and no discounts at all.  In attacking these discounts, Plaintiffs seek in effect to raise prices to those class members that receive them.  The Complaint also alleges that Varsity does not allow third parties to sell apparel at Varsity events.  (*See id.* ¶¶ 110, 153, 190.)  If Plaintiffs' attack on that practice were to succeed, the cost of admission for spectators and participants could increase to compensate for the loss of apparel sales.

## ARGUMENT

**I.      Where the Complaint On Its Face Reveals No Class Can Be Certified, the Class Allegations Should Be Stricken**

"Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming striking of class allegations).  "'Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required.'" *Shumacher v. State Auto. Mut. Ins. Co.*, No. 13-cv-00232, 2015 WL 421688, at *2 (S.D. Ohio Feb. 2, 2015) (striking class allegations) (quoting *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011).

Where it is clear that Rule 23's requirements cannot be met, the class allegations should be stricken and the case should proceed as an individual action.  *See, e.g.*, *Loreto v. Procter & Gamble Co.*, No. 09-cv-815, 2013 WL 6055401, at *2-3 (S.D. Ohio, Nov. 15, 2013) (striking class allegations where the proposed class lacked Article III standing, was overbroad, and was predominated by individual issues because "further discovery and briefing on the certification issue would simply postpone the inevitable conclusion that the putative class cannot be certified"); *Rikos v. Procter & Gamble Co.*, No. 11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012) ("Either party may freely move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations where other courts had denied class certification motions as to similar types of claims).

4

## II.   The Proposed Class Cannot Be Certified Because of Myriad Internal Class Conflicts and Because Harm Cannot Be Shown Through Common Proof

Plaintiffs request that a class be certified under Rules 23(a), 23(b)(2) and (b)(3) (Compl. Prayer for Relief), but their allegations fail at several points under those very rules.  The obvious conflicts that run rife through the proposed class make it impossible for the claims of the representative parties to be "typical of the claims … of the class," Fed. R. Civ. Pro. 23(a)(3) or that the proposed representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4).  These conflicts include conflicts among those gyms and competitors that took advantage of Varsity's discount plans, received fully-paid bids, or ever attended higher-level competitions and those that did not.  Similarly, because some members of the proposed class benefitted from the actions that Plaintiffs are complaining about and many others were not even subject to them, Plaintiffs cannot show harm by common proof, which under settled precedent means that "questions of law or fact common to class members" do not "predominate over any questions affecting only individual members."  Fed R. Civ. Pro. 23(b)(3).  For similar reasons, the Defendants have not "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. Pro. 23(b)(2).  Indeed, were Plaintiffs to succeed in ending Varsity's discount and sponsorship programs, as is their aim, many gyms and cheerleading competitors—members of the proposed class—would be worse off, not better off.

Because the class allegations on the face of the Complaint do not meet the requirements of Rule 23 and there is no prospect that discovery aimed at proving the allegations in the Complaint will remedy the defects in Plaintiffs' proposed class, there is no reason to delay the class determination.  Plaintiffs' class allegations should be stricken at the outset, before expensive and time-consuming discovery.  *See, e.g.*, *Loreto*, 2013 WL 6055401, at *2 ("A court

may properly strike class allegations prior to discovery where discovery would not have alter[ed] the central defect in th[e] class claim.") (internal quotations omitted).

### A.  The Proposed Class is Rife with Disabling Internal Conflicts

A class with internal conflicts of interest among class members cannot be certified.  *See, e.g., Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (affirming denial of class certification because putative class members had interests that are "antagonistic to one another"). "[N]o circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class."  *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (vacating district court's certification of a class because some members of the class benefitted from defendants' allegedly anticompetitive conduct); *see also Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (denying class certification because some members of the alleged class "undoubtedly derive[d] great benefit" from the challenged conduct).

Conflicts of this nature are inherent in the proposed class, including among gyms, between gyms and individuals, and among individuals, all of which would be members of the proposed class.  For example, one of Plaintiffs' core allegations of anticompetitive conduct relate to Varsity's rebate programs, the Network Agreement and the Family Plan.  Under Network Agreements, the "most significant and big-money All Star Gyms" receive "increasing rebate percentages" based on the amount they spend on Varsity events.  (Compl. ¶¶ 174-75.)  The Family Plan also provides rebates for participating gyms that commit to doing a significant amount of business with Varsity.  (*Id.* ¶¶ 15, 139, 181.)  Gyms that received discounts under these plans benefitted from them and cannot be represented by gyms that did not because their interests are antagonistic.  Similarly, Plaintiffs allege that some gyms received fully-paid trips to the higher-level All Star competitions, to the disadvantage of gyms that did not.  (*Id.* ¶ 88.)

