UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

FUSION ELITE ALL STARS et al.,

        Plaintiffs,
  v.

VARSITY BRANDS, LLC et al.,

        Defendants.

**Civ. Action No. 2:20-cv-2600**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS AND ALLEGATIONS REGARDING SEXUAL ABUSE**

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................... 1

**RESPONSE TO PLAINTIFFS' STATEMENT OF "FACTS"** ............................................ 1

**ARGUMENT** ............................................................................................................................ 3

    I.     The Complaint Establishes Obvious and Fundamental Conflicts in the Class ........... 3

    II.    Plaintiffs Fail to Address the Impossibility of Common Proof of Harm ..................... 5

    III.   Plaintiffs In Effect Concede that Injunctive Relief Cannot Be Granted .................. 7

    IV.   Plaintiffs Miss the Point on "Standing" ..................................................................... 7

    V.    Plaintiffs' Reply Confirms the Sexual Abuse Allegations Should be Struck ............ 8

**CONCLUSION** ......................................................................................................................... 9

## TABLE OF AUTHORITIES

**Federal Cases**

*Cascade Health Sols. v. PeaceHealth*,
 515 F. 3d 883 (9th Cir. 2008) ................................................................................................6

*Castro v. Sanofi Pasteur Inc.*,
 134 F. Supp. 3d 820 (D.N.J. 2015) ........................................................................................6

*Collins Inkjet Corp. v. Eastman Kodak Co.*,
 781 F.3d 264 (6th Cir. 2015) .............................................................................................2, 6

*In re Papa John's Emp. and Franchise Emp. Antitrust Litig.*,
 No. 18-CV-00825, 2019 WL 5386484 (W.D. Ky. Oct. 21, 2019) .........................................9

*LePage's, Inc. v. 3M*,
 324 F.3d 141 (3d Cir. 2003) (en banc) ..................................................................................6

*Loreto v. Procter & Gamble Co.*,
 No. 09-cv-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) .............................................7

*Macy v. GC Services Ltd. P'ship*,
 318 F.R.D. 335 (W.D. Ky. 2017) ...........................................................................................7

*Romberio v. Unumprovident Corp.*,
 385 F. App'x 423 (6th Cir. 2009) ...........................................................................................7

*Ross v. Bank of America, N.A. (USA)*,
 524 F.3d 217 (2d Cir. 2008) ...................................................................................................9

Defendants Varsity Brands, LLC ("Varsity Brands"); Varsity Spirit, LLC ("Varsity Spirit"); and Varsity Spirit Fashions & Supplies, LLC ("Varsity Fashions," and, with Varsity Brands and Varsity Spirit, "Varsity") and U.S. All Star Federation ("USASF") (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to strike.

## INTRODUCTION

Plaintiffs rely almost entirely on their conclusory assertion that "*all* class members are aligned in seeking to recover . . . overcharges . . . and *all* class members seek to stop the same anticompetitive conduct." (Pls.' Br. at 1.) But therein lies the problem—as amply demonstrated in Defendants' opening brief and as is apparent on the face of the Complaint, "all" class members are *not* aligned. Plaintiffs' own allegations establish this and, where the Complaint itself establishes that no class can be certified, courts have not hesitated to strike class allegations. Plaintiffs do not argue otherwise.

As to Plaintiffs' late-added allegations relating to sexual abuse, based on an article about such abuse in the gyms that Plaintiffs themselves seek to represent, Plaintiffs have no real response at all, either to the fact that sexual abuse in the gyms only exacerbates the fatal infirmities inherent in their proposed class that includes such gyms or to the fact that the allegations are irrelevant to the Plaintiffs' claims and are the exact sort of spurious allegations that courts routinely strike from complaints, as should happen here.

## RESPONSE TO PLAINTIFFS' STATEMENT OF "FACTS"

Plaintiffs' recitation of "facts" (*see* Pls.' Br. at 1-5) that are irrelevant to the motion is telling in its own right. That they feel the need to distort and misrepresent the facts as alleged in their own Complaint is even more so. For example, Plaintiffs label Varsity's rebates and loyalty

1

discounts as "penalties," as if a customer of Varsity is forced to pay above the "sticker" price for competitions or events at Varsity's retaliatory whim.  That is both untrue and not alleged anywhere in the Complaint.  Rather, Plaintiffs and the gym members of the class they seek to represent have the choice of obtaining greater rebates the more they attend Varsity's events.  They may choose to avail themselves of those rebates or not.  No one is "forced" to do anything and no one is penalized other than in the sense that anyone who does not meet the requirements for a rebate does not get the rebate.  And, as discussed in greater detail in Defendants' reply in support of their motions to dismiss, controlling Sixth Circuit precedent establishes that Plaintiffs allege nothing that could make those programs actionable under the antitrust laws.  The only case Plaintiffs cite is from a case from the District of Massachusetts (*see* Pls.' Br. at 4 n.5) that predates the Sixth Circuit's definitive ruling on the issue in *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264 (6th Cir. 2015), which holds that discounts that do not result in below-cost pricing are not actionable under the antitrust laws.  Ultimately, Plaintiffs play word games, seeking to apply the harsh-sounding word "penalty" to what the allegations in the Complaint reveal are run-of-the mill lawful rebates.

