UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FUSION ELITE ALL STARS, et al.,<br><br>           Plaintiffs,<br>    v.<br><br>VARSITY BRANDS, LLC, et al.,<br><br>           Defendants. | Civ. Action No. 2:20-cv-02600 |
| JESSICA JONES, et al.,<br><br>           Plaintiffs,<br>    v.<br><br>BAIN CAPITAL PRIVATE EQUITY, et al.<br><br>           Defendants. | Civ. Action No. 2:20-cv-02892 |

**MOTION TO QUASH OR MODIFY SUBPOENA DIRECTED TO MARLENE COTA
AND FOR PROTECTIVE ORDER**

Come now Defendants Varsity Spirit, LLC ("Varsity"), Varsity Brands, LLC, Varsity Brands Holding Co., Inc., Varsity Spirit Fashions & Supplies, LLC, Bain Capital, LP, and Charlesbank Capital Partners, LLC (collectively, "Defendants"), by and through counsel, pursuant to Federal Rules of Civil Procedure 45 and 26, and hereby file this motion and supporting memorandum to quash or modify, and for a protective order, regarding a subpoena issued by Plaintiffs to former Varsity employee Marlene Cota.

Varsity terminated Ms. Cota's employment in 2018. In agreements she entered into during her employment and at the time of her termination, Ms. Cota acknowledged that business material she received or generated during her employment remained Varsity's sole property. She

1

also promised to return all such material to Varsity upon her departure.  Yet following her receipt of Plaintiffs' subpoena, Ms. Cota's attorney notified Varsity that she possesses numerous categories of documents from her employment and that she intended to produce this material to Plaintiffs absent a court order to the contrary.  This material should never have been in Ms. Cota's possession following her departure and it is improper for Plaintiffs to seek its production through a Rule 45 subpoena.  Ms. Cota has, in fact, agreed to return the material to Varsity once the Court resolves the pending subpoena through this motion.  Declaration of Matthew S. Mulqueen ¶ 7 (attached as **Exhibit A**).

It is surprising that Plaintiffs would issue a subpoena to Ms. Cota in the first place, since she left the company almost four years ago and was primarily involved in corporate sponsorships—a topic unrelated to Plaintiffs' antitrust allegations—during her employment.  The parties had lengthy negotiations over the scope of discovery in this matter, during which Plaintiffs proposed over 50 record custodians of interest to them.  Plaintiffs did not name Ms. Cota as a person of interest despite Varsity's production of an organizational chart from 2017 listing her as "VP Corporate Alliances."  *See* Mulqueen Decl. ¶¶ 8, 10.  Nor did Plaintiffs mention Ms. Cota in the motions to compel they filed in these actions.  Of course, had Plaintiffs sought (and Varsity agreed to) the production of custodial documents for Ms. Cota, Varsity would have had the opportunity to review those documents for responsiveness and privilege. Instead, Plaintiffs now propose that Ms. Cota produce Varsity's proprietary material without giving Varsity any opportunity to review it beforehand.

Ultimately, Plaintiffs' attempt to subpoena this material from Ms. Cota amounts to an impermissible end-run around Federal Rule of Civil Procedure 34.  Rule 34 governs document requests between parties, and here, it is clear that the material sought by the subpoena belongs to

Varsity. To allow Plaintiffs to now circumvent the normal Rule 34 process by subpoenaing Ms. Cota could potentially result in the disclosure of privileged attorney-client communications. It would also vitiate the parties' negotiations over the scope of discovery and the court's discovery orders in these cases. Thus, the problem here is two-fold: Plaintiffs have subpoenaed documents that belong to Varsity, not Ms. Cota, and they do so to avoid the proper discovery procedure for requesting Varsity's documents.

For all of the reasons set forth below, the Court should quash or modify the subpoena and issue a protective order prohibiting Ms. Cota from producing Varsity's property to Plaintiffs. Following the entry of that order, Ms. Cota should return Varsity's property to the company.

