# **EXHIBIT 1(a)**

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is entered into by and between **Marlene Cota** ("Employee") and Varsity Spirit Corporation, a Tennessee corporation ("Company").

### R E C I T A L S:

A.  Company desires to continue to employ Employee, and Employee desires to continue to be employed by Company, on the terms and conditions set forth herein.

B.  Employee will by virtue of his/her employment with Company become privy to certain Confidential Information of Company as described herein during the course of his/her employment.

C.  Company wishes to take reasonable steps to assure its Confidential Information will remain confidential and that it will not be subject to undue and unfair competition from Employee during and for a reasonable period of time following his/her employment.

D.  Company is engaged in a highly competitive business that is international in scope.

### A G R E E M E N T:

NOW, THEREFORE, for Employee's employment by Company and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Employment Term.** This Agreement will be in effect from the date on which Employee signs below ("Effective Date") until December 31, 2005 ("Employment Term"). The Employment Term shall be automatically extended for additional one year periods, unless Company or Employee delivers written notice to the other not later than sixty (60) days prior to the expiration of the then existing Employment Term that such party does not desire to so extend this Agreement or the Agreement is terminated as set forth below.

2. **Compensation.**

(a) During the Employment Term, Company shall pay to Employee as salary (the "Salary") the sum of $ per year. The Salary shall be reviewed each fiscal year and be subject to increase at the sole discretion of Company. Such Salary shall be payable in arrears not less frequently than monthly, but otherwise in accordance with Company's ordinary payment practices.

(b) After the end of each fiscal year of Company during the Employment Term, Employee also shall be eligible for an annual performance bonus, the nature and amount of which shall be determined by the General Manager of the division in which Employee is employed and/or the President of Company after reviewing Employee's performance and Company's results of operations during and for such fiscal year and such other factors deemed appropriate by the General Manager of the division in which Employee is employed and/or the President of Company. Notwithstanding anything else in this Agreement, the payment of any such

performance bonus to Employee shall be in the sole discretion of Company and Employee shall have no absolute right to a performance bonus in any year.

(c)  Employee shall also be eligible, in the Company's sole discretion, to receive stock options in an amount to be determined solely by the Company, subject to and in accordance with the Stock Option Plan of VBR Holding Corporation and the Non-Qualified Stock Option Agreement of VBR Holding Corporation.

(d)  Payments made pursuant to (a) and (b) above during the Employment Term shall be treated as wages for withholding and employment tax purposes.

### 3. Benefits.

(a)  Employee shall be entitled during the Employment Term to participate in such employee benefit plans and programs as are maintained from time to time for employees of Company to the extent that Employee is otherwise eligible to participate in such benefit plans. Company does not promise the adoption or continuance of any particular plan or program during the Employment Term and may discontinue or change its benefit plans and programs at any time in its sole discretion. Employee's (and his/her dependents') participation in any such plan or program shall be subject to the provisions, rules, regulations and laws applicable thereto.

(b)  Employee shall be entitled to paid vacation and holidays in accordance with the Company's standard procedure.

**4.  Reimbursement of Expenses.** To the extent consistent with the general expense reimbursement policies maintained by Company from time to time, Employee shall be entitled to reimbursement for ordinary, necessary and reasonable out-of-pocket trade or business expenses that Employee incurs in connection with performing his/her duties under this Agreement, including reasonable travel and meal expenses. The reimbursement of all such expenses shall be made after Employee submits evidence reasonably satisfactory to Company of the amounts and nature of such expenses and shall be subject to the reasonable approval of Company's President and/or Board of Directors.

**5.  Restrictive Covenants.** In exchange for the Company's promise to provide to Employee with new and on-going Confidential Information (defined below) and the other consideration in this Agreement, Employee agrees as follows:

(a)  For purposes of this Agreement, "Competitor" shall mean any person or entity engaged in the business of selling, offering to sell or advertising for sale Products and/or Services to Groups through Channels of Distribution.

(b)  "Products" as used herein means athletic wear, namely, sports shirts, sports shorts, vests, tops, skirts, jumpers, sweaters, athletic shoes, sweat shirts, sweat bands, t-shirts, athletic shorts, sweat pants, tights, leotards, unitards, dresses and jackets, body suits, hats, jerseys, warm-up suits, gloves, socks, uniforms, campwear, outerwear, shoes and other accessories; and uniforms for cheerleaders, drill teams, pom pon squads, pep squads, mascots, bands and booster clubs, dance squads or sports teams.

(c)  "Services" as used herein means conducting, sponsoring or promoting cheerleading, dance team and dance competitions, workshops, clinics and

conventions; providing instruction, training, choreography and demonstration services for cheerleaders, pom pon squads, dance teams, drill teams, mascots and other similar groups; and providing consulting services in the fields of cheerleading, dance and spirit-related competitions and events.

