# **EXHIBIT B**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FUSION ELITE ALL STARS, et al.,<br><br>    Plaintiffs,<br>v.<br><br>VARSITY BRANDS, LLC, et al.,<br><br>    Defendants. | Civ. Action No. 2:20-cv-02600 |
| JESSICA JONES, et al.,<br><br>    Plaintiffs,<br>v.<br><br>BAIN CAPITAL PRIVATE EQUITY, et al.<br><br>    Defendants. | Civ. Action No. 2:20-cv-02892 |

**DECLARATION OF ROBERT TISDALE IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENA DIRECTED TO MARLENE COTA AND FOR PROTECTIVE ORDER**

I, Robert Tisdale, declare as follows:

    1.    I am over twenty-one (21) years of age, of sound mind, and competent to make this declaration. I make the following statements based upon my own personal knowledge of the facts stated herein.

    2.    I was employed at Varsity Spirit, LLC ("Varsity") as Vice President of Human Resources in 2018 when Marlene Cota was terminated. I have since retired from Varsity.

    3.    Marlene Cota was employed by Varsity for a number of years prior to January 9, 2018, when Varsity terminated her employment.

4. On the morning of January 10, 2018, I separated the personal items in her office from Varsity materials. I placed Ms. Cota's personal items in boxes and then loaded those boxes into Ms. Cota's car with the assistance of Varsity employee Ron Shaw. Only Ms. Cota's personal items were packed into the boxes placed into her car.

5. Attached as **Exhibit A** is a redacted, true, and correct copy of contemporaneous notes I made on January 10, 2018 regarding Ms. Cota's termination and my packing up of her personal items. In those notes I stated, "I packed up her office the next morning and separated personal items from Varsity Items. I met her on the parking lot with the personal boxes, then loaded in her car." **Exhibit A**. These contemporaneous notes accurately reflect my actions on January 10, 2018.

6. I made the notes attached as **Exhibit A** as a regular practice and as part of my business duty as Vice President of Human Resources to record such activities in connection with employment terminations. To my knowledge, the notes have been maintained since 2018 as a part of the regularly conducted activities of Varsity and Varsity Brands, LLC.

7. The items that I placed in the boxes were only Ms. Cota's personal mementos and did not contain any documents or other items from the following categories:

   a. agreements or other documents describing or referencing Ms. Cota's employment compensation, and/or the terms and conditions of her employment with Varsity;

   b. correspondence between Ms. Cota and Varsity employees and/or sponsors or other third parties pertaining to sponsorships, competitions, competitors, and other business dealings;

  c. business development documents disseminated by Varsity to its employees and/or third parties including documents related to acquiring sponsorships and commissions for the acquisition of new sponsorships; or

  d. volumes of notebooks with Ms. Cota's notes of daily experiences as a Varsity employee, such as events and occurrences she experienced, conversations she had with other employees, and her perceptions of other employees.

8. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 14, 2022.

*Robert Tisdale*
_____
Robert Tisdale

# EXHIBIT A

January 10, 2018

Termination of Marlene Cota

3:20 pm on January 9, Tuesday

John Newby (manager) and Robert Tisdale (HR) met with Marlene Cota. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He told Marlene due to job elimination that she is being terminated today.

The job elimination was decided on after reviewing the historical decline in revenue in recent past in her department and the restructure of the department including downsizing.

He mentioned the severance that would be offered. He then said that R Tisdale would take some time and explain the paperwork needed completion. Then John left the room.

I started explaining the offer of six month severance and the pointed out the severance agreement. I told her she did not need to sign the severance agreement now, but could take it home, review it, talk to any one she needed to.

Marlene stopped me and asked if she could call her attorney now or that she needed to call her attorney. I said fine, I would just wait here until she is finished with her call. She got her attorney on the phone, said she has just been terminated, that no she has not signed anything. Then she asked me with the attorney on the phone why she was terminated. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ She then told her attorney, Job Elimination. Then she told attorney she would be in his office first thing in the morning.

After she hung up I started back talking about 6 month severance and that Varsity would pay the employer portion of the health insurance during the severance period. Severance would be paid out just the same as paycheck, same date, same deductions. We needed the severance agreement signed before we could issue any severance pay. I briefly explained Cobra and checked her address to be sure the third party COBRA administrator mailed the COBRA forms correctly.

She did ask if she was cut off the computer, emails etc. I said yes or you will be after this meeting is over. I told her that 401k account could be moved when she wanted it moved or it could stay at Varsity.

She said everyone probably knows about my termination. I told her no, 3 people in HR, 2 in IT, John Newby, Bill Seely are the only ones that I am aware of. She asked if Jeff Webb knew and I told her I was not aware that he knew of termination.

We discussed her company phone, company computer, access card. She gave me her American Express Card, promised to bring her cell phone in to office, left her surface book. She said her ipad machine was hers and not the company. The cell phone she uses daily is her phone (equipment). We discussed the easiest way for her to leave the office. We decided she would just walk out on her own and come back next day to clean out her office. She exited the building and I watched her leave and get into her car.

I packed up her office the next morning and separated personal items from Varsity Items. I met her on the parking lot with the personal boxes, then loaded in her car.

R Tisdale
1/10/18