IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| FUSION ELITE ALL STARS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 20-cv-2600-SHL-tmp |
| VARSITY BRANDS, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JESSICA JONES, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 20-cv-2892-SHL-tmp |
| BAIN CAPITAL PRIVATE EQUITY, et al., | ) ) ) | |
| Defendants. | ) | |

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH

Before the court by order of reference is defendants' Motion to Quash or Modify Subpoena Directed to Marlene Cota and Motion for Protective Order, filed on December 27, 2021. (ECF Nos. 178 & 179.) The motion seeks to quash a subpoena issued to Marlene Cota, a former employee of Varsity and third party to the present litigation. The Fusion Elite plaintiffs and the Jones plaintiffs

jointly responded to the motion on January 10, 2022.[1] (ECF No. 180.) On January 12, 2022, the court *sua sponte* entered an order granting leave to submit supporting affidavits regarding how Cota came into possession of the documents in question. (ECF No. 185.) Defendants submitted the affidavits of a current and former Varsity employee. (ECF No. 186.) Plaintiffs submitted Cota's affidavit. (ECF No. 190.) The undersigned granted defendants leave to file a reply, which they filed on January 19, 2022. (ECF Nos. 188 & 189.) On January 24, 2022, plaintiffs filed a joint motion requesting a hearing. (ECF No. 191.) Defendants filed a response in opposition to the motion requesting a hearing on January 25, 2022. (ECF No. 192.) The undersigned finds that a hearing is unnecessary, and that the motion can be resolved on the briefs. Thus, plaintiffs' motion requesting a hearing is DENIED. For the reasons below, defendants' Motion to Quash is GRANTED in part and DENIED in part.

## I.   BACKGROUND

The present cases involve anti-trust claims brought against Varsity Brands, LLC, its affiliated brands and companies, and its prior and present owners. In brief, the plaintiffs allege that the defendants conspired to and did in fact form a monopoly over the cheerleading industry in the United States. The plaintiffs filed

---

[1]One other related case is currently proceeding before this court: American Spirit and Cheer Essentials Inc., et al. v. Varsity Brands, LLC, et al., 2:20-cv-02782-SHL-tmp (W.D. Tenn. Jul. 24, 2020).

their complaint on December 10, 2020, seeking class certification, damages, and injunctive relief. (ECF No. 1.)

Marlene Cota was a Varsity employee from approximately June 1998 until her termination in January 2018. (ECF No. 190-1.) At the time of her termination, she held the title of "VP Corporate Alliances" and worked on corporate sponsorships. (ECF Nos. 180 at 2; 178 at 3.) Cota entered several agreements during her employment and in connection with her termination in which she "promis[ed] to keep Varsity's proprietary business information confidential, agree[d] that any material she created or received in the course of her employment was Varsity's exclusive property, and promis[ed] that she would return all of Varsity's property to the company upon her departure." (ECF No. 178 at 3.)

Plaintiffs became aware of Cota's potential relevance to the lawsuit when she was interviewed on HBO's Real Sports and made statements regarding "Varsity's role in All Star Cheer and the impact of its monopoly on child safety[.]" (ECF No. 180 at 2.) Cota's name did not appear in Varsity's initial disclosures, nor was she identified in response to plaintiffs' interrogatory that asked Varsity to "[i]dentify all Person(s) responsible for negotiating, drafting, implementing, and approving any Contracts on behalf of Varsity with . . . (c) third-party merchandisers or retailers selling Apparel or other cheerleading-related merchandise at All Star Events [and] (d) any Sponsor of All Star

Events, Championships, or Championship Qualifiers." (Id. at 3-4.)
Defendants note that over a year ago, Varsity produced an
organizational chart to plaintiffs that included Cota and her job
title. (ECF No. 189 at 4.) Despite the production of this document,
plaintiffs did not request Cota as a Rule 34 document custodian.
(Id.)

