UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JESSICA JONES, *et al.*,<br><br>    Plaintiffs,<br>  v.<br><br>BAIN CAPITAL PRIVATE EQUITY, *et al.*,<br><br>    Defendants. | Case No. 2:20-cv-02892 |
| FUSION ELITE ALL STARS, *et al.*,<br><br>    Plaintiffs,<br>  v.<br><br>VARSITY BRANDS, LLC, *et al.*,<br><br>    Defendants. | Case No. 2:20-cv-02600 |

**VARSITY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF ADAM BLUMENFELD**

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................1

ARGUMENT .......................................................................................................................3

     I.     THE JONES PLAINTIFFS HAVE EXCEEDED THE LIMIT FOR
           DEPOSITIONS IN THIS CASE ...................................................................5

     II.    MR. BLUMENFELD POSSESSES NO UNIQUE, RELEVANT
           INFORMATION ............................................................................................6

CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Wyo. Cty. Sheriff's Off.*,
   15-CV-531W, 2017 WL 2115381 (W.D.N.Y. May 16, 2017)......................................................4

*Bluewater Music Servs. Corp. v. Spotify USA Inc.*,
   No. 3:17-cv-01051, 2019 WL 6904599 (M.D. Tenn. March 25, 2019).....................................6

*Bush v. Dictaphone Corp.*,
   161 F.3d 363 (6th Cir. 1998)......................................................................................................6

*Devlin v. Chemed Corp.*,
   No. 04-cv-74192-DT, 2005 WL 2313859 (E.D. Mich. Sept. 21, 2005) ....................................4

*Finisar Corp. v. Nistica, Inc.*,
   No. 13-cv-03345-BLF (JSC), 2015 WL 3988132 (N.D. Cal. June 30, 2015) .........................12

*Grateful Dead Prods. v. Sagan*,
   No. C 06-7727(JW) PVT, 2007 WL 2155693 (N.D. Cal. July 26, 2007)................................12

*In re Apple Iphone Antitrust Litig.*,
   No. 11-cv-06714-YGR (TSH), 19-cv-03074-YGR (TSH), 20-cv-05640-YGR (TSH),
   2021 WL 485709 (N.D. Cal. Jan. 26, 2021) ............................................................................10

*Johnson v. CoreCivic, Inc.*,
   No. 18-cv-1051-STA-tmp, 2019 WL 5089086 (W.D. Tenn. Oct. 10, 2019) .............................3

*Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*,
   No. 18-cv-2104-JTF-tmp, 2020 WL 1527827 (W.D. Tenn. Mar. 30, 2020).............................4

*Sharma v. Lockheed Eng'g & Mgmt. Servs. Co., Inc.*,
   Nos. 87–3134(L), 88–3055, 1988 WL 118154 (4th Cir. Nov. 7, 1988).....................................6

*Wagner v. Novartis Pharms. Corp.*,
   No. 3:07-cv-129, 2007 WL 3341845 (M.D. Tenn. July 12, 2007) ............................................4

*Walgreen Co. v. Hammer*,
   No. 1:10CV2902, 2011 WL 13237757 (N.D. Ohio Nov. 29, 2011) ........................................12

*Watrobski v. FCA US, LLC*,
   No. 16-cv-11632, 2017 WL 4073955 (E.D. Mich. Sept. 14, 2017)...........................................4

**Other Authorities**

Fed. R. Civ. P. 26................................................................................................................4

Fed. R. Civ. P. 30................................................................................................................5

The Varsity Defendants ("Varsity") hereby oppose Plaintiffs' motion to compel the deposition of Adam Blumenfeld.[1]

## BACKGROUND

Since April 2017, Adam Blumenfeld has been the Chief Executive Officer of Varsity Brands, a conglomeration of multiple distinct businesses. (Blumenfeld Decl. ¶¶ 1-2.) These include BSN, which is a sporting goods manufacturer and supplier; Herff Jones, which provides graduation regalia such as caps and gowns, as well as other scholastic merchandise such as yearbooks; and Varsity Spirit, which, among other things, is in the cheerleading business. *Id.* ¶ 2. Only Varsity Spirit is relevant to these cases. Mr. Blumenfeld has never worked in that business unit, other than indirectly through his role as CEO of Varsity Brands. *Id.* ¶ 3.

