IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

───────────────────────────────────────

FUSION ELITE ALL STARS,        )
et al.,                        )
                               )
      Plaintiffs,              )
                               )
v.                             )     No. 20-cv-2600-SHL-tmp
                               )
VARSITY BRANDS, LLC,           )
et al.,                        )
                               )
      Defendants.              )

───────────────────────────────────────

ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY
───────────────────────────────────────

Before the court by order of reference is plaintiffs' Motion to Compel, filed on February 15, 2022. (ECF Nos. 199, 200.) For the reasons below the motion is DENIED.

## I.   BACKGROUND

The present case involves antitrust claims brought against Varsity Brands, LLC, and its affiliated brands and companies, ("Varsity") as well as the United States All Star Federation ("USASF"). In brief, the plaintiffs allege that the defendants conspired to and did in fact form a monopoly over the cheerleading industry in the United States. The plaintiffs filed their initial complaint on August 13, 2020, seeking class certification, damages, and injunctive relief. (ECF No. 1.) Plaintiffs filed an amended consolidated complaint on October 2, 2020, which contained

allegations that the defendants' exclusionary scheme allowed them to "resist the demand to prevent sexual abuse in the [All Star cheerleading] industry." (ECF No. 56 at PageID 428.)

Plaintiffs served Varsity with their First Request for Production of Documents ("Varsity Requests") on October 16, 2020, and their First Interrogatories ("Varsity Interrogatories") on November 25, 2020. (ECF No. 199-2 at PageID 3341-42.) Some of these requests and interrogatories sought information pertaining to Varsity's policies regarding background checks and the reporting of sexual misconduct. (ECF No. 199-1.) Varsity served its written responses and objections to the Varsity Requests on November 16, 2020, and its written responses and objections to the Varsity Interrogatories on November 25, 2020. (ECF No. 199-2 at PageID 3341-42.)

Plaintiffs served USASF with their First Request for Production of Documents ("USASF Requests") on October 19, 2020, and their First Interrogatories ("USASF Interrogatories") on November 25, 2020. (Id. at PageID 3342-43.) USASF served its written responses and objections to the USASF Requests on November 18, 2020, and its written responses and objections to the USASF Interrogatories on December 28, 2020. (Id.)

On December 1, 2020, Varsity filed a Motion to Strike Class Allegations and Spurious Allegations Regarding Sexual Abuse. (ECF No. 82.) On May 5, 2021, plaintiffs filed motions to compel

discovery responses from USASF and Varsity. (ECF Nos. 102 & 105.)
On June 22, 2021, plaintiffs agreed to withdraw requests regarding
sexual abuse pending the resolution of Varsity's Motion to Strike.
Specifically, plaintiffs stated in an email memorializing a
discovery agreement between the parties:

> 93-103: Plaintiffs will withdraw these Requests, without
> prejudice, pending a decision on the Motion to Strike.
> If Defendants' motion to strike is denied, these
> Requests will automatically be deemed reinstated, and
> Plaintiffs and Varsity will promptly meet and confer
> regarding the scope of the Requests and Defendant[]s[']
> related requests to Plaintiffs.

(ECF No. 203-1.) On December 3, 2021, plaintiffs and USASF reached
a similar agreement regarding the production of documents and
search parameters for electronically stored information. (ECF No.
199-2 at PageID 3343.) As part of that agreement, plaintiffs again
agreed to withdraw requests related to sex abuse without prejudice
pending the resolution of the Motion to Strike.[1] (Id.)

On December 16, 2021, the court entered an Amended Scheduling
Order, which extended the close of fact discovery to April 18,
2022. (ECF No. 177.) At the end of the Order, the court stated,

---

[1]In their Motion to Strike, Varsity argues that under Federal Rule
of Civil Procedure 12(f), the allegations in the amended complaint
regarding sexual abuse should be stricken because "[t]he
allegations have no place in an antitrust suit," and therefore are
"immaterial, impertinent, [and] scandalous." (ECF No. 82 at PageID
565.) Should the presiding District Judge grant the motion to
strike, plaintiffs would clearly not be entitled to the discovery
at issue. However, even if the motion to strike is denied, that
decision would not entitle plaintiffs to discovery because the
motions are decided under different standards.

