**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|  |  |
|---|---|
| FUSION ELITE ALL STARS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VARSITY BRANDS, LLC, et al., <br><br> Defendants. | Civ. Action No. 2:20-cv-02600 |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,
PROVISIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASSES,
APPROVAL OF NOTICE PLAN, AND APPROVAL OF THE PROPOSED SCHEDULE
<u>FOR COMPLETING THE SETTLEMENT PROCESS</u>**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 3

A.  PLAINTIFFS' ALLEGATIONS ............................................................................ 3

B.  THE RISKS POSED BY DEFENDANTS' DEFENSES .............................................. 4

C.  LITIGATION AND PROCEDURAL HISTORY ......................................................... 4

D.  THE SETTLEMENT AGREEMENT ...................................................................... 6

    1.  Monetary Relief. ......................................................................................... 6

    2.  Prospective Relief. ...................................................................................... 7

    3.  Summary of Proposed Plan of Allocation. ................................................. 8

    4.  Notice and Settlement Administration Costs. ............................................. 9

    5.  Release. ....................................................................................................... 9

    6.  Attorneys' Fees and Costs for Class Counsel, and Service Awards for Class Representatives. ................................................................................ 10

ARGUMENT .................................................................................................................... 11

A.  THE PROPOSED SETTLEMENT MEETS THE SIXTH CIRCUIT'S STANDARDS FOR APPROVAL ............................................................................................... 11

    1.  The Settlement Was Reached after Adequate Representation and Arm's-Length Negotiation. ..................................................................................... 12

    2.  The Proposed Settlement Provides Adequate Relief in Light of the Risks, Costs, and Length of Continued Litigation. ................................................ 13

    3.  The Proposed Settlement Has No Obvious Deficiencies and Treats Class Members Equitably. .................................................................................... 16

B.  THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED SETTLEMENT CLASSES ................................................................................... 16

    1.  The Requirements of Rule 23(a) Are Satisfied ........................................ 17

    2.  The Proposed Settlement Classes Satisfy Rule 23(b)(3) .......................... 20

C.  THE COURT SHOULD AUTHORIZE DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASSES ................................................................................... 23

D.  THE COURT SHOULD APPOINT ANGEION AS SETTLEMENT ADMINISTRATOR ............................................................................................ 25

E.  THE COURT SHOULD APPOINT HUNTINGTON AS ESCROW AGENT ............. 25

F.  THE COURT SHOULD SCHEDULE A FAIRNESS HEARING TO APPROVE THE SETTLEMENT ................................................................................................... 26

CONCLUSION ................................................................................................................. 27

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................... 17, 20, 21, 22

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
   568 U.S. 455 (2013)..................................................................................................... 21

*Bobbitt v. Acad. of Reporting Inc.*,
   2009 WL 2168833 (E.D. Mich. Jul. 21, 2009).................................................... 11

*Borcea v. Carnival Corp.*,
   238 F.R.D. 664 (S.D. Fla. 2006)............................................................................... 14

*Bowers v. Windstream Ky. East, LLC*,
   2013 WL 5934019 (W.D. Ky. Nov. 1, 2013)....................................................... 13

*Busby v. Bonner*,
   2021 WL 4127775 (W.D. Tenn. Jan. 28, 2021) ................................................ 11

*Busby v. Bonner*,
   466 F. Supp. 3d 821 (W.D. Tenn. 2020)............................................................... 18

*Cason-Merenda v. VHS of Mich., Inc.*,
   296 F.R.D. 528 (E.D. Mich. 2013) ..................................................................18, 21

*Conwood Co., L.P. v. U.S. Tobacco Co.*,
   290 F.3d 768 (6th Cir. 2002)..................................................................................... 21

*Dillworth v. Case Farms Processing, Inc.*,
   2010 WL 776933 (N.D. Ohio Mar. 8, 2010).......................................................... 23

*Fitzgerald v. P.L. Mktg., Inc.*,
   2020 WL 7764969 (W.D. Tenn. Feb. 13, 2020) ................................................ 12

*Gooch v. Life Inv. Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012)..................................................................................... 23

*Hicks v. State Farm Fire and Casualty Co.*,
   965 F.3d 452 (6th Cir. 2020)..................................................................................... 17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)...................................................................................... 22

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996)..................................................................................... 18

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 297 (E.D. Mich. 2001) ..............................................................20, 23

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .......................................................... 14, 15, 16

ii

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ............................................................................ 19

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
  481 F.3d 1119 (9th Cir. 2007) ........................................................................... 15

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) ...................................................................... 11

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................................. 14

*In re Linerboard Antitrust Litig.*,
  2004 WL 1221350 (E.D. Pa. June 2, 2004) ...................................................... 10

*In re Packaged Ice Antitrust Litig.*,
  2010 WL 5638219 (E.D. Mich. Sept. 2, 2010) .............................................16, 17

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .............................................14, 15

*In re Polyurethane Foam Antitrust Litig.*,
  314 F.R.D. 226 (N.D. Ohio 2014) ...................................................................... 19

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995) ........................................................................ 20

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................ 16

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) .........................................................................20, 21

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
  2012 WL 3312668 (W.D. Ky. Aug. 13, 2012) ..................................................... 11

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 2946459 (E.D. Tenn. June 30, 2014) ................................................. 10

*In re Southeastern Milk Antitrust Litig.*,
  2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ................................................... 23

*In re Southeastern Milk Antitrust Litig.*,
  2013 WL 2155387 (E.D. Tenn. May 17, 2013) .................................................. 10

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..........................................................................15, 16

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) .........................................................................17, 20

*Int'l Union v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006) .................................................. 19

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) .........................................................................11, 12

*J.B.D.L. Corp. v. Wyeth–Ayerst Labs., Inc.*,
   225 F.R.D. 208 (S.D. Ohio 2003) ........................................................... 17

*Leonhardt v. ArvinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008) ................................................ 13

*Marcus v. Kan., Dep't of Revenue*,
   206 F.R.D. 509 (D. Kan. 2002) .............................................................. 19

*Powers v. Hamilton Cnty. Public Defender Comm.*,
   501 F.3d 595 (6th Cir. 2007) ................................................................. 21