6

Gyms that received the benefit have antagonistic interests to gyms that did not, and they cannot be represented by such gyms which would through this action seek to establish the illegality of the practice.  Likewise, some gyms had teams that went to the higher-level meets, some gyms did not.  A gym that received the benefits of attending a higher-level competition benefitted from the system that Plaintiffs seek to attack and its interests are therefore antagonistic to this lawsuit.

Conflicts abound between gyms and individuals as well.  For example, Plaintiffs challenge Varsity's practice of charging admission fees at Varsity events.  (Compl. ¶ 230.)  But such fees offset the cost of the events that gyms pay.  Without them, gyms could pay more in entry fees.  Likewise, to the extent that eliminating Network Agreements and the Family Plan would somehow benefit gyms, it could be to the detriment of their customers, who could have to pay more for participation in the gyms' All-Star cheerleading programs.  Most or all of these individual customers would be members of Plaintiffs' proposed class.

Similar conflicts exist among the individuals who would be members of the proposed class.  Putative class members who participated in the higher-level competitions, or received fully- or partially-paid trips, cannot be fairly represented by those that did not.  Likewise, spectators who paid admission fees, which offset the cost of competitions for participants, cannot be fairly represented by parents of cheerleaders (or gyms) that benefitted from these fees being collected.

Plaintiffs' sexual abuse allegations also create conflicts.  A class that allegedly consists of gyms associated with sex offenders and gyms that were not, and that bases its theory of harm in part on the presence of sex offenders among the class, is inherently conflicted.

7

**B. Because Harm Cannot Be Shown by Common Proof, Individual Issues of Fact Predominate**

Plaintiffs' proposed class also cannot be certified because the fact of injury to each member of the proposed class—an essential element of any antitrust claim—cannot be shown by common proof.  *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 522 (6th Cir. 2015) (concluding that plaintiffs must "show at the class-certification stage 'that they *can prove*, through common evidence, that all class members were in fact injured by the alleged conspiracy'") (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008) ("[T]he task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members."); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("[W]e have repeatedly held that where fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance.")  Courts reject such classes because "questions of law or fact common to class members" do not "predominate over any questions affecting only individual members" as required by Fed. R. Civ. Pro. 23(b)(3).

Although Plaintiffs assert in conclusory fashion that "questions of law and fact common to the Class predominate over any questions affecting only individual Class members" (Compl. ¶ 48), their actual allegations demonstrate the opposite.  Thus, even if discovery were to corroborate their factual allegations, no class could be certified.  Unlike in garden-variety price fixing cases, where all purchasers will have paid more as a result of the price fixing, here the heart of Plaintiffs' antitrust claim is their allegation that Varsity *discounted* to some class members but not others, had a system of bids to prestigious events that *were awarded* to some

8

class members but not others, and charged for spectator admission at some events but not at others.  (*Id.* ¶¶ 87-88, 161, 174-75, 230.)  Moreover, this case involves numerous products and services that some class members may have purchased or utilized while many others did not.  Establishing which, if any, class members were harmed based on their purchases will be an individualized inquiry that is not susceptible to common proof.

Plaintiffs' class is so sprawling—drawing in any person or entity that paid Varsity for "registration, entrance, or other fees and expenses associated with participation by an All Star Team or Cheerleader in one or more All-Star Competitions; and/or" "specialized clothing such as uniforms, warm-up outfits, and team jerseys; and specialized accessories such as hair bows and headbands; and specialized equipment such as backpacks and shoes" (Compl. ¶¶ 40, 142)—that common proof of harm will be impossible.  For example, one member of the proposed class (a spectator at a competition for example) may have purchased a t-shirt or paid a single entrance fee, while another (for example a gym that sponsors an All Star team) may have paid thousands of dollars in registration fees, but never purchased a hair bow.  Some individuals purchased apparel, some paid entrance fees, some both.  Some purchased some types of apparel but not others.  Some may have purchased more specialized apparel such as competition uniforms while others purchased generic items like backpacks.  Meanwhile, some gyms purchased apparel from Varsity, some only paid registration fees and purchased apparel from other suppliers.  Some paid for travel, some did not.  Each class member would have a different interest in pursuing and emphasizing each issue, making class certification impossible.  *See also Stout*, 228 F.3d at 718 (concluding that class certification was inappropriate because, among other things, "the named Plaintiffs' claims arise from different transactions and alleged injury, therefore causing absent class members to potentially lose the benefit of having the facts of their separate cases