       Plaintiffs also misrepresent the nature of the Court's scheduling order.  The order does not require that class certification "would be adjudicated *after the close of fact and expert discovery*" (Pls.' Br. at 2), but rather sets an outside deadline by which Plaintiffs have to move for class certification.  The fact that that deadline is September 16, 2022 (*see* ECF No. 61) and that a motion filed on that date presumably would not be resolved at least several months after that, emphasizes the need for early intervention here where the Complaint itself makes clear that the alleged class cannot be validly certified.

2

As to sexual abuse, Plaintiffs do address the fact that their allegations of sexual abuse—added only to the fourth iteration of their Complaint—are based on a news report about cheerleading *gyms* that are either owned by abusers or that employ abusers as coaches or in other roles. Of course, these gyms are members of Plaintiffs' putative class. In the end, as important as the issue is in the proper context, here the sexual abuse allegations are a distraction that if anything cut against class certification as they pit some gyms against others, with Plaintiffs inappropriately seeking to use the issue as an extortion club against Varsity and USASF.

## ARGUMENT

### I.   The Complaint Establishes Obvious and Fundamental Conflicts in the Class

Plaintiffs concede that a "fundamental conflict will defeat" class certification. (Pls.' Br. at 9.) They try but fail to avoid the obvious fundamental conflicts in their class by, for example, arguing that the rebates that some gyms but not others receive are "illusory." (Pls.' Br. at 9.) But Plaintiffs do not allege that no gyms receive rebates; indeed, the core allegation of their case is that the rebates that *some* gyms receive are all-critical to Varsity's alleged ability to "monopolize" the "market" for "All Star competitions" and "All Star apparel." (Compl. ¶¶ 107, 175.) Plainly the gyms that receive the rebates have an entirely different interest in the rebates than those that do not. Indeed, Plaintiffs acknowledge as much, quoting their main case as stating that "most of the harm of individualized agreements is externalized onto those who are not party to that particular agreement." (Pls.' Br. at 4 n.5 (quoting *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l Ltd.*, 247 F.R.D. 253, 272 (D. Mass. 2008).) Ultimately, Plaintiffs ask the Court to assume away this issue based on conclusory allegations that "all" gyms were illegally overcharged, even though their main case says the opposite—that the effect of bundled discounts are "externalized" to those that do not receive the discounts. In other words, those that receive

3

the discounts benefit at the expense of those that do not. Gyms on both sides of that line should not be in the same class.

Plaintiffs also try to run away from their own allegations about bids for Varsity's championship meets. Confronted with their allegations that the current system—which the Complaint suggests they seek to dismantle root and branch—provides fully paid trips to certain gyms and class members, but not others, Plaintiffs disclaim any desire to change *that* aspect of the system. (Pls.' Br. at 10.) Indeed, they in effect concede that some members of the class would be harmed if free trips went away. Yet the relief they seek inevitably would harm those gyms and participants—putative class members all—that benefit from them.

Similarly, Plaintiffs say that they do not "challenge the practice of splitting competitions by quality level" (Pls.' Br. at 10), but that is exactly what they seek to do by asserting that Varsity and USASF should not be permitted to control access to their higher-level meets through control of the awarding of bids. In that regard, one thing that Plaintiffs apparently seek on behalf of the putative class is to disallow Varsity from specifying which teams will be invited to attend its *own* Summit and U.S. Finals championship meets. Plaintiffs ask the Court to accept the illogical conclusion that with Varsity not controlling access to its own meets, the *very same gyms* would receive the *very same bids*. Common sense dictates otherwise and the gyms that would lose out in Plaintiffs' world should not be in the same class as those that would receive bids. Nor should participants who would receive paid bids be in the same class as those who would not.

Plaintiffs accuse Defendants of ignoring economics, but in reality, that is what Plaintiffs do. For example, Plaintiffs—at least when they have on the hat of "competition spectator"—want to reduce or eliminate spectator fees. That of course is of no interest to Plaintiffs when they have on the hat of "the gyms," which do not pay spectator fees but would stand to have their

4

registration fees increased to make up the loss of revenue from spectator fees. It is worth noting in that regard that these two groups were not originally in this case together. Rather, they were merged together in an alliance among Plaintiffs' counsel only when the case was refiled in this Court. And even now Plaintiffs concede that these two groups are very different: "[g]yms pay Varsity for entry fees and directly buy the full range of Apparel," while "[p]arents generally only pay spectator fees, but may on occasion buy Apparel directly." (Pls.' Br. at 16 n.13.) The interests of these two groups are plainly disparate—as Plaintiffs concede, they do not even purchase the same products and services—and at a minimum they should not be in the same class.