## FACTUAL BACKGROUND

### I. Marlene Cota's Employment, Termination, and Contractual Promises

Marlene Cota was employed by Varsity until her termination on January 9, 2018. *See* Declaration of William Seely ¶ 4 (attached as **Exhibit B**). Ms. Cota was "VP Corporate Alliances" and worked on corporate sponsorships—a subject area that is not a part of Plaintiffs' antitrust allegations in these cases. *See* Mulqueen Decl. ¶ 10; *see generally* Complaint, *Fusion Elite*, No. 20-cv-02600, ECF No. 56; Complaint, *Jones*, No. 20-cv-2892, ECF No. 1.

During her employment and in connection with her termination, Ms. Cota entered into several contracts promising to keep Varsity's proprietary business information confidential, agreeing that any material she created or received in the course of her employment was Varsity's exclusive property, and promising that she would return all of Varsity's property to the company upon her departure.

#### A. The Employment Agreement

On or about June 10, 2005, for example, Ms. Cota executed an Employment Agreement with Varsity ("Employment Agreement"). *See* Seely Decl. at ¶ 6 and Exhibits 1(a) and 1(b).

Pursuant to the Employment Agreement, Ms. Cota agreed to keep confidential and to not disclose "Confidential Information." Seely Decl. at Exhibit 1(a), Employment Agreement ¶ 6. She further agreed to "promptly, following a request therefore from Company, return to Company, without retaining copies, all items which are or which contain Confidential Information." *Id.* ¶ 6(c). "Confidential Information" for these purposes includes "all information, and all data, knowledge, documents and other tangible items, relating to the Company's business, which is protectable as a trade secret under applicable law or is subject to the reasonable efforts of Company to maintain its secrecy and from which secrecy Company derives economic value," *id.* ¶ 6(a), as well as "information, knowledge or data of any third party doing business with Company that such third party identifies as being confidential," *id.* ¶ 6(b).

**B.     The Employee Confidentiality Agreement**

On or about January 4, 2016, Ms. Cota executed an Employee Confidentiality, Non-Solicitation, Non-Competition and Invention Assignment Agreement ("Employee Confidentiality Agreement") with similar restrictions and obligations. *See* Seely Decl. at ¶ 7 and Exhibit 2. Ms. Cota agreed that "<u>all</u> information, whether or not in writing, concerning the Company Entities' business, technology, business relationships or financial affairs that the Company Entities have not released generally within the industry or industries in which they operate (collectively, "Proprietary Information") is and will be the <u>exclusive property of the Company Entities</u>." Seely Decl. at Exhibit 2, Employee Confidentiality Agreement ¶ 1 (emphasis added); *see also id.* ¶ 6 (noting that all material containing Proprietary Material that came into Ms. Cota's possession was "the exclusive property of the Company"). Ms. Cota promised that she would "not, at any time, without the Company's prior written permission, either during or after [her] employment, disclose any Proprietary Information to anyone outside of the Company Entities, or use or permit to be used any Proprietary Information for any purpose

4

other than the performance of [her] duties as an employee of the Company Entity." *Id.* ¶ 2. She also agreed to "deliver to the Company all copies of Proprietary Information in [her] possession or control upon the earlier of a request by the Company or termination of [her] employment." *Id.* In the specific event of her termination, Ms. Cota agreed that she would "deliver to the Company all files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, program listings, blueprints, models, prototypes, or other written, photographic or other tangible material containing Proprietary Information, <u>and other materials of any nature pertaining to the Company or any Company Entity or to [her] work</u>, and w[ould] not take or keep in [her] possession any of the foregoing or any copies." *Id.* ¶ 6. The restrictions and obligations set out in the Employee Confidentiality Agreement are in addition to and supplementary of the other obligations found in other agreements between the parties. *Id.* ¶ 18.