(d) "Groups" as used herein means cheerleader teams and their individual members, dance teams and their individual members, drill teams and their individual members, pom pon squads and their individual members; dance studios and their owners and clientele; and organizers, producers and owners of special events or travel programs created for or related to any of the foregoing.

(e) "Channels of Distribution" as used herein means distribution through (i) direct sales by employees or sales representatives; (ii) mail order catalog sales; (iii) sales at gymnasiums, dance studios, cheerleader competitions and dance competitions; (iv) sales at cheerleader or dance or special events; (v) internet sales or sales through television or other media; and (vi) any other channel of distribution that Company may adopt from time to time hereafter.

(f) Employee agrees that during the Employment Term and for a period of eighteen (18) months following his/her termination of employment (such period being referred to herein as the "Restricted Period"), Employee shall not, directly or indirectly:

(i) Engage or participate in the activities of a Competitor; assist, advise or be connected with (including as an employee, owner, partner, shareholder, officer, director, member, advisor, consultant, agent or otherwise) a Competitor; permit his/her name to be used by a Competitor; or render services to a Competitor anywhere in the United States or any other location at which Employee performs services for the Company;

(ii) Sell, offer to sell or advertise for sale Products or Services to Groups through Channels of Distribution anywhere in the United States or any other location at which Employee performs services for the Company;

(iii) Solicit or attempt to solicit any customer of Company, with whom Employee had contact or whose identity Employee learned as a result of his/her employment with Company, to purchase Products or Services from a Competitor or to cease doing business with Company;

(iv) Solicit or attempt to solicit any supplier, licensor, licensee or other business relation of Company to cease doing business with Company; or

(v) Hire, solicit for employment, induce or encourage to leave the employment of the Company, or otherwise cease their employment with the Company, on behalf of himself/herself or any other person or entity, any person or entity who is then a director, officer, employee or agent of Company or any Affiliate of Company to perform services for a Competitor, or solicit such person to terminate his/her employment with the Company.

Nothing contained in this Agreement shall prevent Employee from acquiring or owning, as a passive investment, up to two percent (2%) of the outstanding voting securities of any public corporation that are publicly traded on any recognized national securities market.

3

**6.     Disclosure of Confidential Information.** Upon Employee's execution of this Agreement and on an on-going basis, the Company will provide Employee with new Confidential Information (defined below). Accordingly, as an inducement for Company to enter into this Agreement, Employee agrees that for the longest period permitted by law from the date of this Agreement, Employee and each Affiliate of Employee shall hold in strictest confidence and shall not, other than as required by law, without the prior written consent of Company, for any reason directly or indirectly, use for his/her own benefit or that of any third party or disclose to any person or entity, except as required in the performance of Employee's duties for Company, any Confidential Information.

(a)     For purposes of this Agreement, intending that the term shall be broadly construed, "Confidential Information" shall mean all information, and all data, knowledge, documents and other tangible items, relating to the Company's business, which is protectable as a trade secret under applicable law or is subject to the reasonable efforts of Company to maintain its secrecy and from which secrecy Company derives economic value, including:

(i)     product development and marketing plans and strategies;

(ii)    unpublished drawings, manuals, instruction techniques, design patterns, know-how, production techniques, proprietary formulas, research in progress, and other similar sensitive information;

(iii)   the identity, purchase and payment patterns of, and special relations with customers, including high schools, universities, colleges, and other similar institutions;

(iv)    the identity, net prices and credit terms of, and special relations with, suppliers and the identity and compensation arrangements of Company employees, including cheerleader camp instructors;

(v)     sales and other financial information; and

(vi)    proprietary software and business records.

(b)     Confidential Information also includes information, knowledge or data of any third party doing business with Company that such third party identifies as being confidential. Confidential Information does not include any information, knowledge or data that is in the public domain or otherwise publicly available (other than as a result of a wrongful act by the Employee or an agent or other employee of Company or an Affiliate of Company).

(c)     Employee shall promptly, following a request therefore from Company, return to Company, without retaining copies, all items which are or which contain Confidential Information.

(d)     For purposes of this Agreement, an "Affiliate" shall mean and include any person or entity which controls a party, which such party controls, or which is under common control with such party. "Control" means the power, direct or indirect, to influence or cause the direction of the management and policies of a person or entity through voting securities, contract or otherwise.