Plaintiffs issued a subpoena to Cota pursuant to Federal Rule
of Civil Procedure 45 on November 3, 2021, seeking her deposition
and the production of documents. (ECF No. 180 at 7.) On December
16, 2021, Bryan Meredith, Cota's attorney, wrote a letter to
defendants stating that Cota had several categories of documents
in her possession from her employment with Varsity, including:

> (1) agreements and other documents describing or
> referencing Ms. Cota's employment compensation, and/or
> the terms and conditions of her employment with Varsity;
>
> (2) correspondence between Ms. Cota and Varsity
> employees and/or sponsors or other third parties
> pertaining to sponsorships, competitions, competitors,
> and other business dealings;
>
> (3) business development documents disseminated by
> Varsity to its employees and/or third parties including
> documents related to acquiring sponsorships and
> commissions for the acquisition of new sponsorships; and
>
> (4) Ms. Cota's personal notes made during her employment
> with Varsity, some of which are loose leaf and many of
> which are contained in volumes of notebooks.

(Id. at 7.) Meredith offered Varsity the chance to review the
documents before Cota produced them to plaintiffs and arranged a
meeting with Varsity on December 20, 2021. (Id. at 7-8.) Plaintiffs

objected to this meeting and asked that they be allowed to participate in the inspection of the documents. (Id. at 8.) As a result, the meeting was postponed. (Id.) Meredith has stated that Cota has agreed to return the documents to Varsity when the present motion is resolved. (Id.)

Cota claims that the documents in question were loaded into her car after her termination. In her affidavit, Cota states that after she was terminated from Varsity, "I was not allowed to access my workspace at Varsity or bring anything with me when I left Varsity Headquarters that day, except for my purse." (ECF No. 190-1 at 1.) The next day, Robert Tisdale, the Vice President of Human Resources for Varsity, called Cota and directed her to return to the office to pick up her personal items. (Id.) When she arrived, Cota was not allowed to enter the building. (Id. at 2.) Instead, two Varsity employees, Ronald Shaw and Tisdale, met her at the side entrance and packed four to six boxes into her car. (Id.) In addition to the items described by Cota's attorney above, the boxes also included, "six to eight published books, a small clock and small figurines from the television show Walking Dead, approximately five framed family photographs, a small photo album book, several small rocks and a few other small items of personal memorabilia." (Id. at 2-3.)

Defendants dispute this version of events. Defendants submitted affidavits from Shaw, the Shipping and Receiving manager

at Varsity, and from Tisdale, who has since retired. (ECF No. 186-1 & 186-2.) In his affidavit, Shaw states that he assisted Tisdale in delivering the boxes to Cota's car but had no knowledge of the boxes' contents. (ECF No. 186-1.) In Tisdale's affidavit, he states that he "separated the personal items in [Cota's] office from Varsity materials. . . Only Ms. Cota's personal items were packed into the boxes placed into her car." (ECF No. 186-2 at 2.) He also submitted contemporaneous notes that he made regarding Cota's termination, which state the following: "I packed up her office the next morning and separated personal items from Varsity items. I met her on the parking lot with the personal boxes, then loaded in her car." (Id., Ex. A.) Tisdale denies that any of the named items listed by Meredith were in the boxes that he packed. (Id. at 2.)

## II.  ANALYSIS

Defendants move the court to quash or modify the subpoena and enter a protective order that prohibits Cota from providing the documents at issue to plaintiffs. (Id. at 9.) Varsity argues that the documents sought by plaintiffs are the exclusive property of Varsity and should have been returned when Cota was terminated and that the subpoena is being used to circumvent Rule 34. (ECF No. 178 at 10-15.) Plaintiffs argue that defendants lack standing to quash the subpoena and there is no good cause to support a protective order. (ECF No. 180 at 7-12.)