Plaintiffs are taking the depositions of numerous individuals who had direct involvement in the matters that they have brought into issue in these cases, including the current and past leadership of Varsity Spirit. (Kaiser Decl. ¶ 1.) Many of these depositions have extended late into the evening or over two days. (*Id.* ¶ 2.) Not content with these hundreds of hours of depositions, Plaintiffs seek to inconvenience, annoy, harass, and burden Varsity and Mr. Blumenfeld by subjecting Mr. Blumenfeld to a deposition on the basis that he is the CEO of Varsity Brands and therefore has overall responsibility for the conduct of its divisions, including Varsity Spirit.

Shockingly, for someone they now speculate has vast troves of key first-hand percipient knowledge, Plaintiffs did not even request Mr. Blumenfeld's deposition until March 3, 2022

---

[1] The Varsity Defendants refers to Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC.

(Plfs.' Br., Buchanan Decl. Ex. 3),[2] which was *after* the original deadline for the close of discovery and six weeks before the current April 18 discovery deadline, which the Court has ordered will not be extended absent "extraordinary circumstances." (ECF No. 175.) On March 8 (three business days later), Varsity reiterated that Mr. Blumenfeld would not voluntarily submit to a deposition. (Plfs.' Br., Buchanan Decl. Ex. 3.) Plaintiffs then waited an additional ten days to even seek a perfunctory meet and confer. (*Id.*, Ex. 7.) Varsity repeated that it saw no basis for the proposed deposition and noted that none had been provided. (*See id.*, Ex. 9.) Plaintiffs then filed this motion to compel, exactly one month before the close of fact discovery.

In an effort to justify the deposition of Mr. Blumenfeld, Plaintiffs speculate as to what supposed knowledge Mr. Blumenfeld would have about Varsity Spirit and about essentially irrelevant details about Varsity Brands. Ultimately, though, they provide no basis to credit that speculation. Indeed, their failure to cite a single substantive document from the hundreds of thousands that have been produced in this case is the conclusive proof that Plaintiffs are seeking this deposition for improper reasons: to annoy, embarrass, oppress and unduly burden Varsity and Mr. Blumenfeld.

The late demand for Mr. Blumenfeld's deposition is emblematic of the last-minute approach that has led to an almost absurd schedule in these cases in the last month of discovery. With full knowledge that discovery was set to close on February 18, 2022, Plaintiffs in this and the related cases took no depositions until November 16, 2021. (Kaiser Decl. ¶ 3.) In that month, they took two depositions. (*Id.*) In December 2021, having obtained a two-month

---

[2] The *Jones* Plaintiffs previously had demanded that Mr. Blumenfeld be a custodian for purposes of document production, but dropped that demand in November 2021. (The *Fusion Elite* Plaintiffs never sought to have Mr. Blumenfeld be a custodian or asked about taking his deposition.)

extension to discovery, with the Court noting that no further extensions would be granted absent "extraordinary circumstances," Plaintiffs took one deposition. (*Id.* ¶ 4.) In January, they took one and in February, they took two. (*Id.* ¶¶ 5-6.) Now in March, with the final discovery deadline looming, they are seeking to pack the schedule, often with more than one deposition a day. Indeed, Plaintiffs noticed approximately 27 depositions to take place between March 1 and April 18. (*Id.* ¶ 7.) In addition, Plaintiffs jointly issued a 105-topic 30(b)(6) notice, which they expanded to 120 topics, including a topic listed as "Anything mentioned in any complaint or discovery request directed to any Defendant in the *American Spirit* action." (*Id.* ¶¶ 8.) Plaintiffs have since retracted some topics, but over 70 still remain, including the topic asking for testimony on "anything mentioned in any complaint or discovery request." (*Id.*) As if that were not enough, the *Jones* Plaintiffs have demanded *twenty* depositions of Bain and Charlesbank employees, even though the Court in *American Spirit* dismissed the claims that were brought against Bain and Charlesbank, and the *Jones* Plaintiffs issued separate 30(b)(6) notices with 33 topics each to Bain and Charlesbank. (*Id.* 9-10.) Also in March, the *Fusion Elite* and *Jones* Plaintiffs each issued numerous additional interrogatories to all of the organizational Defendants in those cases. (*Id.* ¶ 11.) They likewise issued almost two hundred requests for admission to Varsity, 94 in *Fusion Elite* and 85 in *Jones*. (*Id.*)

Plaintiffs, by their actions, have betrayed their belief that there are no limits to their license to burden Defendants with last-minute discovery. Plaintiffs should not be further rewarded with an unnecessary and unwarranted deposition of Varsity Brands' CEO.