- 3 -

"***No other requests for extensions of these deadlines will be granted absent extraordinary circumstances.***" (<u>Id.</u>) (emphasis in original). Plaintiffs contacted Varsity and USASF on January 12, 2022 to re-instate the requests related to sex abuse. (ECF No. 199-2 at PageID 3342-43.) Both Varsity and USASF refused to comply with production. (<u>Id.</u>) On February 15, 2022, plaintiffs filed the present Motion to Compel, requesting that this court compel Varsity and USASF to produce documents related to sex abuse in the cheerleading industry. (ECF No. 199.) Both Varsity and USASF responded on March 1, 2022, arguing that the Motion should be denied because plaintiffs' requests have been withdrawn pursuant to discovery agreements, the requests seek irrelevant information, and the requests are unduly burdensome. (ECF Nos. 203 & 204.) Both Varsity and USASF argue that they should be awarded the costs of responding to the motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). (<u>Id.</u>) Plaintiffs filed a reply on March 8, 2022, in which they argued that their requests were paused rather than withdrawn, that the requested discovery is neither disproportionate nor unduly burdensome, and that there is no basis for sanctioning them.[2] (ECF No. 207.)

---

[2]On June 29, 2022, plaintiffs filed a motion requesting a hearing on the present motion. (ECF No. 281.) The same day, defendants filed a response opposing the motion for a hearing. (ECF No. 282.) The motion for a hearing is denied, as the parties' arguments are fully addressed in their briefs.

## II.  ANALYSIS

### A.   The Scope of Discovery

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obligated to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL 3927525 (S.D. Ohio June 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "It is well established that the scope of discovery is within the sound discretion of the trial

court." Pittman v. Experian Information Solutions, Inc., 901 F.3d 619, 642 (6th Cir. 2018) (quoting Lavado v. Keohane, 992 F.2d 601, 604 (6th Cir. 1993)).

## B.   Relevance and Proportionality

As a threshold issue, defendants argue that pursuant to their discovery agreements, the discovery requests at issue have been withdrawn pending a ruling on the Motion to Strike. (ECF No. 203 at PageID 3446-47.) Because the Motion to Strike has not been denied, defendants claim that plaintiffs' renewal of these requests constitutes a breach of their discovery agreements, and that the Motion should be denied on this basis alone. (Id. at PageID 3448.) However, given the current status of the case, including the December 16 Amended Scheduling Order, (see ECF No. 177) the undersigned will address the merits of the present motion.

Defendants argue that discovery relating to sexual abuse is not relevant to plaintiffs' antitrust claims. Plaintiffs contend that the discovery is relevant because the failure to police sexual abuse constitutes a reduced quality of service, which is a kind of anticompetitive effect that antitrust laws seek to remedy. Plaintiffs argue, "[a]nticompetitive effects can establish monopoly power and can support finding an antitrust violation . . . . Reduced quality of a product or services is one such effect." (ECF No. 199-1 at PageID 3327.)

In their amended complaint, plaintiffs cite to a USA Today article that claims 140 people who were convicted of sex offenses against children continue to work unrestricted in the All Star cheerleading industry. (ECF No. 56 at PageID 428.) Plaintiffs allege that "USASF has a system for checking the backgrounds of coaches and gym owners, but its system only flagged 21 people before USA Today reporters began their investigation. USASF only banned these 21 people from going 'backstage' at USASF events - they could still work in the industry." (Id.) Further, plaintiffs assert "USASF previously fielded complaints from its customers regarding sex offenders within the cheerleading industry, but it refused to take comprehensive action in response to these complaints." (Id.) Finally, plaintiffs allege, "Varsity, through USASF, refused to take action because its market share and lack of effective competition allowed it to resist calls for a more rigid, restrictive, and expensive background check system." (Id.)