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ................................................................... 22

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................. 15

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ................................................................. 18

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................................... 22

*The Hospital Authority of Metropolitan Government of Nashville v.
   Momenta Pharmaceuticals, Inc.*,
   2020 WL 3053468 (M.D. Tenn. May 29, 2020) .................................... 10

*Yost v. First Horizon Nat. Corp.*,
   2011 WL 2182262 (W.D. Tenn. June 3, 2011) ..................................... 18

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ............................................................17, 18

**Statutes**

15 U.S.C. § 2 ............................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 5

Fed. R. Civ. P. 23 ............................................................................2, 17, 28

Fed. R. Civ. P. 23(a) .............................................................................17, 20

Fed. R. Civ. P. 23(a)(1) ............................................................................. 17

Fed. R. Civ. P. 23(a)(2) ............................................................................. 17

Fed. R. Civ. P. 23(a)(3) ............................................................................. 18

Fed. R. Civ. P. 23(a)(4) ............................................................................. 18

Fed. R. Civ. P. 23(b) ................................................................................. 17

Fed. R. Civ. P. 23(b)(3) ................................................................................20, 21, 23

Fed. R. Civ. P. 23(c)(2) ............................................................................................ 24

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................23, 24

Fed. R. Civ. P. 23(e) ..........................................................................................2, 11, 12

Fed. R. Civ. P. 23(e)(1)(B)(i–ii) ...........................................................................12, 17

Fed. R. Civ. P. 23(e)(2) ..................................................................................11, 12, 13

Fed. R. Civ. P. 23(e)(2)(A)-(D) .............................................................................12, 14

Fed. R. Civ. P. 23(e)(3) ............................................................................................ 14

Fed. R. Civ. P. 23(g) ................................................................................................ 20

**Other Authorities**

Manual For Complex Litigation (Fourth) § 21.63 ................................................... 11

Newberg and Rubenstein on Class Actions § 13.14 (6th ed. 2022) .......................... 13

## INTRODUCTION

Under the terms of a settlement agreement dated March 15, 2023 (the "SA"),[1]

Defendants Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashion & Supplies,

LLC (collectively, "Varsity") have agreed to make aggregate cash payments totaling

$43,500,000.00. In addition, Varsity and U.S. All Star Federation, Inc. ("USASF") (Varsity and

USASF together, "Defendants") have agreed to institute significant prospective relief that

unwinds some of the key allegedly anticompetitive conduct at issue in this case. In exchange for

this valuable relief, Direct Purchaser Plaintiffs ("DPPs"),[2] including three All Star Gyms (on

behalf of a proposed Gym Class) and three spectators of All Star Events (on behalf of a proposed

Spectator Class)[3] have agreed to dismiss this litigation with prejudice and release Defendants

and related parties ("the Settlement").

This Settlement comes after more than two-and-half years of hard-fought litigation, the

completion of all fact discovery, including 40 party depositions, the exchange of four lengthy

---

[1] Capitalized terms have the same meanings set forth in the March 15, 2023 SA attached as Exhibit 1.

[2] Fusion Elite All Stars; Spirit Factor LLC d/b/a Fuel Athletics; Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center; Kathryn Anne Radek; Lauren Hayes; and Janine Cherasaro.

[3] The Settlement Classes consist of:

**Gym Class**: All entities that paid registration or related fees and expenses directly to Varsity to participate in Varsity All Star Events from May 26, 2016 through March 15, 2023 (the "Class Period").

**Spectator Class**: All persons who paid entrance (admission) or other fees and expenses directly to Varsity to observe Varsity All Star Events during the Class Period.

Excluded from the Classes are Defendants, their parent companies, subsidiaries, affiliates, franchisees, officers, executives, and employees; any entity that is or has been partially or wholly owned by one or more Defendants or their respective subsidiaries; States and their subdivisions, agencies and instrumentalities; and any judicial officer presiding over this matter and his or her staff, except that officers of USASF who are not employees of any of Defendants, their parent companies, subsidiaries, affiliates, or franchisees shall not be excluded from the Classes.

1

expert reports, depositions of each expert, a full-day, in-person mediation before an experienced mediator, and extensive arm's length negotiations following the mediation.[4]

The Settlement is fair and reasonable and satisfies the requirements of Fed. R. Civ. P. 23(e). Counsel for both sides are highly experienced in antitrust litigation and well-positioned to assess the risks and merits of the case. As detailed below and in the supporting documents, this case—which did not follow a government investigation or action—involves a series of allegedly anticompetitive acts extending back more than two decades and legal claims arising out of that conduct. In the face of material risks of an adverse outcome or the potential for lengthy delays and appeals, the Settlement represents a meaningful recovery for the Settlement Classes in no small part because it includes significant structural changes to the sport of All Star Cheer—an unusual achievement in private litigation.

DPPs therefore ask—and Defendants do not oppose—that the Court enter the accompanying proposed Preliminary Approval Order that will: (i) preliminarily approve the Settlement; (ii) provisionally certify the Settlement Classes under Fed. R. Civ. P. 23 for settlement purposes only; (iii) appoint the six named plaintiffs as Class Representatives and designate Berger Montague PC, DiCello Levitt LLC, and Cuneo Gilbert & LaDuca, LLP as Settlement Class Counsel;[5] (iv) approve the notice plan for the Settlement Classes; (v) appoint

---

[4] The parties participated in a full-day mediation before the Hon. Layn Phillips of Phillips ADR on January 10, 2023 (having initially participated in an early mediation before Judge Phillips in January 2021). The parties continued to negotiate in the weeks after the full-day mediation with the assistance of Miles N. Ruthberg, Esq. of Phillips ADR, resulting in an agreement-in-principle that led to the SA currently being presented to the Court.

[5] On September 18, 2020, the Court appointed Berger Montague PC, Labaton Sucharow LLP, and Cuneo Gilbert & LaDuca, LLP as Interim Co-Lead Class Counsel and Branstetter, Stranch & Jennings, PLLC as Interim Liaison Class Counsel for the proposed Direct Purchaser Plaintiff Classes. *See* ECF No. 37. On March 7, 2022, the Court granted DPPs' Motion to Amend the leadership appointment to substitute DiCello Levitt LLC for Labaton Sucharow LLP when the attorneys principally working on the case switched law firms. *See* ECF No. 206.