9

adequately presented"). And, for each class member, specific purchases will need to be assessed to see if the member has been harmed as a result of any particular conduct that is deemed to violate the antitrust laws.[1]

Plaintiffs' allegations about the Network Agreement and Family Plan programs further demonstrate that harm cannot be shown by common proof. Plaintiffs label these agreements as exclusionary and as contributing to Varsity's alleged monopoly power. Nowhere do Plaintiffs allege that participation in these programs is not voluntary. Members of the proposed class that participated in those programs self-evidently benefitted from doing so and taking them away would harm those members of the proposed class. The effect these discounts have on whether a particular class member has been harmed therefore will require an individualized inquiry.

Plaintiffs' allegations about bids to high-level competitions similarly establish that harm cannot be proven through common proof. Plaintiffs make much of Varsity's alleged ability to determine which competitions can award "bids" to three particular "championship" events. (Compl. ¶¶ 207-10.) But within the proposed class, some teams (and their members) were awarded bids, and some were not. Those class members that were awarded bids, something Plaintiff alleges was of great value (see id. ¶¶ 86-87), are in a very different position than those who were not. Insofar as participation in these events is, in Plaintiffs' estimation, one of the very

---

[1] Moreover, in order to prevail on behalf of the class, Plaintiffs would at a minimum be required to prove that all of the acts they say were illegal were actually illegal or demonstrate which members of the class were injured by which allegedly illegal acts and to what extent, so that any such act judged not to be illegal does not contribute to any class damage award. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34-38 (2013). That would be virtually impossible given the diversity of the proposed class, which includes gyms, participants, spectators, apparel buyers, and others, and the equally broad set of allegations, some of which are specific to some products and services and allegedly impact some types of class members but not others. This is another reason to dispense with the class now rather than pursue an exercise that is inevitably doomed to fail.

purposes (if not the very purpose) of All Star cheerleading in the first place (*see id.* ¶¶ 136, 210), those that participated received the benefit of doing so, which meant they were not harmed by the conduct which allegedly prevented others from doing so.  Moreover, much of the harm that Plaintiffs allege as to individuals—spectator fees and required travel package purchases—relates to participation in these higher-level meets or in other higher-level meets.  But only a very small percentage of class members actually participated in these events and paid these expenses.  Individualized determinations must therefore be made in assessing the impact of the alleged conduct on different class members.

So, too, as to Plaintiffs' sexual abuse allegations.  Plaintiffs allege that, in a world where Varsity had lower "market share" or faced "effective competition," it would have taken steps to put gyms that were associated with sexual abusers out of business, which of course would have *harmed* those gyms as putative class members in terms of antitrust injury.  The fact that Varsity allegedly did *not* do so therefore, by definition, *benefitted* those class members.  Thus, to determine whether a gym was harmed or not by the conduct complained of in the Complaint, the particular gym's relationship with sex offenders would need to be assessed.  Such an assessment would be individual by its nature.

### III.    Plaintiffs' Complaint Negates Any Injunctive Relief Class Under Rule 23(b)(2)

Plaintiffs' allegations likewise undermine any possibility of an injunctive relief class under Rule 23(b)(2).  Plaintiffs seek "such equitable and injunctive relief as is necessary to correct for the anticompetitive market effects caused by Defendants' unlawful conduct." (Compl. Prayer for Relief.)  Plaintiffs contend, however, that providing discounts to certain class member gyms and teams but not others, awarding bids to certain class member gyms and teams but not others, and in some cases paying for certain gyms and teams to attend certain competitions but not others, is unlawful conduct.  As explained above, Defendants' various

alleged actions, including fully- and partially-paid bids and discounting and rebate programs, benefitted many members of the proposed class and an injunction prohibiting those programs would harm them.  Injunctive relief on a class-wide basis would therefore not be appropriate. *See, e.g.*, *Swan ex rel. v. Bd. of Educ. of City of Chicago*, No. 13 C 3623, 2013 WL 4047734, at *13 (N.D. Ill. Aug. 9, 2013) (denying class certification under Rule 23(b)(2) because the injunctive relief sought would not "provide relief that would benefit the entire putative class," and because "whether their requested relief would benefit or harm each putative class member would require an individualized determination").