## II.     Plaintiffs Fail to Address the Impossibility of Common Proof of Harm

Plaintiffs do not dispute that common proof of harm is essential for class certification in an antitrust case. Plaintiffs cite no case certifying a class comprised of plaintiffs at two levels of distribution, with completely different relationships with the Defendants and who purchase almost completely different products and services. In other words, one set of putative class members here are seeking to recover damages relating to competition entry fees and apparel, while the other is seeking to recover damages relating almost entirely, if not entirely, to spectator fees. Given the dichotomy between the theories of harm in the first instance and the products and services at issue, harm to this "class" self-evidently cannot be shown by common proof applicable to the entire class.

Plaintiffs otherwise double-down on their failed arguments regarding conflicts in their effort to address the obvious impossibility of common proof of harm. Indeed, in one passage, Plaintiffs say that they allege that "all Class members would pay lower prices without the Scheme." (Pls.' Br. at 14.) But, at the same time, they concede that some members of the putative class pay nothing because they receive free bids (and travel expenses) to prestigious

5

upper-level competitions. They further concede that many class members receive substantial financial benefits from Varsity's rebate and discounting programs. Harm cannot be shown by common proof in the scenario that Plaintiffs set out in the Complaint.

The cases Plaintiffs cite are inapposite. They involve cases where the allegation was that the conduct at issue raised prices on a single class of products (capacitors, vitamins, or the drug Nexium). Those are not the allegations here. Nowhere in the Complaint do Plaintiffs allege that spectator fees, registration fees, and the costs of the dozens, if not hundreds, of apparel products as to which Plaintiffs seek damages were raised by a uniform or even quasi-uniform amount. Nor would such allegations make any sense. Rather, Plaintiffs' apparent theory is that Varsity's rebates make their offering so attractive to consumers that others cannot offer a compelling alternative and that, over time, alternative suppliers will exit the market and that Varsity will then (someday) be able to charge more in some sense in response for all of the myriad products and services that Varsity offers relating to All Star cheerleading. Putting aside the rank speculation inherent in such a theory and the legal inadequacy under the facts pled, the theory is entirely different than the price-fixing theories in the cases Plaintiffs cite, where harm was adjudged to be provable on a classwide basis using common proof.[1] Nor do Plaintiffs' cases related to overcharge damages in general (Pls.' Br. at 16 n.13) suggest otherwise; the issue here is that the allegations in the Complaint make clear that many members of the putative class benefited from the complained-of practices.

---

[1] *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820 (D.N.J. 2015), was a monopolization case, but the court's decision to allow the class to be certified there was based largely on the Third Circuit's unique view of bundled discounts, which has been rejected by every other circuit that has considered the issue, including the Sixth Circuit in *Collins Inkjet*, 781 F.3d at 273 ("The Ninth Circuit's analysis in [*Cascade Health Solutions v. PeaceHealth*, 515 F. 3d 883, 906 (9th Cir. 2008)] is more compelling than that of the Third Circuit in *LePage's, Inc. v. 3M*, 324 F.3d 141, 154-57 (3d Cir. 2003) (en banc)."

6

Plaintiffs' argument as to sexual abuse clinches the fact that no class could ever be certified in this case. Plaintiffs concede that they are challenging Varsity and USASF in respect of "protecting cheerleaders from sexual abuse," which of course means sexual abuse *at some of the very gyms* that Plaintiffs seek to represent. That in itself is a disabling conflict among class members.

### III. Plaintiffs In Effect Concede that Injunctive Relief Cannot Be Granted

Plaintiffs repeat the failed arguments relating to conflict and common proof of harm in seeking to avoid the obvious truth that an injunction against Varsity and USASF would hurt many members of the class. As discussed above, Plaintiffs concede that some members of the class receive benefits from Varsity's rebate programs and from paid bids. Plaintiffs do not address the fact that these members stand to lose if the relief Plaintiffs seek is granted. No injunctive relief class can be certified in such circumstances. (*See* Defs.' Br. at 11-12.)

### IV. Plaintiffs Miss the Point on "Standing"

Plaintiffs do not dispute that, for a class to be certified, the members of the putative class must have been harmed. *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) ("Where a class definition encompasses many individuals who have no claim at all to the relief requested . . . the typicality premise is lacking . . ."). They dispute that this is an Article III standing requirement, but cite a case where the Court held that a lack of "absent class member injury" is an issue in assessing class certification. *See Macy v. GC Services Ltd. P'ship*, 318 F.R.D. 335, 338-39 (W.D. Ky. 2017). Where, like here, a putative class consists of members who would not have standing to sue, the class allegations can and should be struck. *See, e.g.*, *Loreto v. Procter & Gamble Co.*, No. 09-cv-815, 2013 WL 6055401, at *3 (S.D. Ohio Nov. 15, 2013) ("[A] class cannot be certified if any members in the class would lack Article III standing.") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997)).