    C.    **The Severance Agreement**

In connection with her termination of employment, Ms. Cota entered into an Agreement, General Release, and Confidentiality Statement on or about January 30, 2018 ("Severance Agreement"), along with a Release ("Release"). *See* Seely Decl. at ¶ 8 and Exhibits 3(a) and 3(b). In the Severance Agreement, Ms. Cota "certifie[d] and declare[d] that she ha[d] returned to the custody of the Company all Company property and documents, as well as any copies of Company property and documents, in her possession." Exhibit 3(a), Severance Agreement ¶ 6. The agreement defines "Company documents" as "<u>any</u> writings, contracts, records, files, tape recordings, correspondence, photographs, communications, summaries, data, notes, memoranda, diskettes, or any other source containing information which relates to or references the Company and which was provided by the Company or obtained as a result of Employee's relationship/employment with the Company." *Id.* (emphasis added). Ms. Cota also promised

5

that she would not disclose any "information she obtained as a result of her position with the Company" without obtaining prior express consent from Varsity. *Id.* ¶ 7. These obligations and restrictions are to be read in tandem with, and not limited by, similar obligations set out in the Employee Confidentiality Agreement and Employment Agreement. *Id.* ¶ 11.

**II.     Plaintiffs' Subpoena to Ms. Cota and Varsity's Objections**

Despite the fact that her former job responsibilities do not overlap with the substance of Plaintiffs' claims in these antitrust cases, and despite the fact that Ms. Cota was not associated with Varsity for a substantial portion of the relevant statute of limitations period, Plaintiffs' counsel issued subpoenas to Ms. Cota on or about November 3, 2021 seeking her deposition and the production of documents. *See* Cota Subpoena Package (attached as **Exhibit C**).

Plaintiffs' subpoena *duces tecum* is extremely broad and seeks the production of the following categories of documents:

> REQUEST NO. 1: All Documents or Communications reflecting, relating to, or concerning Varsity.
>
> REQUEST NO. 2: All Documents reflecting, relating to or concerning Your employment by Varsity Defendants, and your termination, separation, or severance from Varsity.
>
> REQUEST NO. 3: All Documents or Communications relating to or concerning All Star Competitions or All Star Apparel.
>
> REQUEST NO. 4: All Documents or Communications reflecting, relating to, or concerning current or former Varsity employees, including but not limited to Brian Elza and Tres LeTard.
>
> REQUEST NO. 5: All Documents or Communications reflecting, relating to, or concerning the U.S. All Star Federation.
>
> REQUEST NO. 6: All Documents or Communications reflecting, relating to, or concerning contracts or sales arrangements or proposals known in sum or substance as the Family Plan, Network Agreement, or Varsity Bucks, or other rebate or discount programs discussed at Paragraphs 170 to 185 of the *Fusion* Complaint and Paragraphs 141 to 152 of the *Jones* Complaint.

REQUEST NO. 7: All Documents or Communications reflecting, relating to, or concerning acquisitions by Varsity of Independent Event Producers, Apparel manufacturers, Gyms, Camps, and any other entities.

REQUEST NO. 8: All Documents or Communications reflecting, relating to, or concerning sexual abuse, predation, harassment, misconduct or any other sex crimes against or related to All Star cheerleaders, whether occurring at All Star Competitions or elsewhere, as discussed at Paragraphs 237 to 241 of the *Fusion* Complaint.

REQUEST NO. 9: All Documents or Communications reflecting, relating to, or concerning Varsity's School Partnership Program, including but not limited to contracts or sales arrangements or proposals.

REQUEST NO. 10: All Documents or Communications reflecting, relating to, or concerning School Cheer, School Cheer Competitions, or School Cheer Apparel.

REQUEST NO. 11: All Documents or Communications reflecting, relating to, or concerning Camps.

Exhibit C.