4

7. **Inventions.** Employee acknowledges that during the Employment Term, he/she may be involved in (i) the conception or making of improvements, discoveries, or inventions (whether or not patentable and whether or not reduced to practice), (ii) the production of original works of authorship (whether or not registrable under copyright or similar statutes) or (iii) the development of trade secrets relating to Company's business. Employee acknowledges that all original works of authorship which are made by Employee (solely or jointly with others) within the scope of his or her employment, and which are protectable by copyright, are "works made for hire," pursuant to the United States Copyright Act (17 U.S.C., Section 101) and are consequently owned by the Company. Employee further acknowledges that all improvements, discoveries, inventions, trade secrets or other form of intellectual property is the exclusive property of Company. Employee hereby waives any rights he/she may have in or to such intellectual property, and Employee hereby assigns to Company all right, title and interest in and to such intellectual property. At Company's request and at no expense to Employee, Employee shall execute and deliver all such papers, including any assignment documents, and shall provide such cooperation as may be necessary or desirable, or as Company may reasonably request, to enable Company to secure and exercise its rights to such intellectual property.

8. **Specific Performance/Reasonableness/Severability.**

(a)   Employee acknowledges that the restrictions contained in this Agreement, in view of the nature of the Company's business, are reasonable and necessary to protect the Company's legitimate business interests. Employee also agrees that any violation by him/her of Sections 5, 6 or 7 of this Agreement would cause irreparable harm to Company for which there is no adequate remedy at law. By reason of the foregoing, Employee agrees that if he/she violates any provision of Sections 5, 6 or 7 of this Agreement, Company shall be entitled to all appropriate equitable and legal relief, including, but not limited to: (a) injunction to enforce this Agreement or prevent conduct in violation of this Agreement; (b) damages incurred by the Company as a result of the breach; and (c) attorneys' fees and costs incurred by the Company in enforcing the terms of this Agreement. If Employee breaches a covenant contained in this Agreement, the Restricted Period applicable to Employee with respect to such breached covenant shall be extended for the period of such breach. The covenants in Paragraph 5 shall each be construed as independent of any other provisions in this Agreement, and the existence of any claim or cause of action by Employee against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of such covenants and agreements.

(b)   Employee also recognizes that the territorial, time and scope limitations set forth in Sections 5 and 6 are reasonable and required for the protection of Company and if the territorial, time or scope limitation is deemed to be unreasonable by a court of competent jurisdiction, Company and Employee agree, and Employee submits, to the reduction of any or all of said territorial, time or scope limitations to such an area, period or scope as said court shall deem reasonable under the circumstances.

(c)   If Employee or anyone acting on his behalf brings a claim against the Company seeking to declare any term in Paragraph 5 of this Agreement void or unenforceable, and if one or more material terms in Paragraph 5 are ruled by a court or arbitrator to be void or unenforceable or subject to reduction or modification, then

5

the Company shall be entitled to shall be entitled to (i) require Employee to forfeit all unexercised stock options outstanding on such date (regardless of whether such stock options are vested); (ii) require Employee to sell all shares of the Company acquired by Employee through the exercise of stock options for the lesser of the exercise price paid by Employee for such shares or the fair market value of such shares on the date of sale to the Company; (iii) recover from Employee any gain that Employee realized on the sale of any shares of the Company acquired by Employee pursuant to the exercise of any stock options; (iv) recover any and all severance pay paid to Employee pursuant to Paragraph ¶ 9; and (v) recover its attorneys' fees incurred in defending such action and seeking recovery of such amounts.

9. **Employment Termination; Severance.**

(a) Notwithstanding other provisions of this Agreement, Employee's employment with Company may be terminated at any time by the General Manager of the division in which Employee is employed, Company's President or Board of Directors for "Cause," which shall include (i) Employee's conviction for, or plea of *nolo contendere* to, a felony, (ii) Employee's commission of an act involving self-dealing, fraud or personal profit materially injurious to Company, (iii) Employee's commission of an act of willful misconduct or gross negligence in conducting his/her duties hereunder, (iv) habitual absenteeism or any form of drug or substance abuse by Employee, (v) Employee's failure to perform his/her duties hereunder in a manner reasonably satisfactory to Company, (vi) Employee's breach or violation of any internal policies or rules of Company, including those rules adopted by Company concerning the purchase and sale of common stock or other securities of Company's parent and/or affiliated companies by employees of Company, or (vii) Employee's breach of any material provision of this Agreement. Any termination by Company under this Section 9(a) shall be in writing and shall set forth the reason for such termination. In the event of termination under this Section 9(a), Company's obligations under this Agreement shall cease and Employee shall forfeit all rights to receive any compensation or benefits under this Agreement, including any unearned or unpaid performance bonus, except that Employee shall be entitled to his/her Salary and benefits for services already performed as of the date of termination of this Agreement. Without limitation, termination of Employee pursuant to this Section 9(a) shall not relieve Employee of his/her obligations under Section 5, 6 or 7 hereof.