- 6 -

**A.    Standing to Quash**

At the outset, the court must decide whether the defendants have standing to quash the Cota Subpoena under Rule 45. Defendants insist that they have standing because the subpoena "calls for the production of information subject to her contractual confidentiality obligations to Varsity," and the documents are the sole property of Varsity. (ECF No. 178 at 9-10.) Plaintiffs argue that Varsity forfeited any interest in the documents when they provided them to Cota after her termination. (ECF No. 180 at 12.)

To have standing to quash or object to a Rule 45 subpoena, a party must typically establish a claim of privilege or personal right to the requested documents. Boodram v. Coomes, No. 1:12CV-00057-JHM, 2016 WL 11333789, at *2 (W.D. Ky. Jan. 28, 2016) (citations omitted). "Personal rights or interests sufficient to confer standing to quash or object to a subpoena can arise in a variety of contexts." Id. "For example, a party has a personal interest in his or her employment records held by a subpoenaed non-party . . . and in banking records of a party that are in the possession of a financial institution. . ." Id. (citing Halawani v. Wolfenbarger, No. 07-15483, 2008 WL 5188813, at *1 (E.D. Mich. Dec. 10, 2008) (standing due to party's claim of personal interest of privacy in his personnel file and home address); Catskill Dev., L.L.C. v. Park Place Ent. Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (standing to oppose discovery of personal bank records)); see also

- 7 -

Prado v. Mazeika, No. 3:16-cv-320, 2019 WL 1039896, at *3 (S.D. Ohio Mar. 5, 2019) (standing to move to quash subpoena of documents from a non-party employee of the defendant when the defendant had custody and control of the documents sought); Stokes v. Xerox Corp., No. 05-CV-71683-DT, 2006 WL 6686584, at *2 (E.D. Mich. Oct. 5, 2006) (standing to move to quash subpoena of documents from a non-party employee of the defendant where the non-party employee was "acting as a representative" for the defendant with respect to the documents requested).

Here, the documents sought by plaintiffs relate solely to Cota's role as a Varsity employee. Additionally, Cota would not have had access to or possession of these documents except for the fact that she was a Varsity employee. See Elvis Presley Enters., Inc. v. City of Memphis, No. 2:18-cv-02718-SHM-dkv, 2020 WL 4283279 (W.D. Tenn. Apr. 6, 2020) (finding city had standing because documents sought related solely to third party's time as former city representative and the third party would not have had access to the documents but for his role in city government). Varsity also has a property interest in the subpoenaed materials based on the various agreements between Cota and Varsity regarding materials produced and received during her employment. Thus, Varsity has standing to challenge the subpoena.

**B.   Motion to Quash**

"'A subpoena to a third party under [Federal Rule of Civil Procedure] 45 is subject to the same discovery limitations as those set out in Rule 26.'" Mid Am. Sols. LLC v. Vantiv, Inc., No. 1:16-mc-2, 2016 WL 1611381, at *5 (S.D. Ohio Apr. 20, 2016) (alteration in original) (quoting State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc., No. 12-cv-11500, 2013 WL 10936871, at *3 (E.D. Mich. Nov. 26, 2013)). "Federal Rule of Civil Procedure 26 permits parties to obtain discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" Id. (quoting Fed. R. Civ. P. 26(b)(1)). "'Demonstrating relevance is the burden of the party seeking discovery.'" Id. (quoting Am. Elec. Power Co. v. U.S., 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