## ARGUMENT

Discovery is not unlimited. "The party seeking discovery is obliged to demonstrate relevance." *Johnson v. CoreCivic, Inc.*, No. 18-cv-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). And even theoretically "relevant" evidence is not discoverable if the

burden of doing so would be disproportionate. The proportionality analysis considers: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "Determinations as to proportionality are subject to change with the circumstances of the case." *Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-cv-2104-JTF-tmp, 2020 WL 1527827, at *2 (W.D. Tenn. Mar. 30, 2020) (internal citations and quotations omitted). "This is in part because '[c]onsiderations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns.'" *Id.* (quoting *Abbott v. Wyo. Cty. Sheriff's Off.*, 15-CV-531W, 2017 WL 2115381, at *2 (W.D.N.Y. May 16, 2017)). In addition, the Court should limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C).

   Depositions of a corporate CEO are recognized as an easy tool for harassment. Such depositions generally are not permitted unless the individual has some demonstrable first-hand knowledge of relevant events that is not available from other sources. *See, e.g.*, *Watrobski v. FCA US, LLC*, No. 16-cv-11632, 2017 WL 4073955, at *4 (E.D. Mich. Sept. 14, 2017) (denying motion to compel the deposition of CEO where plaintiff made no showing that CEO had "unique personal knowledge" of the facts at issue); *see also Wagner v. Novartis Pharms. Corp.*, No. 3:07-cv-129, 2007 WL 3341845, at *3 (M.D. Tenn. July 12, 2007) ("[T]he Court finds that Plaintiff has not shown that Ebeling [CEO] possesses unique personal knowledge relevant to the instant

4

litigation. In the absence of such a showing, Plaintiff shall be precluded from deposing Ebeling"); *Devlin v. Chemed Corp.*, No. 04-cv-74192-DT, 2005 WL 2313859, at *2 (E.D. Mich. Sept. 21, 2005) ("In the absence of a showing of unique personal knowledge, the circuit courts, including the Sixth Circuit, have upheld the entry of a protective order precluding the depositions of high level company executives."). Here that is not the case.

I. **THE JONES PLAINTIFFS HAVE EXCEEDED THE LIMIT FOR DEPOSITIONS IN THIS CASE**

As an initial matter, the *Jones* Plaintiffs have already taken more than ten depositions in this case. Any further depositions by Plaintiffs in that case would require leave of Court, which the *Jones* Plaintiffs have neither sought nor obtained, or the parties' consent. *See* Fed. R. Civ. P. 30(a)(2)(A)(i) ("A party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken . . . by the plaintiffs . . . ."). Indeed, as of the date of the filing of this response, the *Jones* Plaintiffs have taken, on their own notice, at least 15 depositions. (Kaiser Decl. ¶ 12.) Although Varsity and the other Defendants have indulged Plaintiffs' seemingly insatiable desire for depositions by stipulating to certain depositions outside the ten-deposition limit, Varsity is certainly not required to do so endlessly or to do so as to any particular deposition. Any deposition of Mr. Blumenfeld in the *Jones* case would exceed the deposition limit and should not be permitted.

The *Fusion Elite* Plaintiffs negotiated for additional depositions (which the *Jones* Plaintiffs did not do), and formally the *Fusion Elite* Plaintiffs have a few remaining depositions of Defendants in the 25 for which they negotiated. However, whether Plaintiffs in *Fusion Elite* are actually interested in taking a deposition of Mr. Blumenfeld or are merely "giving cover" to the *Jones* Plaintiffs is debatable—as discussed below, the primary reason Plaintiffs provide for the deposition is Varsity's relationship with Charlesbank and Bain. Varsity's relationship with

5

Charlesbank and Bain is not at issue in the *Fusion Elite* case. Moreover, the *Fusion Elite* Plaintiffs have never indicated any interest in Mr. Blumenfeld as a document custodian or as a deponent. (Kaiser Decl. ¶ 13.)