Although these allegations are unquestionably serious, their relevance to the pending antitrust action is, at best, tenuous. One of the requirements of establishing antitrust standing is antitrust injury. Dodge Data & Analytics LLC v. iSqFt, Inc., 183 F. Supp. 3d 855, 863 (S.D. Ohio 2016). An antitrust injury is (1) an "injury of the type the antitrust laws were intended to prevent" and (2) an injury that "flows from that which makes defendants'

acts unlawful." In re Cardizem CD Antitrust Litig., 332 F.3d 896, 909 (6th Cir. 2003). "[B]ecause the purpose of the antitrust laws is to protect competition rather than competitors, a plaintiff must allege injury, not only to himself, but to a relevant market. Thus, failure to allege an anti-competitive impact on a relevant market amounts to a failure to allege an antitrust injury." Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962). Specifically, "a plaintiff must put forth factual allegations plausibly suggesting that there has been an adverse effect on prices, output, or quality of goods in the relevant market as a result of the challenged actions." Guinn v. Mount Carmel Health, No. 2:09cv226, 2012 WL 628519, at *4 (S.D. Ohio Feb. 27, 2012). "Even though a claimant alleges that an injury is causally related to an antitrust violation, it will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny." NicSand, Inc. v. 3M Co., 507 F.3d 442, 451 (6th Cir. 2007) (quoting Atl. Richfield Co. v. USA Petroleom Co., 495 U.S. 328, 334 (1990) (internal quotations omitted)).

Plaintiffs argue the alleged pervasive sexual abuse within the All Star cheer industry is an anticompetitive effect of defendants' monopolization of that industry. However, plaintiffs have not demonstrated a nexus between defendants' alleged anticompetitive conduct in the competitive cheer industry and USASF's purported failure to police sexual abuse within that

industry. The USA Today article cited by plaintiffs discusses USASF's failure to warn gyms - members of the putative class - that coaches were under investigation for sexual abuse. (ECF No. 199-3 at PageID 3349.) As a result, gyms would unknowingly hire these coaches. (Id. at PageID 3354.) However, there are no allegations that a gym must rely on USASF's background check process and could not implement their own safety policies when hiring their own employees. Additionally, besides plaintiffs' allegation in their complaint that "Varsity controls the USASF," plaintiffs have not pointed to any specific conduct of Varsity relating to the failure to police sexual abuse within the industry. (ECF No. 56 at PageID 418-20.)

Further, plaintiffs have acknowledged that they "are not seeking to recover damages resulting from any sexual misconduct," nor could they. (ECF No. 118-1 at PageID 1779.) An antitrust injury must be to "business or property." 15 U.S.C. § 15(a); Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) ("The phrase 'business or property' . . . retains restrictive significance [and] would, for example, exclude personal injuries suffered."). Plaintiffs solely seek discovery on sexual abuse to present it as one of several anticompetitive effects of defendants' alleged monopoly. The majority of their complaint focuses on injuries that are commonly recognized in antitrust cases as anticompetitive effects: raised prices and the impaired growth of competitors. (ECF No. 56 at

PageID 426-27.) The allegations regarding sexual abuse simply do not demonstrate that the alleged abuse is "causally related to an antitrust violation," and thus the relevance of the discovery on the topic is questionable at best.  NicSand, Inc., 507 F.3d at 451 (quoting Atl. Richfield Co._, 495 U.S. at 334).

Turning to proportionality, alleged sexual abuse against minors is an issue of the highest public importance. However, that critical issue is, at most, only marginally relevant to the present antitrust action. Although the court is skeptical that the production of the discovery would be as burdensome as the defendants suggest it would be, and believes that the first four proportionality factors favor the plaintiffs, the fifth and sixth factors weigh heavily in favor of defendants. Therefore, the motion to compel is DENIED.

## C.  Costs and Expenses

Both Varsity and USASF assert that they are entitled to reasonable expenses and attorneys' fees regarding their responses to the motion to compel pursuant to Fed. R. Civ. P. 37(a)(5)(B). (ECF Nos. 203 at 12; 204 at 17.) Rule 37(a)(5)(B) provides that if a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant . . . to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). However, "the court must not order this payment if

the motion was substantially justified or other circumstances make an award of expenses unjust." Id. "A motion is substantially justified if reasonable people could differ as to the appropriateness of the . . . action." State Farm Mutual Auto. Ins. Co. v. Angelo, No. 19-10669, 2020 WL 7021695, at *2 (E.D. Mich. Nov. 30, 2020) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted)). Although the court has denied the motion to compel, the court finds that the motion is substantially justified and, therefore, defendants' motion for attorney's fees is DENIED.

### III. CONCLUSION

For the above reasons, the Motion to Compel is DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

September 15, 2022
Date

- 11 -