Angeion Group LLC ("Angeion") as Settlement Claims Administrator; (vi) appoint The Huntington National Bank ("Huntington") as the escrow agent; and (vii) approve the proposed schedule for completing the settlement process and set a date for a final Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. PLAINTIFFS' ALLEGATIONS

DPPs are All Star Gyms and Spectators. All Star Gyms are privately owned and operated businesses that field cheerleading teams that compete in All Star Cheer Events.[6] This case involves allegations that Varsity, in conspiracy with USASF, acquired, enhanced, and maintained monopoly power in the All Star Cheer Events Market in the United States through an unlawful scheme in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *See* Consolidated Amended Class Action Complaint, filed October 2, 2020 (ECF No. 56) ("CAC").

Varsity is the leading producer of All Star Cheer Events in the United States. USASF is a governing and standard-setting body for All Star Cheer. DPPs allege that since 2005, Varsity used an exclusionary scheme, facilitated by USASF, to acquire, maintain, and enhance monopoly power in the market for All Star Events, including, *inter alia*, (a) Varsity's systematic acquisition of All Star Competition rivals; (b) Varsity's use of its alleged monopoly power to impose exclusionary contracts and anticompetitive loyalty programs on All Star Gyms; and (c) Varsity's alleged collusion with USASF to allow Varsity to control the bids to the key national championship in All Star Cheer (known as "Worlds"). *Id.*, ¶¶ 242-261.

DPPs claim that, as a result of the alleged scheme, Varsity was able to artificially inflate the prices it charged (i) All Star Gyms to register at Varsity Events, and (ii) Spectators to view

---

[6] All Star Cheer is a discipline of cheer that involves athletes performing a two-and-a-half-minute routine composed of tumbling, stunting, pyramids, and dance.

Varsity Events. DPPs sought to recover the overcharges they allegedly paid to Varsity during the Class Period, as well as prospective relief to make the All Star Cheer Events Market more competitive. *Id.*

### B. THE RISKS POSED BY DEFENDANTS' DEFENSES

Defendants asserted multiple challenges to the merits of DPPs' claims. *See* USASF and Varsity's Answers to Plaintiffs' Consolidated Amended Class Action Complaint ("Answers"), ECF Nos. 148 and 149. Defendants have asserted, among other arguments, that (a) the statute of limitations purportedly precludes consideration of a large portion of the challenged conduct, which occurred more than four years prior to the filing of the claims, (b) the relevant market was not national, as DPPs allege, but regional, (c) the challenged acquisitions were procompetitive, (d) the loyalty programs that DPPs challenge as anticompetitive purportedly involved discounts that benefitted Gyms, and (e) Varsity and USASF acted independently and in procompetitive ways. Defendants retained expert economists who opined that the challenged conduct was procompetitive, not anticompetitive, and that DPPs' methods of proving impact and damages to the proposed classes were unreliable and thus that (i) the proposed classes could not be certified for litigation purposes, and (ii) DPPs could not prove they or Class Members suffered any harm from the challenged conduct. DPPs have disputed each and every argument raised by Defendants, but understand that risks of adverse outcomes on these and other issues, and the possibility of lengthy delays (including appeals) remained.

### C. LITIGATION AND PROCEDURAL HISTORY

DPPs initiated this action on in the Northern District of California on May 26, 2020, and it was re-filed before this Court on August 13, 2020. *See* Joint Declaration of Eric L. Cramer, Karin E. Garvey and Victoria Sims in Support of Direct Purchaser Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Provisional Certification of Proposed Settlement

Classes, Approval of Notice Plan, and Approval of the Proposed Schedule for Completing the Settlement Process, ¶ 7 ("Joint Decl."), attached hereto as Exhibit 2. For the next two-and-a half years, DPPs aggressively pursued their claims on behalf of the proposed Gym and Spectator Classes in this Court. Joint Decl. ¶¶ 8-13.

Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on December 1, 2020, arguing that DPPs failed to plausibly allege their Section 2 claims, and also asserting that the statute of limitations barred consideration of certain of the challenged conduct. ECF Nos. 83 and 84. On August 26, 2021, the Court denied the motion in most, but not all, respects. *See* ECF No. 141.[7]

Thereafter, the parties began fact discovery. At the outset, at DPPs' urging, the Court imposed a discovery coordination committee including the DPPs and two other plaintiff groups proceeding with similar antitrust claims on behalf of different types of claimants against Defendants (and other parties) in this Court. ECF No. 37. The DPPs coordinated with the other plaintiff groups to ensure efficient discovery and deposition scheduling. As part of discovery, DPPs secured the production of approximately 1,629,324 documents from Defendants and another 89,754 documents from third parties, produced 4,575 documents from DPPs' files, took 32 fact depositions and defended eight plaintiff-witness depositions. Joint Decl. ¶ 15. The parties also engaged in extensive motion practice concerning numerous discovery disputes. *See, e.g.*, ECF Nos. 102, 105, 116, 120, 125, 126, 129, 199, 203, 204. Subsequently, the parties conducted expert discovery, with each side submitting lengthy reports (including opening and rebuttal reports from each of the DPPs' experts), and each of the four experts being deposed. Joint Decl.

---

[7] Defendants also filed a motion to strike DPPs' class allegations, ECF No. 82, which the parties fully briefed. The Court recently denied that Motion as moot, given the parties' agreement to settle the case. ECF No. 326.

¶¶ 20-21. DPPs were set to file papers in support of class certification when the parties reached an agreement to settle. A trial was scheduled for January 16, 2024. ECF No. 314.

### D.  THE SETTLEMENT AGREEMENT

The SA contains the following key terms:

#### 1.  Monetary Relief.

Varsity agreed to pay cash in the amount of $43,500,000.00 in three installments to create a Settlement Fund for the benefit of the Settlement Classes. SA § 26. The first installment of $2 million is to be paid within 30 days of preliminary approval. *Id*. The second installment of $28 million shall be paid on or before December 1, 2023. *Id*. The third and final installment of $13.5 million shall be paid on or before December 1, 2024. *Id*.