### IV.    The Proposed Class Has Many Members Who Lack Standing

"The Article III standing requirements apply equally to class actions."  *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005); *see also Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) ("Where a class definition encompasses many individuals who have no claim at all to the relief requested … the typicality premise is lacking").  "[A] class cannot be certified if any members in the class would lack Article III standing."  *Loreto*, 2013 WL 6055401, at *3 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 612-13 (1997)).  "An individual has Article III standing only if he suffered an injury-in-fact that is causally connected to a defendant's alleged wrongdoing."  *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

As the discussion in the previous sections demonstrate, there are many members of the proposed class that did not suffer any injury-in-fact and in fact benefitted from the discounting, rebating and paid-bid programs that Varsity employed.  Furthermore, many members of the proposed class did not purchase a product in one or the other of the two relevant markets alleged, and therefore would not have been damaged through conduct related to that market.  A class cannot be certified with unharmed members.  *Loreto*, 2013 WL 6055401, at *3.

V.    **Plaintiffs' Sexual Abuse Allegations if Anything Implicate Potential Class Members and Are Irrelevant to the Case**

Separate and apart from Plaintiffs' class allegations, Plaintiffs' allegations relating to sexual abuse should likewise be struck.  "The court may strike from a pleading … any immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Pro. 12(f); *see also Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 777 (E.D. Mich. 2014) (striking plaintiffs' allegations that defendants were involved with a terrorist group as "immaterial and impertinent to the plaintiffs' claims" of fraud and RICO violations and finding that "the allegations apparently were included to inflame a factfinder, without contributing to the conventional claims the plaintiffs try to raise"); *Allstate Ins. Co. v. OMIC, LLC*, No. 17-13908, 2018 WL 8806551, at *3-4 (E.D. Mich. Sept. 24, 2018) (striking allegations relating to defendants' personal relationships, past finances, and past employment as unrelated to healthcare fraud claims).

Plaintiffs only added their abuse allegations in what is now their fourth complaint.  They reference an article in USA Today that discussed how gyms—*i.e.*, members of Plaintiffs' putative class—were allowed to be owned by, to be managed by, or to employ sex offenders. (Compl. ¶¶ 238-239.)  But Plaintiffs' conclusory assertion that gyms' involvement with sex offenders was somehow due to Varsity's alleged "market share and lack of effective competition" is not supported by any factual allegation at all.  Nor could it support a claim under the antitrust laws, which require an injury in "business or property" to have standing.  15 U.S.C. § 15(a); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("The phrase 'business or property' … retains restrictive significance [and] would, for example, exclude personal injuries suffered.")

It is therefore hard to imagine more "immaterial, impertinent, [and] scandalous" matter as these allegations.  The allegations have no place in an antitrust suit, especially when, as much as

anything, they implicate members of the class that Plaintiffs seek to represent.  Moreover, allowing the case to expand into the treatment of sex offenders in the industry would require large amounts of sensitive discovery of Plaintiffs and the gyms in the putative class, as well as the individual athletes and parents in the putative class.  Plaintiffs have issued *twelve* separate document requests relating to this topic, including, for example, "documents sufficient to identify any of Your workers, employees, or contractors, or Gym owners, coaches, choreographers associated with any of your Events [since 2004], that have been convicted of sex crimes against minors, including those whom are registered as sex offenders."  At the same time and confirming that these allegations have no place in this suit, Plaintiffs have taken the position that information in *their* possession, custody, and control relating to sexual abuse is "not relevant to the claims or defenses in this litigation."  (Declaration of Steven J. Kaiser, Exh. A.)

The allegations relating to sexual abuse should be stricken from the Complaint.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike Plaintiffs' class allegations and allegations relating to sexual abuse (specifically, paragraphs 40-50 and 237-241, respectively, and that portion of Plaintiffs' claim for relief that relates to the putative class).

Dated: December 1, 2020

Respectfully submitted,

By: s/ Matthew S. Mulqueen

George S. Cary*
Mark W. Nelson*
Alexis Collins*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone:  (202) 974-1500
Fax:  (202) 974-1999
gcary@cgsh.com
mnelson@cgsh.com
alcollins@cgsh.com
skaiser@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC; Varsity Spirit
Fashions & Supplies, LLC; and Varsity Spirit, LLC*

By: s/ Nicole D. Berkowitz

Grady Garrison (TN #008097)
Nicole D. Berkowitz (TN #35046)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*

15