7

Ultimately, whether cast as an Article III standing question or an issue of typicality, the certification question turns on Plaintiffs' assertion that every putative class member—including those that received discounts and rebates, those that received fully paid trips, and those that made no purchases in one or the other alleged markets—were harmed. Plaintiffs plead facts showing that this is not the case, which means the proposed class cannot be certified. Plaintiffs seek to excuse this failure by citing to conclusory allegations that "*all* members of the proposed Class [suffered injury] in the form of unlawful overcharges" (Pls.' Br. at 18), even though those allegations are conclusory, implausible and contradict the actual facts alleged in the Complaint. The Court should not accept such conclusory and implausible allegations over the contradictory factual allegations in the Complaint.

### V.   Plaintiffs' Reply Confirms the Sexual Abuse Allegations Should be Struck

Plaintiffs do not deny that the basis of their sexual abuse allegations are an article in USA Today that related to sexual abuse in gyms, *i.e.*, members of their proposed class. They also do not deny that they themselves assert that discovery of their gym clients, or presumably any gym, on this topic would be irrelevant.[2] Nor do they deny that the USA Today article did not assert sexual abuse involving Varsity employees or USASF employees or that Varsity or USASF employed a single sexual abuser. Nor do they explain how class members would have standing to bring a claim, much less an antitrust claim based on an alleged failure of USASF or Varsity to police those very class members.

Plaintiffs' only argument in support of allowing the allegations to remain in the

---

[2] Plaintiffs mischaracterize this issue as an unresolved "discovery dispute." (*See* Pls.' Br. at 20 n.21.) Far from it—Plaintiffs' position, as stated in their discovery responses, is that such discovery would be irrelevant. Notably, in the two and a half months since Defendants filed their opening brief, Plaintiffs have not wavered from that position. Plaintiffs cannot have it both ways, saying that abuse is relevant to their case but maintaining that discovery about abuse from the gyms where it occurs is not permitted because it is "irrelevant."

8

Complaint and presumably to provide a basis for discovery is that USASF''s policies and practices relating to sexual abuse somehow reflect a diminution in Varsity's "quality."  In essence, Plaintiffs' argument is that any theory they can posit as to how Varsity could have done something differently amounts to a "diminution in quality" that justifies discovery, even where, as here, Plaintiffs have not alleged such diminution in quality as a basis for harm to themselves or for damages.  But this is no basis for keeping these allegations in the Complaint or for discovery, as is demonstrated by the cases that Plaintiffs cite, both of which involved claims that the alleged diminution in quality *harmed the plaintiffs themselves*.  *See Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 223 (2d Cir. 2008) (credit cardholders alleging injuries to themselves relating to consumer choice and the quality of credit services offered); *In re Papa John's Emp. and Franchise Emp. Antitrust Litig.*, No. 18-CV-00825, 2019 WL 5386484, at *9 (W.D. Ky. Oct. 21, 2019) (employees alleging suppression of their wages and a decrease in their employment opportunities).  Nor do Plaintiffs allege that Varsity or USASF is in the market of, or has monopolized the market for, "protecting athletes from sexual predation" (Pls.' Br. at 5), particularly from owners and employees of putative class members.

    This case is sufficiently sprawling as it is to not allow it to veer off in a direction that does not relate to the harms to the Plaintiffs alleged or damages claims and, indeed, mainly if not entirely deals with the failures of the *class that Plaintiffs seek to represent* to not employ sexual predators.  The sexual abuse allegations should be struck.

## CONCLUSION

    For the foregoing reasons and for the reasons stated in Defendants' opening brief, Defendants respectfully request that the Court strike Plaintiffs' class allegations and allegations relating to sexual abuse (specifically, paragraphs 40-50 and 237-241, respectively, and that

9

portion of Plaintiffs' claim for relief that relates to the putative class).

Dated: February 15, 2021          Respectfully submitted,

By: /s Matthew S. Mulqueen

George S. Cary*
Mark W. Nelson*
Alexis Collins*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
mnelson@cgsh.com
alcollins@cgsh.com
skaiser@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Varsity Brands, LLC; Varsity Spirit Fashions & Supplies, LLC; and Varsity Spirit, LLC*

By: /s Nicole D. Berkowitz

Grady Garrison (TN #008097)
Nicole D. Berkowitz (TN #35046)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000

Fax: (901) 577-0866
ggarrison@bakerdonelson.com
nberkowitz@bakerdonelson.com

*Attorneys for U.S. All Star Federation, Inc.*