On December 16, 2021, counsel for Defendants received a letter from Bryan Meredith of the Meredith Law Firm, stating that he represented Ms. Cota in connection with the subpoenas. Mr. Meredith disclosed that Ms. Cota had in her possession several categories of documents from the time of her employment with Varsity, including:

> (1) agreements and other documents describing or referencing Ms. Cota's employment compensation, and/or the terms and conditions of her employment with Varsity; (2) correspondence between Ms. Cota and Varsity employees and/or sponsors or other third parties pertaining to sponsorships, competitions, competitors, and other business dealings; (3) business development documents disseminated by Varsity to its employees and/or third parties including documents related to acquiring sponsorships and commissions for the acquisition of new sponsorships; and (4) Ms. Cota's personal notes made during her employment with Varsity, some of which are loose leaf and many of which are contained in volumes of notebooks.

Mulqueen Decl. ¶ 2 & Exhibit 1.

Acknowledging that these categories included documents that "Ms. Cota agreed to keep confidential," Mr. Meredith offered Varsity the opportunity to inspect the documents or to seek a

7

protective order prior to any production to Plaintiffs.  *See id.* ¶ 4.  Varsity accepted the offer to inspect the documents and arranged for a meeting with Mr. Meredith on December 20, 2021.  *Id*. After disclosing this agreement, however, Plaintiffs' counsel objected and demanded that they be allowed to participate in the inspection of documents.  *Id.* ¶ 5.  As a result of Plaintiffs' objection, Mr. Meredith stated that the meeting would be postponed.  *Id*.

On December 21, 2021, Varsity sent a letter to Ms. Cota outlining her contractual obligations of confidentiality, her acknowledgements that the material in her possession was Varsity's exclusive property, and her promises to return to Varsity all material of any nature pertaining to Varsity upon her termination.  *Id.* ¶ 6 & Exhibit 2.  In a follow up discussion on December 23, 2021, Ms. Cota's counsel stated that she had agreed to return the material to Varsity once the Court resolves this motion.  *Id.* ¶ 7.

## **LEGAL STANDARD**

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  Moreover, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: . . . disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B).

Rule 26 authorizes the court "for good cause shown" to issue a protective order to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "Good cause exists if 'specific prejudice or harm will result' from the absence

8

of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted). Rule 26 further provides that the court must limit the extent of discovery otherwise allowed by the Rules if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

## ARGUMENT

Varsity moves the Court to quash or modify the subpoena and enter a protective order prohibiting Ms. Cota from producing Varsity's documents to Plaintiffs.

### A.     Varsity Has Standing to Bring this Motion

"To have standing to quash or object to a Rule 45 subpoena, a party must typically establish a claim of privilege or personal right with regard to the requested documents." *Elvis Presley Enters., Inc. v. City of Memphis, Tennessee*, No. 218CV02718SHMDKV, 2020 WL 4283279, at *3 (W.D. Tenn. Apr. 6, 2020), *aff'd*, No. 2:18-CV-02718, 2020 WL 4015476 (W.D. Tenn. July 16, 2020). For example, "[c]ourts have held that a corporation has standing to object to a subpoena served on a third party that would result in the disclosure of its financial records or business records held by that third party." *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 1:15–MC–00010, 2015 WL 1022083, at *2 (N.D. Ohio Mar. 9, 2015).

Varsity has standing to quash and object to the subpoena under Rule 45. As Ms. Cota herself acknowledges, the subpoena calls for the production of information subject to her contractual confidentiality obligations to Varsity. *See* Mulqueen Decl. ¶ 3. Ms. Cota "would not have access to or possession of these documents except for the fact [she was employed by Varsity]." *Elvis Presley Enters., Inc.*, 2020 WL 4283279, at *4. That alone provides Varsity

9

with sufficient standing to bring this motion. *See id.*; *see also Stokes v. Xerox Corp.*, No. 05-CV-71683-DT, 2006 WL 6686584, at *2 (E.D. Mich. Oct. 5, 2006) (employer-defendant had standing to move to quash subpoena of documents from a non-party employee for documents that the employee "would not have access to or possession of except for his employment"). But Varsity also has a unique personal stake in these documents because of Varsity's various contracts with Ms. Cota making clear that the material is Varsity's sole property and never should have been in Ms. Cota's possession following her termination. *See* Seely Decl. at Exhibits 1(a) – 3(b).