(b) Notwithstanding other provisions of this Agreement, Employee's employment with Company may be terminated at any time by the General Manager of the division in which Employee is employed, Company's President or Board of Directors without Cause, provided that in the event of such termination, Employee shall be entitled to severance as follows: continuation of Employee's Salary and benefits through the period ending six (6) months after the date of such termination (the "Severance Period"). Except as otherwise specifically provided above, Company's obligations under this Agreement shall cease upon termination and Employee shall forfeit all rights to receive any compensation or benefits under this Agreement. Without limitation, termination of employment pursuant to this Section 9(b) shall not relieve Employee of his/her obligations under Section 5, 6 or 7 hereof. Any termination by Company under this Section 9(b) shall be in writing. No payments shall be made under this Section 9(b) unless and until Employee has executed a Settlement Agreement and General Release and Waiver in a form acceptable to Company counsel. For purposes of this Agreement, non-renewal by

Company at the end of the Employment Term shall constitute a termination without Cause.

(c) Notwithstanding other provisions of this Agreement, Employee's employment with Company may be terminated at any time by Employee upon two (2) weeks' written notice to the President of Company. In the event of termination under this Section 9(c), Company's obligations under this Agreement shall cease and Employee shall forfeit all rights to receive any compensation or benefits under this Agreement, including any unearned or unpaid performance bonus, except that Employee shall be entitled to Employee's Salary and benefits for services already performed as of the date of termination of this Agreement. Without limitation, termination of employment pursuant to this Section 9(c) shall not relieve Employee of his/her obligations under Section 5, 6 or 7 hereof. For purposes of this Agreement, non-renewal by Employee at the end of the Employment Term shall constitute a termination by Employee under this Section 9(c).

## 10. Death or Disability.

(a) If Employee becomes Disabled during the Employment Term, Company may terminate his/her employment. For purposes of this Agreement, Employee shall be deemed "Disabled" if (i) he/she is eligible for disability benefits under Company's long-term disability plan, or (ii) he/she has a physical or mental disability that renders Employee incapable, after reasonable accommodation, of performing substantially all of his/her duties hereunder for a period of 180 days (which need not be consecutive) in any twelve (12) month period. In the event of a dispute as to whether Employee is Disabled, Company may, at its expense, refer Employee to a licensed practicing physician of Company's choice and Employee agrees to submit to such tests and examination as such physician shall deem appropriate.

(b) Employee's right to his/her compensation and benefits under this Agreement shall cease upon Employee's death or Employee becoming Disabled; except that Employee (or his/her estate or heirs) shall be entitled to Employee's Salary and benefits for services already performed as of the date of Employee's death or the date Employee is deemed Disabled in accordance with Section 10(a).

## 11. Miscellaneous.

(a) Employee agrees that during the Employment Term and following his/her termination for any reason, Employee will cooperate at the request of Company in the defense or prosecution of any lawsuits or claims in which Company or its officers, directors or employees may be or become involved and which relate to matters occurring while Employee was employed by Company.

(b) All notices hereunder shall be in writing and shall be deemed given when delivered in person or when faxed with hard copy to follow, or three (3) business days after being deposited in the United States mail, postage prepaid, registered or certified mail, or two (2) business days after delivery to a nationally recognized express courier, expenses prepaid, addressed as follows:

7

If to Employee:

_____
_____
_____
_____

If to Company:

Attention: John Nichols
Varsity Spirit Corporation
6745 Lenox Center Court, Ste. 300
Memphis, Tennessee 38115

and/or at or to such other addresses as may be designated by notice given in accordance with the provisions hereof.

(c)   No party shall assign this Agreement or its rights hereunder without the prior written consent of the other party hereto; provided, however, that Company may assign this Agreement to any person or entity acquiring all or substantially all of Company (whether by sale of stock, sale of assets, merger, consolidation or otherwise).

(d)   This Agreement contains all of the agreements between the parties with respect to the subject matter hereof and this Agreement supersedes all other agreements, oral or written, between the parties hereto with respect to the subject matter hereof.

(e)   No change or modification of this Agreement shall be valid unless the same shall be in writing and signed by all parties hereto. No waiver of any provisions of this Agreement shall be valid unless in writing and signed by the waiving party. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver, unless so provided in the waiver.

(f)   The invalidity or unenforceability of any provision of this Agreement (or portions thereof) shall not affect the validity, enforceability or applicability of any other provision of this Agreement.

(g)   The section or paragraph headings or titles herein are for convenience of reference only and shall not be deemed a part of this Agreement.

(h)   This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute a single instrument.

(i)   This Agreement shall be governed and interpreted in accordance with the laws of the State of Tennessee applicable to contracts made in that State (other than any conflict of laws rule which might result in the application of the laws of any other jurisdiction).

8

IN WITNESS WHEREOF, the parties have executed this Agreement on the date the date the employee signs below.

**VARSITY CORPORATION**

By: *John M Nichols*

Name: John M. Nichols

Title: Senior Vice President/CFO

**EMPLOYEE**

Signature: *Marlene L. Cota*

Name: Marlene L. Cota

Date: 6-10-05

D-1331388_1.DOC

9