The court finds that plaintiffs have established that the discovery sought is relevant. Based on Meredith's description of the documents in his December 16 letter, the documents appear to be relevant to plaintiff's claims that Varsity "monopolized the All-Star Cheer and All-Star Apparel Markets" and engaged in anticompetitive practices that were instituted around the availability of corporate sponsorships. (ECF No. 180 at 5.) Cota's role as "VP Corporate Alliances" at Varsity suggests she may have documents relevant to plaintiffs' claims that Varsity excluded "potential competitors access to the showrooms at its market-dominant All Star Competitions." (Id.) In addition to

relevancy, Rule 26 requires that the discovery be "proportional to the needs of the case," Fed R. Civ. P. 26(b)(1), and Rule 45 requires a subpoenaing party to "take reasonable steps to avoid imposing undue burden or expense [on the non-party]," Fed. R. Civ. P. 45(d)(1). Defendants have not challenged proportionality, nor do they have any direct expenses associated with the production. As to Cota, "'the status of a person as a non-party is a factor that weighs against disclosure.' " Mid Am. Sols., 2016 WL 1611381, at *5 (quoting Am. Elec. Power Co., 191 F.R.D. at 136). However, Cota has indicated willingness to produce the requested documents. The plaintiffs have established relevancy and proportionality.

However, this does not end the inquiry. Under Rule 45, on timely motion, the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

The defendants largely argue that the confidentiality and employment agreements between Cota and themselves grant the company an exclusive property interest in these documents that prevents them from being produced by Cota. While case law certainly establishes their interest in the documents for standing purposes,

- 10 -

a confidentiality agreement does not make material "protected matter" for purposes of Rule 45. In re Mitchell, No. 18-40736-JMM, 2019 WL 1054715, at *3 (Bankr. D. Idaho Mar. 5, 2019) (noting that "protected matter" commonly refers to "testimony or documents that, although not privileged, are nevertheless protected from compelled disclosure, such as attorney work product or trial preparation materials") (citing 9 James Wm. Moore et al., Moore's Federal Practice, ¶45.51[3] (3d ed. 1999)). Indeed, "the Federal Rules of Civil Procedure's liberal discovery rules trump private party agreements seeking to limit available information." Gard v. Grand River Rubber & Plastics Co., No. 1:20cv125, 2021 WL 75655, at *8 (N.D. Ohio Jan. 8, 2021) (quoting Kelly v. Romines, No. MC 11-0047 JB, 2021 WL 681806, at *6 (D.N.M. Feb. 27, 2012)). The only objection defendants make under Rule 45 that might require quashing the subpoena is that the documents "may contain attorney-client privilege communications." (ECF No. 178 at 10.) Although the descriptions of the documents in question do not suggest that they would contain any attorney client privilege, and Cota's attorney has already stated in his letter to Varsity that "I am not aware of any legal basis for Ms. Cota to refuse to produce the documents," (ECF No. 178-2 at 2), out of an abundance of caution, the court will allow defendants to review Cota's documents for

privilege before they are produced to the plaintiffs.[2] If
defendants believe that certain documents are covered by
privilege, they may withhold production of those documents and
shall produce a privilege log to the plaintiffs at the same time
that they produce the rest of Cota's documents. The court
emphasizes that Cota's documents may not be withheld on any other
grounds other than privilege. Although defendants requested a
separate protective order, Cota has already agreed (and plaintiffs
have no objection to) designating the documents as "Highly
Confidential" under the existing protective order. (ECF No. 180 at
15.) The documents shall be produced according to this order, so
that any sensitive information contained within may be
safeguarded.

### III. CONCLUSION

For the reasons stated above, the defendants' motion is
GRANTED in part and DENIED in part. Cota is ORDERED to provide a
complete copy of the documents in question to Varsity within seven
days from the date of this order. Thereafter, defendants shall
have seven days to review the documents, produce all non-privileged
documents to plaintiffs, and if applicable, produce a privilege

---

[2]Plaintiffs argue that Varsity has waived any privilege through
their "production" of the documents to Cota back in 2018. Since it
is unclear whether any of the documents contain privileged
materials, the court declines to rule on any potential waiver until
the matter is more fully presented in a separate motion.

log. These documents shall be governed by the existing protective
order.

    IT IS SO ORDERED.

                       s/ Tu M. Pham
                       TU M. PHAM
                       Chief United States Magistrate Judge

                       January 28, 2022
                       Date