## II. MR. BLUMENFELD POSSESSES NO UNIQUE, RELEVANT INFORMATION

Plaintiffs' argument is essentially that Mr. Blumenfeld is the CEO and therefore knows about Varsity Spirit and cheerleading: "It is a fact of basic corporate governance that a CEO is ultimately responsible to the company and to its board of directors for the actions and decisions of the company. In that capacity, a CEO is responsible for all decisions and acts of the company, and would be knowledgeable about the financial performance of the company, its business model, its profitability, its operations, as well as for responding to any competitive threats and execution of the company's business and goals." (Plfs.' Br. at 5.) As the statement itself concedes ("[i]t is a fact of basic corporate governance"), it could be made of any CEO, which is why courts routinely deny depositions of CEOs. *See, e.g.*, *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998); *see also Sharma v. Lockheed Eng'g & Mgmt. Servs. Co., Inc.*, Nos. 87–3134(L), 88–3055, 1988 WL 118154, at *3 (4th Cir. Nov. 7, 1988). (denying deposition of Lockheed's President where information was "more easily obtainable from other sources," including numerous documents and depositions of individuals "directly involved" with the issues in the case); *Bluewater Music Servs. Corp. v. Spotify USA Inc.*, No. 3:17-cv-01051, 2019 WL 6904599, at *3 (M.D. Tenn. March 25, 2019) (denying deposition of Spotify CEO after finding plaintiff's argument that CEO's position as founder and visionary of Spotify was insufficient to show unique personal knowledge of relevant issues).

As those and other courts have held, where there is a lack of unique personal knowledge of relevant issues, the deposition of a high-level corporate official, much less a CEO, is not warranted. That is the case here.

As an initial matter, Mr. Blumenfeld has only been CEO of Varsity Brands since April 2017.  (Blumenfeld Decl. ¶ 1).  Most of the allegations in Plaintiffs' complaints relate to events concerning Varsity Spirit that happened *before* Mr. Blumenfeld's time as CEO of Varsity Brands.  Moreover, despite having access to a massive document production from nearly two dozen custodians as well as Varsity Brands' board documents, Plaintiffs have not cited a *single* document to this Court that would suggest Mr. Blumenfeld had unique or particular involvement in the day-to-day business decisions of Varsity Spirit that Plaintiffs seek to bring into issue in this case.  In addition, Plaintiffs have taken or are scheduled to take (or indicated they intend to take) the depositions of approximately 26 current and former employees of Varsity who actually worked in the cheerleading business, as opposed to Mr. Blumenfeld, who did not.  (Kaiser Decl. ¶ 14.)  These include the current and past leadership of Varsity Spirit who should be the most knowledgeable of the matters that Plaintiffs have brought into issue in this litigation, including John Nichols, Bill Seely, and Jeff Webb.  Plaintiffs have proven this point by trying to position Mr. Webb as Mr. Blumenfeld's "predecessor."  (Plfs.' Brief at 2.)  Mr. Webb is indeed very familiar with Varsity's cheerleading business from the time that he founded it.  But his successor in running Varsity's cheerleading business was not Mr. Blumenfeld—it was Mr. Nichols, who was then succeeded by Mr. Seely (who remains in this role today).  (Blumenfeld Decl. ¶¶ 3, 5.)  Mr. Nichols has already been deposed by Plaintiffs, and Mr. Seely and Mr. Webb are both scheduled for two-day depositions in the coming weeks.

Other individuals at Varsity Spirit who have been (or will be) deposed—not Mr. Blumenfeld—can, in Plaintiffs' words (Plfs.' Br. at 2), "most broadly testify about how Varsity views the Relevant Markets, its competitors in those markets, and its strategies and goals in those Markets."  (*See* Blumenfeld Decl. ¶ 6.)  Of course, Plaintiffs' formulation of topics for testimony,

7

in particular "how Varsity views the Relevant Markets," is flawed in its conception. Varsity is not a person that has "views." "Relevant Markets," which Plaintiffs have defined inconsistently in their respective cases, is an antitrust concept, not one susceptible to lay testimony. Fact witnesses should not be asked to opine on economic and legal concepts. And, in any event, the people who have information that might pertain to those issues are otherwise being deposed (or have been deposed).

Apparently realizing this, Plaintiffs mainly rely on their surmise that Mr. Blumenfeld, as CEO of Varsity Brands, "answered to" Varsity Brands' owners Bain and Charlesbank. The basic premise of the "answered to" argument is that Mr. Blumenfeld might be able to provide information about whether Bain and Charlesbank were so involved in Varsity that Plaintiffs' efforts to ascribe Varsity's actions to Bain and Charlesbank, and thus bring derivative claims against Bain and Charlesbank, could survive. Of course, the Court dismissed the same claims against Bain and Charlesbank that were brought in the *American Spirit* case, which, at a minimum, calls into grave doubt whether those claims are likely to survive in this case.