All members of both Settlement Classes will receive payments from the Settlement Fund, *pro rata*, in proportion to the damages they allegedly suffered as computed by DPPs' economist (Dr. Hal Singer) in his expert reports submitted during the expert discovery period. *See infra*, § D(3) Summary of Proposed Plan of Allocation. The Settlement Fund will also pay for the expenses of the Settlement Claims Administrator and the costs of notice to the Settlement Classes, any service awards the Court awards to the Class Representatives, attorneys' fees and expenses, and any other administrative fees or costs that may be approved by the Court. SA §§ 37-38. If the Settlement is approved, Defendants have no reversionary interest in any of the Settlement Funds. *Id*.[8]

---

[8] The parties have executed a confidential "Supplemental Agreement" setting forth certain conditions under which this Settlement Amount may be reduced if Class members comprising a certain share of the purchases made by the Settlement Classes during the Class Period timely exclude themselves from the Settlement Classes. Any potential reduction in the Settlement Amount due to Settlement Class Member exclusions will be brought to the Court's attention at the final Fairness Hearing. The parties will provide this Supplemental Agreement to the Court for inspection *in camera* upon request.

###### 2.      Prospective Relief.

The Settlement contains significant prospective relief, effective from the date of Final Approval through December 31, 2028. The relief unwinds some of the key conduct that the DPPs challenged as anticompetitive in the matter. In DPPs' view, these changes have the potential to facilitate vigorous competition in the All Star Cheer Events Market.

First, DPPs alleged that a key aspect of the challenged anticompetitive scheme involved Varsity's loyalty programs. The DPPs claimed these were effectively exclusive deals because they required, according to DPPs, that Gyms devote virtually their entire All Star Cheer season to Varsity (*i.e.*, attending at least six Varsity Events) to receive rebates associated with the fees they paid to compete in Varsity's Cheer competitions. *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss. ECF No. 91, pp. 20-24. The Settlement rolls back that requirement, barring Varsity from requiring "attendance at more than three All Star Events during a single regular season as a condition of receiving Varsity's lowest tier of rebates or discounts." SA § 30(a)(2). In DPPs' view, this change would transform Varsity's rebate program from an anticompetitive exclusive deal to a program that is far less likely to foreclose competition from Varsity's All Star Event producing rivals.

Second, DPPs charged that Varsity's control over, and collusion with, USASF— including by controlling the majority of USASF's board and key committees and by paying USASF's top executives—facilitated Varsity's monopolization of the All Star Cheer Events Market. The SA would untangle the two organizations and allow for a truly independent governing body. For instance, it provides that: (1) "No person shall simultaneously serve on the boards of Varsity (or any other Varsity entity) and USASF;" (2) "Varsity may not, directly or

indirectly, pay the salaries of any USASF employees or executives;" (3) "No more than 1/3 of the voting board seats on USASF's Board of Directors may be occupied by any single Event Producer;" (4) "No more than 40% of the seats on USASF's Sanctioning Committee may be occupied by any single Event Producer;" and (5) "After implementing the changes set forth above with respect to USASF's Board of Directors and Sanctioning Committee, USASF commits to continuing to evaluate proposals from its membership that are properly brought to its Board of Directors or an appropriate committee, in accordance with its policies and procedures." SA § 30(b)-(f).

### 3.    Summary of Proposed Plan of Allocation.

The Net Settlement Fund—which is the Settlement Amount less all Court awarded attorneys' fees, service awards, and costs—shall be disbursed in accordance with a plan of allocation to be approved by the Court at the Final Approval Hearing. That plan, in summary, would divide the Net Settlement Fund into two tranches: one for the Gym Class ("Gym Class Tranche") and one for the Spectator Class ("Spectator Class Tranche"), roughly in proportion to the alleged damages each Settlement Class suffered as computed by DPPs' expert economist (Dr. Hal Singer) in his merits expert reports. The Gym Class will receive 85% of the Net Settlement Fund and the Spectator Class will receive 15% of the Net Settlement Fund. The Gym Class Tranche would then be allocated to individual members in that Class in proportion to the amount of money each Gym directly paid to Varsity during the Class Period. Gym Class members will have the ability to rely upon a pre-printed form containing data reflecting each Gym's payments to Varsity in submitting claims.

Because DPPs do not have records of all or most Spectator Class ticket expenditures, the Spectator Class Tranche will be allocated, for each Spectator Class member who submits a claim form, by providing a flat amount per Spectator per Event ($10) with a cap for each Spectator

Class member ($200). To combat fraud, the plan will require claimants to submit information about the Event attended, including one or more of the following criteria, among others: name of the athlete Spectator came to see, method of payment (and receipt if available), date and location of Event, etc.

### 4. Notice and Settlement Administration Costs.

DPPs have retained Angeion, a highly experienced, well-regarded, third-party administrator to provide notice to the Settlement Classes and to handle the administration of the claims. The proposed Notice Plan is described in the Declaration of Steven Weisbrot, Esq. of Angeion ("Weisbrot Decl.") (attached hereto as Exhibit 3). The proposed forms of the notices ("Proposed Notices") include: (1) a long form that will be mailed to all members of the Gym Class for whom Varsity has current addresses, and (2) a publication notice to be published in periodicals widely read by members of the Settlement Classes. Each communicates members of the Settlement Classes' rights and options under the Settlement in plain, easily understood language, are attached as exhibits B and C to the Weisbrot Decl. (Exh. 3 hereto).[9]

### 5. Release.

In exchange for the monetary and prospective relief, Defendants and certain related parties identified in the SA will receive a release of all claims Gym and Spectator Class members brought or could have brought arising out of the nucleus of operative facts set out in the CAC through the Execution Date of the SA. The release is narrowly tailored to the claims and allegations arising out of this Action and takes care not to release (a) certain unrelated claims that

---

[9] All Notice and Administrative Costs will be paid from the Settlement Fund. SA § 35. Settlement Class Counsel may withdraw money from the Settlement Fund to pay for expenses associated with providing notice of the Settlement to the Classes. *Id.*

might arise between the parties in the "ordinary course," SA § 23, and (b) claims being asserted based on indirect purchases from Varsity (*i.e.*, the *Jones* plaintiffs) under state law. *Id.*

### 6. Attorneys' Fees and Costs for Class Counsel and Service Awards for Class Representatives.

Settlement Class Counsel intends to make an application to the Court for a reasonable attorneys' fee award in an amount not to exceed one-third of the gross Settlement Fund (*i.e.*, 1/3 of $43.5 million or $14.5 million), plus one-third of any accrued interest, plus reasonable expenses incurred during the litigation of this case not to exceed $2.25 million.