Varsity separately has standing to seek a protective order under Rule 26. "Under Rule 26(c), a party may move for a protective order to protect itself from annoyance, embarrassment, oppression, or undue burden or expense, *regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty*, as long as the moving party can tie the protected information to an interest listed in the rule." *Elvis Presley Enters., Inc.*, 2020 WL 4015476, at *14 (emphasis added). In *Elvis Presley Enterprises*, for example, Judge Mays affirmed Magistrate Judge Vescovo's determination that the City of Memphis had standing under Rule 26 to challenge subpoenas issued to a non-party City councilman because the subpoenas requested documents "belonging to the City and because the documents [we]re potentially attorney-client privileged." *Id.* The same is true here. The documents improperly in Ms. Cota's possession are exclusively Varsity's property and may contain attorney-client privilege communications.

## B. The Documents Sought in the Subpoena are Exclusively Varsity's Property and Ms. Cota Should Have Returned Them Upon Her Termination

Ms. Cota's counsel has made clear that the documents at issue are only in Ms. Cota's possession because of her former employment with Varsity. *See* Mulqueen Decl. ¶¶ 2, 7. That

10

alone would be grounds for concluding that the documents are Varsity's property. *See Elvis Presley Enters., Inc.*, 2020 WL 4015476, at *4 (noting that even though a City councilman used his own business email address to handle City business, "the documents were still received by [the councilman] as a representative of the City and remained within the control of the City through its city councilman"). But here, Ms. Cota also agreed in numerous contracts that business material she generated or received while employed was Varsity's exclusive property:

- Under the Employment Agreement (Exhibit 1(a)), Varsity retained the unilateral right to demand the return of all "Confidential Information," including "all information, and all data, knowledge, documents and other tangible items, relating to the Company's business, which is protectable as a trade secret under applicable law or is subject to the reasonable efforts of Company to maintain its secrecy and from which secrecy Company derives economic value," *id.* ¶ 6(a), as well as "information, knowledge or data of any third party doing business with Company that such third party identifies as being confidential," *id.* ¶ 6(b).

- In the Employee Confidentiality Agreement, Ms. Cota acknowledged that "all information, whether or not in writing, concerning the Company Entities' business, technology, business relationships or financial affairs that the Company Entities have not released generally within the industry or industries in which they operate (collectively, "Proprietary Information") is and will be the exclusive property of the Company Entities." Exhibit 2, Employee Confidentiality Agreement ¶ 1 (emphasis added); *see also id.* ¶ 6.

Ms. Cota further agreed that if her employment was terminated—which it was on January 9, 2018—she would "deliver to the Company all files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, program listings, blueprints, models, prototypes, or other written, photographic or other tangible material containing Proprietary Information, and other materials of any nature pertaining to the Company or any Company Entity or to [her] work, and w[ould] not take or keep in [her] possession any of the foregoing or any copies." *Id.* ¶ 6 (emphasis added). She further certified in her Severance Agreement that she had, in fact, "returned to the

11

custody of the Company all Company property and documents, as well as any copies of Company property and documents, in her possession." Exhibit 3(a), Severance Agreement ¶ 6.

Regardless of how or why Ms. Cota currently possesses the categories of Varsity material set out in her counsel's letter, she is under an ongoing obligation to return the material to Varsity and has no right to keep any copies of the material. The documents are Varsity's exclusive property, plain and simple.