But even taking the supposed importance of this issue at face value, a deposition of Mr. Blumenfeld is unwarranted. As Bain and Charlesbank continue to await the decision on the motion to dismiss in this case, they have agreed to produce for deposition the three individuals who were the primary individuals at Bain and Charlesbank related to their respective ownership of Varsity Brands.[3] Plaintiffs' assertion, therefore, that Mr. Blumenfeld somehow has "unique knowledge" of this topic makes no sense. (*See* Blumenfeld Decl. ¶ 7).

---

[3] As noted above, demonstrating once again that Plaintiffs perceive no limits in their ability to harass Defendants with unreasonable discovery demands, Plaintiffs have demanded 20 depositions of current and former Bain and Charlesbank employees, which request Bain and Charlesbank have declined.

8

Plaintiffs point to other topics, but none withstand scrutiny. For example, they speculate that Mr. Blumenfeld, CEO of Varsity Brands, would somehow have unique knowledge about why certain unnamed employees of Varsity Sprit were terminated. Insofar as they are taking the deposition of the President of Varsity Spirit and have taken or will take the depositions of the current and past managers of Varsity's cheerleading business, that argument rings hollow. Moreover, if the termination of certain employees were actually an issue of importance, one would think Plaintiffs would have questioned those employees about their terminations when they deposed them. But, despite having ample opportunity to do so, they did not. For example, Plaintiffs subjected former Varsity employee, Jim Hill, to more than eight hours of deposition questioning on March 21, 2022 and did not ask him a single question about why he was terminated from Varsity. (Kaiser Decl. ¶ 15.)

Otherwise, Plaintiffs' "topics" are a word salad that boil down to one thing—Mr. Blumenfeld was the CEO. For example, they surmise that Mr. Blumenfeld had "ultimate responsibility to Varsity's owners" (Plfs.' Br. at 2) and that the "decisions" and "messaging would fall under any CEO's ultimate watch" (*id.*), that he sat "uniquely atop the Varsity empire" (*id.*) and knows about "various Varsity boards and the decisions that were approved by those boards" (*id.* at 3). And, finally, they seek to justify the unnecessary deposition of Mr. Blumenfeld with the curious argument that he has been mentioned in "public articles and media pieces regarding Varsity." (*Id.*) But, even on its own terms, that argument falls flat: one of the articles refers to a quote from Mr. Blumenfeld about how Varsity Brands had to borrow money during the pandemic, another is a discussion with Mr. Blumenfeld about how Varsity Brands survived the pandemic and does not even contain the word "cheer," another contains anodyne comments from Mr. Blumenfeld regarding a Netflix documentary on college cheerleading,

9

another simply reports that Mr. Blumenfeld is the CEO of Varsity Brands and has a cordial relationship with Jeff Webb (the article otherwise is about Mr. Webb), and the other simply reports on the acquisition of Varsity Brands by Bain and that Mr. Blumenfeld would remain as CEO of Varsity Brands. The fact that this is all Plaintiffs could find further proves Varsity's point. (Notably, Plaintiffs did not provide copies of these articles with its motion, apparently hoping that the Court would take their characterization of them at face value.)

Plaintiffs rely almost entirely on an unreported district court case from the Northern District of California, *In re Apple Iphone Antitrust Litig.*, No. 11-cv-06714-YGR (TSH), 19-cv-03074-YGR (TSH), 20-cv-05640-YGR (TSH), 2021 WL 485709 (N.D. Cal. Jan. 26, 2021) ("*Apple*"). Plaintiffs neglect to inform the Court, however, that in *Apple* the parties *agreed* that a deposition of the Apple CEO was appropriate but merely disputed the length of that deposition. That the question of taking the Apple CEO's deposition was not in dispute is not surprising, given the case "seem[ed] to embrace much of Apples' business model," *id.* at *3. Ultimately the Court chose an amount of time between the parties' competing proposals.

The situation at hand is not like the situation in *Apple*. This case is not about "much of [Varsity Brands'] business model." Indeed, Plaintiffs' describe their case by reference to past events and actions. (*See* Plfs.' Br at 1 ("Plaintiffs allege that Defendants *engaged in* an exclusionary scheme")) (emphasis added). Most of these events occurred a decade or more ago, and almost all of them occurred before Mr. Blumenfeld became CEO of Varsity Brands, which, again, encompasses multiple business divisions, with Varsity Spirit being but one of them.