DPPs will also seek service awards for Class Representatives to be paid from the Settlement Fund, in an amount up to $20,000 for each of the three Gym Class Representatives and $5,000 for each of the three Spectator Class Representatives ($75,000 total).[10] Each class representative produced documents and sat for a deposition, and each devoted substantial time and energy to the matter. Joint Decl. ¶ 16. The Gym Class representatives, in particular, took significant risks on behalf of the Settlement Classes. But for the service of the Class Representatives, significant structural changes to the sport of All Star Cheer would not have been achieved, and members of the Settlement Classes would be uncompensated. *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004) (noting that service awards were "particularly appropriate in this case because there was no preceding governmental action alleging a conspiracy").

---

[10] Recent service awards for class representatives in other antitrust cases in this Circuit have ranged from $10,000 to $200,000. *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (awarding $10,000 to each of the 16 class representatives); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *4 (E.D. Tenn. June 30, 2014) (awarding $50,000 each to the class representatives); *The Hospital Authority of Metropolitan Government of Nashville v. Momenta Pharmaceuticals, Inc.*, 2020 WL 3053468, at *2 (M.D. Tenn. May 29, 2020) (awarding $200,000 each to the class representatives).

## ARGUMENT

### A.  THE PROPOSED SETTLEMENT MEETS THE SIXTH CIRCUIT'S STANDARDS FOR APPROVAL

This Court should preliminarily approve the Settlement. Sixth Circuit law favors and encourages settlements—particularly in class actions and other complex matters where the inherent costs, delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*") (noting "the federal policy favoring settlement of class actions").

Approval of this proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. *See* The Manual For Complex Litigation (Fourth) § 21.63 ("Manual"); *see also Bobbitt v. Acad. of Reporting Inc.*, 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).[11]

Rule 23(e)(1)(B)(i) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to ... approve the proposal under Rule 23(e)(2)." *Busby v. Bonner*, 2021 WL 4127775, at *2 (W.D. Tenn. Jan. 28, 2021) (Lipman, J.). Under Rule 23(e)(2), a court must review whether the proposed settlement is "fair, reasonable, and adequate after considering" four factors: (i) the class representatives and class counsel have adequately

---

[11] At the final Fairness Hearing, the Court will determine whether the proposed Settlement satisfies Fed. R. Civ. P. 23(e), providing that a court may approve a proposed class settlement "on finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Skechers Toning Shoe Prods. Liab. Litig.*, 2012 WL 3312668, at *8 (W.D. Ky. Aug. 13, 2012); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 352 (N.D. Ohio 2001).

represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D); *Fitzgerald v. P.L. Mktg., Inc*., 2020 WL 7764969, at *11 (W.D. Tenn. Feb. 13, 2020) (explaining that, effective December 1, 2018, Rule 23(e) sets out "a new rubric" of four factors to consider when determining whether to grant preliminary approval of a class action settlement).

The Rule 23(e) factors overlap with the Sixth Circuit's factors for considering a settlement's fairness, reasonableness, and adequacy: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 631.

Here, the SA: (1) was entered into after adequate representation and arm's-length negotiation before an experienced mediator, extensive factual and legal investigation, and more than 2.5 years of hard-fought litigation; (2) provides significant relief for the Settlement Classes in light of the risks, costs, and length of continued litigation; and (3) in the opinion of experienced proposed Settlement Class Counsel, has no deficiencies and treats Class Members equitably. Accordingly, proposed Settlement Class Counsel believe that the SA is in the best interests of the Settlement Classes and should be preliminarily approved.

### 1. The Settlement Was Reached after Adequate Representation and Arm's-Length Negotiation.

The first two Rule 23(e)(2) factors support preliminary approval. The SA here is the result of lengthy and hard-fought litigation over two-and-a-half years, and intense negotiations, with the assistance of a preeminent mediator, between counsel experienced in complex antitrust

class action litigation. Joint Decl. ¶¶ 22-26. With extensive fact discovery and expert depositions complete, proposed Settlement Class Counsel were well-informed about the facts and strengths of the claims asserted when the most recent negotiations began. These negotiations included a full-day in-person mediation on January 10, 2023, before Hon. Layn Phillips of Phillips ADR, and follow-up discussions for weeks afterwards overseen by Miles N. Ruthberg, Esq. also of Phillips ADR. Joint Decl. ¶¶ 22-23.

These negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, 2013 WL 5934019, at *2 (W.D. Ky. Nov. 1, 2013). Because the Settlement "arose out of arms-length, non-collusive negotiations[,]" the primary procedural factor is met and the Court may presume the settlement to be fair, adequate, and reasonable. Wm. B. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.14 (6th ed. 2022).

**2.    The Proposed Settlement Provides Adequate Relief in Light of the Risks, Costs, and Length of Continued Litigation.**

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Each of these factors supports preliminarily approving the Settlement.

The Settlement is meaningful and substantial and will result in cash payments totaling $43.5 million for the benefit of the Settlement Classes. Standing alone, the monetary recovery—

which constitutes a significant portion of the maximum potential damages recovery as computed by DPPs' economist (Dr. Singer)—is sufficient. Joint Decl. ¶ 24. But the Settlement also provides additional value to the Settlement Classes in the form of significant prospective relief involving important changes to Defendants' business practices that unwind some of the key conduct that DPPs had challenged as anticompetitive. In DPPs' view, the prospective relief has the potential to facilitate competition for the entire All Star Cheer Event industry benefitting all members of the Settlement Classes. *Id.*, ¶ 26.