### C. The Subpoena is an Improper End-Run Around Rule 34

"Rule 45 may not be used to circumvent discovery that could have been properly sought under Rule 34." *Elvis Presley Enters., Inc.*, 2020 WL 4015476, at *14; *see also PCA-Corr., LLC v. Akron Healthcare LLC*, No. 1:20-CV-428, 2021 WL 2043118, at *3 (S.D. Ohio May 21, 2021) (granting motion to quash in part and explaining that certain subpoena requests were an improper attempt to circumvent document production as outlined in Fed. R. Civ. P. 34); *Madej v. Yale Univ.*, No. 3:20-CV-133 (JCH), 2020 WL 6270273, at *2 (D. Conn. Oct. 26, 2020) (granting motion to quash and finding that the plaintiff's subpoena directed to one of the defendant's employees was an improper workaround for requests that should have been sent directly to the defendant).

In *Elvis Presley Enterprises*, the plaintiff issued a subpoena to a councilman for the City of Memphis after the time period for issuing requests for production to the City under Rule 34 had passed. Both the magistrate judge and the district court judge agreed that the plaintiff had improperly attempted "to circumvent [the court's] scheduling orders by seeking documents from a party by a Rule 45 subpoena." *Elvis Presley Enters., Inc.*, 2020 WL 4283279, at *5; *see also* 2020 WL 4015476, at *14. The magistrate judge therefore entered, and the district court affirmed, a protective order quashing the subpoenas. *See id.*

Plaintiffs' attempt to sidestep Rule 34 is particularly troublesome here. First, Ms. Cota apparently has in her possession "agreements and other documents describing or referencing Ms. Cota's employment compensation, and/or the terms and conditions of her employment with Varsity," "correspondence between Ms. Cota and Varsity employees," and "business development documents disseminated by Varsity to its employees." Mulqueen Decl. ¶ 2. These documents may contain attorney-client privileged material or protected work product that Varsity must review to determine whether to assert a claim of privilege or protection. *Elvis Presley Enters., Inc.*, 2020 WL 4015476, at \*14 (affirming that the City had a potential interest in preventing disclosure of attorney-client material).

Second, allowing Ms. Cota to produce this material would vitiate the normal protections provided to a party under Rules 34 and 26, the parties' lengthy negotiations over the scope of discovery, and the court's discovery orders in these cases. Plaintiffs issued voluminous document requests to Defendants, and Defendants responded with numerous objections. Combined, Plaintiffs' counsel proposed over 50 document custodians for Varsity to search, including several former employees. Mulqueen Decl. ¶ 8. The parties engaged in substantial meet and confer negotiations over the requests and objections, leading the Plaintiffs in each case to substantially winnow down their proposed custodians and filing motions to compel as to issues the parties could not resolve. *See Fusion Elite*, No. 20-cv-02600, ECF Nos. 102 & 105, *Jones*, No. 20-cv-2892, ECF No. 100. The *Fusion Elite* parties eventually resolved their dispute without the need for the Court's intervention, whereas the Court just recently issued an order addressing the *Jones* motions to compel. *See Jones*, No. 20-cv-2892, ECF No. 167.

Plaintiffs never proposed Ms. Cota as a custodian in either case, despite Plaintiffs' requests for the inclusion of several other former employee custodians and despite Ms. Cota's

inclusion on an organizational chart that Varsity produced. *See id.*; Mulqueen Decl. ¶¶ 8, 10. Nor did Plaintiffs mention Ms. Cota in either of the motions to compel that they filed. Allowing Ms. Cota to produce Varsity's proprietary business material—despite Plaintiffs never seeking such material from Varsity itself—would effectively give Plaintiffs a free bite at the apple on the scope of custodians and substantive document production without allowing Varsity the opportunity to object to that scope, to review the material for privilege and responsiveness, and to produce or withhold accordingly.