Plaintiffs try to position Mr. Blumenfeld as a "key" figure to their claims, but their efforts do not withstand scrutiny. First, they point to the fact that Varsity was sold by Charlesbank to Bain during Mr. Blumenfeld's tenure. But, Plaintiffs do not explain, much less establish, what

10

relevance this has to their claims. To be sure, there is no claim that the sale of Varsity Brands to Charlesbank in 2018 was illegal or part of an illegal scheme. As a corollary, Plaintiffs argue that Mr. Blumenfeld may have information about Charlesbank's or Bain's involvement with Varsity's decisions or day-to-day management, with the unstated premise being that this could somehow save their claims from the same fate as the identical claims in the *American Spirit* case, which is to say dismissal. And they fail to point to a single document from the massive discovery of the files relating to cheerleading that they have had for the better part of a year to support the factual premise of their speculation. Put another way, if Charlesbank or Bain were involved in the decisions of Varsity's cheerleading business to the extent that Plaintiffs say is necessary to pierce the corporate veil, evidence of such involvement would surely have presented itself in the myriad of documents that they have. None are cited. Moreover, the entire topic is irrelevant to the *Fusion Elite* case, which as discussed above is the only case that has properly noticed Mr. Blumenfeld's deposition.

The other topic that Plaintiffs identify is acquisitions. Here, too, Varsity has produced massive quantities of emails and other discovery about all of the cheerleading acquisitions from all of the individuals who actually worked on the acquisitions. (Kaiser Decl. ¶ 16.) Plaintiffs cite none of them to the Court. And, indeed, the acquisition the Plaintiffs complain most about, the acquisition of Jam Brands in 2015, happened more than a year *before* Mr. Blumenfeld became CEO of Varsity Brands. Once again Plaintiffs have provided no basis to conclude that Mr. Blumenfeld has any non-duplicative and non-cumulative information about the acquisitions that Varsity Spirit has made during Mr. Blumenfeld's tenure as CEO of Varsity Brands.

The rest of Plaintiffs' presentation is a litany of speculation about how, as CEO, Mr. Blumenfeld must have some information about cheerleading. But Plaintiffs are not entitled to

depose everyone with information about the subject matter of the litigation. If they were, discovery would have no limits and fact discovery could never come to a conclusion. Plaintiffs have failed to show that Mr. Blumenfeld "may have unique first-hand knowledge regarding the facts at issue in this case," *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015), a prerequisite for his deposition as identified in even one of the cases that *Plaintiffs* cite.[4] Where, as here, the "high-level executive has little or no knowledge of the issues in the case," a deposition is not warranted. *Id.* at *3. Ultimately, the requested deposition—which would create a significant disruption to Mr. Blumenfeld's duties as CEO of Varsity Brands, especially on such short notice—would improperly inconvenience, annoy, harass, and burden Varsity and Mr. Blumenfeld, which is impermissible under the Federal Rules. (*See* Blumenfeld Decl. ¶ 8).

## CONCLUSION

Plaintiffs' motion should be denied.

Dated: March 25, 2022                    Respectfully submitted,

/s Matthew S. Mulqueen

George S. Cary*
Steven J. Kaiser*
Linden Bernhardt*
CLEARY GOTTLIEB STEEN & HAMILTON LLP

---

[4] The court in *Finisar* found that the CEO in that case may have such "unique, first-hand knowledge" based on a review of the depositions of other employees that showed particular knowledge gaps. *Finisar*, at *2-*3. Likewise, a showing of unique personal knowledge—wholly lacking here—was required before allowing a deposition of the executive in another of Plaintiffs' cases, *Walgreen Co. v. Hammer*, No. 1:10CV2902, 2011 WL 13237757 (N.D. Ohio Nov. 29, 2011). Another case Plaintiffs cite related to the inapposite issue of whether an assertion of having a "busy schedule" was enough to defeat a deposition of a high-level executive. *See Grateful Dead Prods. v. Sagan*, No. C 06-7727(JW) PVT, 2007 WL 2155693, at *1 (N.D. Cal. July 26, 2007).

2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lbernhardt@cgsh.com

Jennifer Kennedy Park*
Heather Nyong'o*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Phone: (650) 815-4100
Fax: (202) 974-1999
jkpark@cgsh.com
hnyongo@cgsh.com

* Admitted *pro hac vice*

Matthew S. Mulqueen (TN #28418)
Adam S. Baldridge (TN #23488)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Phone: (901) 526-2000
Fax: (901) 577-0866
mmulqueen@bakerdonelson.com
abaldridge@bakerdonelson.com

*Attorneys for Defendants Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Spirit Fashions & Supplies, LLC; Charlesbank Capital Partners, LLC; and Bain Capital Private Equity*

13