Further, the substantial relief obtained was achieved without the benefit of a governmental investigation or intervention, but instead proceeded solely through the initiative, investigation, and resources of private parties and counsel. Rather than risking an adverse verdict at trial, and years of uncertain appeals, DPPs took advantage of a unique opportunity—after fact discovery closed, expert reports were exchanged, and experts were deposed—to negotiate a Settlement that provides immediate, certain, and meaningful relief to all members of the Settlement Classes. Accordingly, this factor weighs in favor of preliminary approval.[12]

Continued litigation would be risky, costly, and lengthy. Antitrust class actions are "arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("*Packaged Ice II*") (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem II*") ("Antitrust class actions are inherently complex").

---

[12] *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush") (internal quotation marks omitted).

14

Here, class certification was expected to be aggressively fought by Defendants (including

with a potential interlocutory appeal to the Sixth Circuit). Further, while DPPs were confident of

their ability to prevail in front of a Memphis jury, a trial on the issues in the case would have

exposed the Classes to significant risk.

Defendants would likely have asserted various arguments and defenses at trial, and a jury

trial might well turn on questions of proof, many of which would be the subject of dueling expert

testimony, particularly regarding causation and damages, making the outcome of such trial

uncertain for both parties. *See, e.g.*, *Cardizem II*, 218 F.R.D. at 523 ( "[t]he prospect of a trial

necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no

matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's

favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice II*, 2011 WL

6209188, at *12 (noting "undeniable inherent risks" in antitrust class actions, including "whether

the class will be certified and upheld on appeal, whether the conspiracy as alleged in the

Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust

impact and ultimately whether Plaintiffs will be able to prove damages").[13]

Finally, the passage of time would introduce still more risks in terms of appeals and

possible changes in the law that would, in light of the time value of money, make future

recoveries less valuable than recovery today.[14] Hence, "the certain and immediate benefits to the

---

[13] Moreover, given the stakes involved, an appeal would have been nearly certain to follow
regardless of the outcome at trial. This creates additional risk, as judgments following trial may
be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives'
Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment
following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir.
1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant).

[14] *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was
inevitable that post-trial motions and appeals would not only further prolong the litigation but

Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem II*, 218 F.R.D. at 525.

> **3.** **The Proposed Settlement Has No Obvious Deficiencies and Treats Class Members Equitably.**

The Settlement "has no obvious deficiencies [and] does not improperly grant preferential treatment to Class Representatives[.]" *In re Packaged Ice Antitrust Litig.*, 2010 WL 5638219, at *1 (E.D. Mich. Sept. 2, 2010) ("*Packaged Ice I*"). As discussed above, the recovery constitutes a significant and certain benefit for members of the Settlement Classes. All members of the Settlement Classes, including Class Representatives, will be treated fairly and in a similar manner, each recovering their *pro rata* share of the Net Settlement Fund according to a Court-approved Plan of Allocation. Nothing during the negotiations or the terms of the Settlement itself presents any grounds to doubt the fairness of the Settlement. Rather, the substantial relief, the arm's-length nature of the negotiations, and the participation of sophisticated proposed Settlement Class Counsel and their experts throughout the litigation, support a finding that the proposed Settlement has no obvious deficiencies and fairly treats all members of the Settlement Classes.

> **B. THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED SETTLEMENT CLASSES**

To preliminarily approve the Settlement, the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B)(i–

---

also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time").

ii). Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A court may grant certification in light of settlement where, as here, the proposed settlement classes satisfy the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See Packaged Ice I*, 2010 WL 5638219, at *1.

## 1. The Requirements of Rule 23(a) Are Satisfied.

### a. Numerosity.

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." Based on discovery in the case and the investigation of their experts, proposed Settlement Class Counsel believe that the proposed Gym Class contains more than two thousand Gyms, and the proposed Spectator Class consists of tens of thousands of individuals. Joint Decl. ¶ 24. "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (internal citations omitted). As a result of the large number of members of the Settlement Classes and their geographic distribution throughout the United States, joinder is impracticable.

### b. Commons Questions of Law and Fact.

Commonality under Fed. R. Civ. P. 23(a)(2) requires only a single factual or legal issue common to all class members. *Hicks v. State Farm Fire and Casualty Co*., 965 F.3d 452, 458 (6th Cir. 2020); *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) ("*Whirlpool*"). Many factual and legal issues are common, including whether Varsity had market power, whether the Defendants conspired, and whether the challenged conduct violated the antitrust laws. *See J.B.D.L. Corp. v. Wyeth–Ayerst Labs., Inc.*, 225 F.R.D. 208, 213 (S.D. Ohio 2003) ("at a minimum it appears that whether [defendant]

17

acquired and/or maintained a monopoly through anticompetitive means is an issue common to all members of the class"). Commonality has been satisfied here.

### c.   Typicality.

Proposed class representatives' claims are typical under Fed. R. Civ. P. 23(a)(3) if those claims are based on the same course of conduct as those of other class members and the same legal theory. *Yost v. First Horizon Nat. Corp.*, 2011 WL 2182262, at *8 (W.D. Tenn. June 3, 2011) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Here, the claims of the members of each Settlement Class are based on the same challenged conduct and the same antitrust theories, and the Class Representatives for each Settlement Class seek the same overcharge damages as the absent Settlement Class Members. *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 537 (E.D. Mich. 2013) ("In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants.") (internal citation omitted). Typicality is satisfied.

### d.   Adequacy.

Adequacy under Fed. R. Civ. P. 23(a)(4) requires that class counsel and the class representatives vigorously pursue the interests of the absent class members and share common interests. *Busby v. Bonner*, 466 F. Supp. 3d 821, 833 (W.D. Tenn. 2020) (citing *In re Am. Med. Sys.*, 75 F.3d at 1083). The Sixth Circuit "looks to two criteria for determining whether the representation of the class will be adequate: (1) [t]he representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). Courts "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Nationwide*, 693 F.3d at 543. Here, proposed Settlement Class Counsel

18

are experienced and capable at prosecuting antitrust class actions and have dedicated millions of dollars of their time and millions of dollars in hard costs litigating on behalf of the proposed Settlement Classes for nearly three years. Similarly, the proposed Class Representatives have fulfilled their duties throughout the litigation and carried the burden of their discovery and other obligations.