Perhaps most insidious is Plaintiffs' demand in the subpoena for the production of "[a]ll Documents or Communications reflecting, relating to, or concerning sexual abuse, predation, harassment, misconduct or any other sex crimes against or related to All Star cheerleaders, whether occurring at All Star Competitions or elsewhere, as discussed at Paragraphs 237 to 241 of the *Fusion* Complaint." *See* Exhibit C, Request No. 8. Varsity filed a motion to strike those paragraphs in the *Fusion Elite* Complaint over one year ago on the grounds that the allegations were utterly unrelated to Plaintiffs' antitrust claims and were intended to embarrass and scandalize. *Fusion Elite*, No. 20-cv-02600, ECF No. 82. That motion remains pending. As part of the *Fusion Elite* parties' agreed resolution of their discovery disputes, Plaintiffs agreed to withdraw their requests for production to Varsity on this topic pending the Court's decision on the motion to strike. Mulqueen Decl. ¶ 9. And on top of that, the parties agreed that if the Court denied the motion to strike, they would meet and confer regarding the scope of those requests. *See id.*

The Court should deny Plaintiffs' attempt to obtain from Ms. Cota the same type of irrelevant and scandalous material they agreed they would not seek from Varsity.[1] At the very least, Varsity should be allowed to inspect all of its property in Ms. Cota's possession so that Varsity can assert specific objections to the production of any material that would serve no other purpose than to oppress and embarrass Varsity. *See* Fed. R. Civ. P. 26(c)(1).

## CONCLUSION

Plaintiffs' subpoena to Marlene Cota—and subsequent objection to Ms. Cota allowing Varsity to inspect its own property—is a blatant and impermissible attempt to end-run around Rule 34. Ms. Cota has no right to possess work material that is Varsity's exclusive property under her various agreements with the company. The Court should quash or modify the subpoena and issue a protective order so that Ms. Cota can comply with her contractual obligations of returning Varsity's property without concern for compliance with Plaintiffs' improper subpoena.

Dated: December 27, 2021         Respectfully submitted,

s/ Matthew S. Mulqueen

George S. Cary*
Jennifer Kennedy Park*
Steven J. Kaiser*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999

---

[1] As part of Defendants' consultation requirements under Local Rule 7.2(a)(1)(B), Defendants conveyed their position that proceeding with Request No. 8 would be specifically improper in light of the pending motion to strike and the *Fusion Elite* Plaintiffs' agreement to withdraw similar requests issued to Varsity. Plaintiffs' counsel stated that they opposed any motion to quash or for protective order, including as to Request No. 8 in their subpoena *duces tecum*. *See* Certificate of Consultation *infra*.

15

>gcary@cgsh.com
>jkpark@cgsh.com
>skaiser@cgsh.com
>
>\* Admitted *pro hac vice*
>
>Matthew S. Mulqueen (TN #28418)
>Adam S. Baldridge (TN #23488)
>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
>165 Madison Avenue, Suite 2000
>Memphis, TN 38103
>Phone: (901) 526-2000
>Fax: (901) 577-0866
>mmulqueen@bakerdonelson.com
>abaldridge@bakerdonelson.com
>
>*Attorneys for Varsity Brands, LLC; BSN Sports, LLC; Varsity Spirit, LLC; Stanbury Uniforms, LLC; Herff Jones, LLC; Bain Capital, LP; Charlesbank Capital Partners, LLC; Varsity Brands Holding Co., Inc.; Varsity Spirit Fashions & Supplies, LLC; Varsity Intropa Tours*

## **CERTIFICATE OF CONSULTATION**

I hereby certify that on December 23, 2021, I consulted with counsel for Plaintiffs via email regarding the relief sought in this motion. I noted Defendants' position that the documents in Ms. Cota's possession were Varsity's exclusive property, and that Defendants separately believed that it was improper for Plaintiffs to move forward with Request No. 8 in the subpoena. On December 27, 2021, counsel for Plaintiffs responded via email that they opposed any motion to quash or for protective order, including as to Request No. 8.

s/ Matthew S. Mulqueen