Proposed Settlement Class Counsel and Class Representatives of each of the Settlement Classes also have no conflicts of interest with absent members of the Settlement Classes they seek to represent. To render counsel or a class representative inadequate, a conflict must be fundamental, central to the lawsuit, and nonspeculative. *See In re Polyurethane Foam Antitrust Litig*., 314 F.R.D. 226, 238-41 (N.D. Ohio 2014) ("to forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole"); *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *20 (E.D. Mich. July 13, 2006) ("[O]nly a conflict that goes to the very subject matter of the [claims] will defeat a party's claim to representative status"); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)).

Fed. R. Civ. P. 23(g) also requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Classes are represented by counsel with extensive experience in antitrust and class action litigation. *See Marcus v. Kan., Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is

19

adequately competent to conduct the proposed litigation"). Proposed Settlement Class Counsel have vigorously prosecuted the class claims for almost three years through completion of fact discovery and the taking of expert depositions. The Court should appoint them Settlement Class Counsel.

### 2.   The Proposed Settlement Classes Satisfy Rule 23(b)(3).

DPPs also show that the proposed Settlement Classes qualify for certification under Rule 23(b)(3), because the Settlement Classes each meets two requirements beyond the Rule 23(a) prerequisites: common questions predominate over any questions affecting only individual members; and class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("*Scrap Metal*").

### a.   Common Questions of Law and Fact Predominate.

Predominance of common questions is satisfied here, especially in light of settlement. "Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) ("*Cardizem I*"). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. Scrap Metal*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he 'mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a

class action is impermissible.'" *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D., at 535 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). Further, the Supreme Court has instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

The litigation here focused overwhelmingly on common issues. DPPs' claim for monopolization requires that "(1) Defendants have monopoly power in a certain market (2) obtained or maintained through willful anticompetitive conduct (3) that caused rising prices or lowering of output." *Order Denying the Defendants Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion & Supplies, LLC, and U.S. All Star Federal, Inc.'s Motions to Dismiss*, Aug. 26, 2021, ECF 141 (citing *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002)). The conspiracy to monopolize claim also requires proof of coordination between the Defendants. *Id*. at 19. As with most antitrust class actions, each element turns on evidence common to the Settlement Classes as a whole: either Varsity had monopoly power or it didn't as to all Settlement Class Members; either Defendants engaged in conduct in violation of the antitrust laws or they did not; whether Defendants' conduct led to anticompetitive effects or it did not as to all. *Scrap Metal*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625) ("[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case").

This Court's inquiry in the context of settlement class certification is even easier. In *Amchem*, the Supreme Court recognized that the fact of a "[s]ettlement is relevant to a class

certification[,]" 521 U.S. at 619, and specifically instructed that the portion of the predominance analysis that typically focuses on the management of the trial becomes unnecessary and irrelevant when a class is being certified in light of settlement. *Id.* at 620. *See also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (court need not "consider the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial") (quotation omitted). As the Supreme Court has observed, even in a litigation class context, "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws," *Amchem*, 521 U.S. at 625, because they present issues that are capable of proof by generalized evidence that "are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted). Members of the Settlement Classes' claims all focus on the same operative set of facts and legal theories. They allege that they were all harmed by Defendants' same conduct, and the evidence of conspiracy would be entirely common if presented in a litigation posture—which, again, is not at issue here, because the proposal is there would be no trial, and in turn, no evidence. In sum, the predominance requirement for a settlement class is met here as "[a]ll claims arise out of the same course of defendants' conduct; [and] all share a common nucleus of operative fact, supplying the necessary cohesion." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

       **b.**     **A Class Action Is the Superior Method to Adjudicate These Claims.**

       Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the

litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *See Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *4 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *12 (E.D. Tenn. Sept. 7, 2010) (noting that litigation of antitrust claims "is complex, its prosecution is costly, and the members with smaller damages claims likely have fewer resources with which to fund individual litigation"). Here, the interests of the members of the proposed Settlement Classes in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *See Cardizem I*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Settling this case as a class action will conserve both judicial and private resources and would hasten the members of the Settlement Classes' recoveries.

## C.  THE COURT SHOULD AUTHORIZE DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASSES

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See also Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (All that notice must do "is fairly apprise … prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests") (internal quotation marks and citation omitted). The notice may be provided by

"United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2). The Notice and dissemination plan readily meets these standards.[15]

As explained in the Weisbrot Decl., Angeion, in consultation with proposed Settlement Class Counsel, has designed a proposed Notice Program that will use direct notice via U.S Mail to all reasonably identifiable members of the Gym Class from the records of Varsity produced in the litigation and pursuant to the SA. Weisbrot Decl., ¶¶ 14-26. The Spectator Class will have a multi-tiered, robust media campaign strategically designed to provide notice to the Spectator Class. *Id.*, ¶¶ 27-41. The media campaign includes (i) using an interest-based approach for Facebook and Instagram users, (ii) a search campaign on Google to drive members of the Settlement Classes who are actively searching for information about the Settlement to the dedicated Settlement Website (www.AllStarCheerAntitrustSettlement.com), and (iii) publication of notice in cheerleading magazines and digital banner ads and notice via Inside Cheerleading's e-newsletter. *Id.*, ¶¶ 26; 37-41. Additionally, there will be a toll-free telephone line where members of the Settlement Classes can learn more about their rights and options pursuant to the terms of the Settlement. *Id.*, ¶ 43.

The Notice Plan will also implement the creation of a case-specific Settlement Website, where members of the Settlement Classes can easily view general information about this Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. *Id.*, ¶ 42. The Settlement Website will be user-friendly and make it easy for members of the Settlement Classes to find information about this case. The Settlement Website will also have a "Contact Us" page whereby members of the Settlement Classes can send an email with any additional questions to a dedicated email address. Likewise, members of the

---

[15] Proposed drafts of the Class Notices are attached as Exhibits to the Weisbrot Decl.

Settlement Classes will also be able to submit a claim form online via the Settlement Website and securely upload documentation. *Id.*

### D. THE COURT SHOULD APPOINT ANGEION AS SETTLEMENT ADMINISTRATOR

DPPs ask the Court to appoint Angeion to oversee the administration of the Settlement, including disseminating notice to the Settlement Classes, calculating each Settlement Class Member's *pro rata* share of the Settlement Fund, and distributing the funds. Angeion is an experienced settlement and claims administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in antitrust issues and class action litigation. DPPs will also involve Econ One in the computation of *pro rata* shares. Econ One is the economic consulting firm with which their primary economist, Dr. Hal Singer, is associated. Angeion, with oversight from proposed Settlement Class Counsel and Econ One, will handle all aspects of providing notice to potential members of the Settlement Classes and administering their claims, including mailing and publishing the notice, managing a call center and website to handle all questions regarding completion and submission of the claim forms, physically processing the claims and inputting the data on computers, reviewing claims, informing members of the Settlement Classes about the completeness or possible deficiency of their claims, and ultimately distributing the Settlement Fund, subject to Court approval.

### E. THE COURT SHOULD APPOINT HUNTINGTON AS ESCROW AGENT

DPPs ask that Huntington be appointed as the Escrow Agent. Huntington is a highly respected bank providing consumers, corporations, and others with a broad range of financial services. Huntington has served as escrow agent in many other antitrust class actions and should also be appointed as Escrow Agent here. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practice and Antitrust Litig.*, No. 17-md-2785, ECF No. 2594 (D. Kan. Mar.

11, 2022); (order granting preliminary approval motion and appointing Huntington Bank as an escrow agent); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 1069 (N.D. Ill. Aug. 24, 2022) (same).

### F. THE COURT SHOULD SCHEDULE A FAIRNESS HEARING TO APPROVE THE SETTLEMENT

The last step in the settlement approval process is the final approval hearing at which the Court may hear all evidence necessary to evaluate the proposed Settlement. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Settlement Classes or their counsel may be heard regarding the proposed Settlement if they choose. DPPs propose the following schedule of events necessary for a hearing on final approval of the Settlement:

| DATE | EVENT |
|---|---|
| Within 30 days after preliminary approval | Settlement Administrator to (i) provide direct mail notice to the Gym Class and (ii) commence the multi-tiered, robust media campaign publication notice plan to the Spectator Class. |
| Within 75 days after preliminary approval | Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of the Settlement Agreement. |
| Within 100 days after preliminary approval | Class Members may request exclusion from the Settlement Classes or submit any objection to the proposed Settlement or to Settlement Class Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, and service awards to the Class Representatives. All requests for objection must include the following: (1) the name of the case (*Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.*, Case No. 2:20-cv-02600-SHL-tmp); (2) the individual or entity name and address and if represented by counsel, the name, address, and telephone number of counsel; (3) proof of membership in the proposed Gym Class or a sworn statement with supporting details indicating that the individual is a member |

26

|  | of the proposed Spectator Class; (4) a statement detailing all objections to the Settlement; and (5) a statement of whether the individual or entity will appear at the Fairness Hearing, either with or without counsel. All requests for exclusion from the Classes should also include (a) the name of the case (*Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.*, Case No. 2:20-cv-02600-SHL-tmp); (b) the individual or entity name, address, and telephone number; and (c) proof of membership in the proposed Gym Class or Spectator Class, which for the latter would include a sworn statement with supporting details indicating that the individual is a member of the proposed Spectator Class. |
|---|---|
| Within 21 days after the exclusion / objection deadline | No later than 21 days after the expiration of deadline for Class Members to request exclusion or object to the proposed Settlement and/or attorneys' fees, expenses, and service awards, Settlement Class Counsel will file all briefs and materials in support of final approval of the Settlement. |
| At least 30 days after the exclusion / objection deadline[16] | Final Settlement Fairness Hearing |

## **CONCLUSION**

For the foregoing reasons, DPPs respectfully request that the Court grant this motion in its entirety and enter an order: (i) granting preliminary approval of the Settlement Agreement; (ii) provisionally certifying the proposed Settlement Classes under Fed. R. Civ. P. 23; (iii) appointing the six named plaintiffs as Class Representatives and Berger Montague PC, DiCello Levitt LLC, and Cuneo Gilbert & LaDuca, LLP as Settlement Class Counsel; (iv) approving the notice plan for the Settlement Classes; (v) appointing Angeion as Settlement Claims Administrator, (vi) appointing Huntington as Escrow Agent; and (vii) approving the proposed schedule or completing the settlement process and setting a date for a final Fairness Hearing.

---

[16] Under the proposed schedule, the earliest date a Fairness Hearing could likely take place is August 14, 2023.

Dated: March 24, 2023

Respectfully submitted,

*/s/ Eric L. Cramer*
Eric L. Cramer*
Michael J. Kane*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Tel: (215) 875-3000
ecramer@bm.net
mkane@bm.net

Joshua P. Davis*
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Tel: (415) 689-9292
jdavis@bm.net

Gregory S. Asciolla*
Karin E. Garvey*
Veronica Bosco*
**DICELLO LEVITT LLC**
485 Lexington Ave., 10th Fl.
New York, NY 10017
Tel: (646) 933-1000
gasciolla@dicellolevitt.com
kgarvey@dicellolevitt.com
vbosco@dicellolevitt.com

Jonathan W. Cuneo*
Victoria Sims*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
jonc@cuneolaw.com
vicky@cuneolaw.com

*Interim Co-Lead Class Counsel for the Proposed Settlement Classes*

28

Benjamin D. Elga*
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street
Brooklyn, NY 11201
Tel: (518) 732-6703
belga@justicecatalyst.org

Roberta D. Liebenberg*
Jeffrey S. Istvan*
Mary L. Russell*
**FINE KAPLAN AND BLACK, R.P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com
jistvan@finekaplan.com
mrussell@finekaplan.com

Aubrey B. Harwell, Jr. (TN BPR #002559)
Charles Barrett (TN BPR #020627)
Aubrey B. Harwell III (TN BPR #017394)
**NEAL & HARWELL, PLC**
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
Tel: (615) 244-1713
aharwell@nealharwell.com
cbarrett@nealharwell.com
tharwell@nealharwell.com

*Additional Counsel for the Proposed
Settlement Classes*

J. Gerard Stranch, IV (TN BPR #23045)
**STRANCH, JENNINGS
 & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Liaison Counsel for the Proposed Direct
Purchaser Classes*

*Admitted pro hac vice*

29