# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

FUSION ELITE ALL STARS, et al.,

        Plaintiffs,

   v.

VARSITY BRANDS, LLC, et al.,

        Defendants.

**Civ. Action No. 2:20-cv-02600**

## <u>SETTLEMENT AGREEMENT</u>

This Agreement is made and entered into this 15th day of March, 2023 ("Execution Date") by and between Defendants and Direct Purchaser Plaintiffs, both individually and on behalf of the Settlement Classes specified herein.

WHEREAS, Direct Purchaser Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Classes;

WHEREAS, Direct Purchaser Plaintiffs allege that they were injured as a result of certain conduct of Defendants as set out in the consolidated complaint in the Action;

WHEREAS, Defendants deny Direct Purchaser Plaintiffs' allegations and have asserted defenses to Direct Purchaser Plaintiffs' claims in the Action;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel and counsel for Defendants, with the assistance of experienced mediators, and this Agreement has been reached as a result of those negotiations;

WHEREAS, Direct Purchaser Plaintiffs, through Interim Co-Lead Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded

1

that resolving the claims against Defendants according to the terms set forth herein is in the best interest of Direct Purchaser Plaintiffs and the Settlement Classes;

WHEREAS, this Agreement, if it receives Final Approval, will resolve the Action;

WHEREAS, Defendants, despite their belief that they are not liable for the claims asserted and their belief that they have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims arising out of the nucleus of operative facts in the consolidated complaint in the Action that have been or could have been asserted against Defendants in the Action (defined below as "Released Claims");

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, and intending to be legally bound, it is agreed by and between Defendants and Direct Purchaser Plaintiffs, both individually and on behalf of the Settlement Classes, that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and, except as hereinafter provided, without costs as to Direct Purchaser Plaintiffs, the Settlement Classes, or Defendants, subject to the approval of the Court, on the following terms and conditions:

1.      This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to each Releasee as provided in this Agreement in exchange for the payment of the Settlement Amount by Defendants and other consideration and commitments set forth herein.

A. <u>Definitions</u>.

2.      The definitions in this section apply throughout the Agreement wherever the defined terms are used, including in the preamble.  Other definitions are contained in the text of the Agreement and indicated as such.

3.      "Agreement" means this settlement agreement.

4.      "Action" means the case captioned *Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.*, pending in the United States District Court for the Western District of Tennessee, Civil Action No. 2:20-cv-02600.

5.      "Defendants" means Defendants in the Action, in particular Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashions & Supplies, LLC (collectively, "Varsity"), and the U.S. All Star Federation, Inc. (the "USASF").

6.      "Direct Purchaser Plaintiffs" means those members of the Settlement Classes who are Plaintiffs in the Action, namely: Fusion Elite All Stars; Spirit Factor LLC d/b/a Fuel Athletics; Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center; Kathryn Anne Radek; Lauren Hayes; and Janine Cherasaro.

7.      "Parties" means Defendants and Direct Purchaser Plaintiffs and "Party" shall mean any one of the Parties.

8.      "Releasees" shall refer jointly and severally, individually and collectively, to Defendants, their respective past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, and insurers, and their respective past and present officers, directors and employees.  "Releasees" shall also include any direct or indirect majority or minority investor in any Releasee, as well as their respective past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, indemnitors, and insurers,

3

and their respective past and present officers, directors, advisors, independent consultants, partners, and employees, and any entity that managed, manages, advised, or advises any fund or managed account that made a direct or indirect investment in any Releasee at any time and, as to each such entity, its past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, indemnitors, and insurers, and their respective past and present officers, directors , advisors, independent consultants, partners, and employees.  Without in any way limiting the foregoing, Releasees shall include all of the entities listed in Appendix A as well as their respective past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, and insurers, and their respective past and present officers, directors, advisors, independent consultants, partners, and employees.

9.      "Releasors" shall refer to Settlement Class Members, as well as each of their respective past and present parents, subsidiaries, affiliates, divisions, predecessors, successors, and their respective past and present officers, directors, and employees.

10.      "Settlement Amount" means forty-three million, five hundred thousand United States dollars ($43,500,000).

11.      "Settlement Classes" shall refer to the following:

> "Gym Class": All entities that paid registration or related fees and expenses directly to Varsity to participate in Varsity All Star Events from May 26, 2016 through the Execution Date (the "Class Period").  Excluded from the Class are Defendants, their parent companies, subsidiaries, affiliates, franchisees, officers, executives, and employees; any entity that is or has been partially or wholly owned by one or more Defendants or their respective subsidiaries; States and their subdivisions, agencies and instrumentalities; and any judicial officer presiding over this matter and his or her staff, except that officers of USASF, who are not employees of any of Defendants, their parent companies, subsidiaries, affiliates, or franchisees shall not be excluded from the Class.

> "Spectator Class": All persons who paid entrance (admission) or other fees and expenses directly to Varsity to observe Varsity All Star Events during the Class Period.  Excluded from the Class are Defendants, their parent companies, subsidiaries, affiliates, franchisees, officers, executives, and employees; any entity

that is or has been partially or wholly owned by one or more Defendants or their respective subsidiaries; States and their subdivisions, agencies and instrumentalities; and any judicial officer presiding over this matter and his or her staff, except that officers of USASF who are not employees of any of Defendants, their parent companies, subsidiaries, affiliates, or franchisees shall not be excluded from the Class.

12.     "Settlement Class Counsel" and "Interim Co-Lead Class Counsel" mean the following law firms: Berger Montague PC; DiCello Levitt LLC; and Cuneo Gilbert & Laduca, LLP.[1]

13.     "Settlement Class Member" means each member of the Settlement Classes who/that has not timely and validly elected to be excluded from one of the Settlement Classes.

14.     "Settlement Fund" means the Settlement Amount plus accrued interest as set forth in Paragraph 25.

B.   Approval of this Agreement and Dismissal of Claims Against Defendants.

15.     Except as otherwise provided herein, on the Execution Date, Direct Purchaser Plaintiffs and Defendants shall be bound by this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraph 39 of this Agreement.

16.     Direct Purchaser Plaintiffs and Defendants shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23) to secure the complete and final dismissal with prejudice of the Action.

17.     Direct Purchaser Plaintiffs shall submit to the Court, on the docket of the Action, a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion").

---

[1] "Interim Liaison Class Counsel" means Branstetter, Stranch & Jennings, PLLC. "Interim Class Counsel" or "Class Counsel" means Interim Liaison Class Counsel and Interim Co-Lead Class Counsel.

The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.  No fewer than seven (7) business days before filing, Direct Purchaser Plaintiffs shall submit a draft of the Preliminary Approval Motion to Defendants for their review and approval, which approval shall not be unreasonably withheld.

18.     Direct Purchaser Plaintiffs shall submit to the Court, on the docket of the Action, a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to the Settlement Classes (the "Notice Motion").  The Notice Motion shall include a proposed form of, method for, and proposed dates of dissemination of notice.  No fewer than seven (7) business days before filing, Direct Purchaser Plaintiffs shall submit a draft Notice Motion to Defendants for their review.  Direct Purchaser Plaintiffs shall reasonably consider Defendants' comments on the Notice Motion. Direct Purchaser Plaintiffs may combine the Preliminary Approval Motion and Notice Motion into a single motion at their discretion.

19.     Within ten (10) days of receiving any request for exclusion from the Settlement Classes, Settlement Class Counsel shall cause copies of requests for exclusion from the Settlement Classes to be provided to counsel for Defendants.  With respect to any potential Settlement Class Member who requests exclusion from one or both of the Settlement Classes, Defendants reserve all of their legal rights and defenses. Direct Purchaser Plaintiffs, by and through Interim Co-Lead Class Counsel, and Defendants are executing a "Supplemental Agreement" setting forth certain conditions under which (and the terms regarding which), this Settlement Amount may be reduced if a sufficient number of potential Settlement Class Members, collectively representing a certain share of the total relevant sales, timely exclude themselves from the Settlement Classes.  The Supplemental Agreement shall not be filed with

the Court except that the substantive contents of the Supplemental Agreement may be brought to the attention of the Court, *in camera*, if so requested by the Court or as otherwise ordered by the Court. The Parties will keep the terms of the Supplemental Agreement confidential, except if compelled by judicial process to disclose the Supplemental Agreement.

20.     Direct Purchaser Plaintiffs shall seek, and Defendants will not object unreasonably to, the entry of a final judgment order in the Action, the text of which Direct Purchaser Plaintiffs and Defendants shall agree on, and such agreement will not be unreasonably withheld. The terms of that proposed final judgment order will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Classes described in Paragraph 11 pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement, as settlement classes;

(b)     finding, solely for the purposes of this settlement, that Direct Purchaser Plaintiffs are adequate class representatives and satisfy all of the other provisions of Rule 23(a) of the Federal Rules of Civil Procedure, and any other provisions of Rule 23 required by law to secure certification of the Settlement Classes;

(c)     approving finally this settlement and its terms as being fair, reasonable and adequate as to the Settlement Class Members within the meaning of applicable law, including Rule 23 of the Federal Rules of Civil Procedure, and directing the settlement's consummation according to the terms of this Agreement;

(d)     finding that notice provided to the Settlement Classes satisfied the requirements of Rule 23 and the due process clause of the U.S. Constitution;

(e)     as to Defendants, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(f)      reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration, and consummation of the settlement, to the United States District Court for the Western District of Tennessee;

(g)      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Defendants shall be final;

(h)      providing that (i) the Court's certification of the Settlement Classes is without prejudice to, or waiver of, the rights of any person or entity, including Defendants, to contest certification of any other class proposed in any other case, including *Jones, et al. v. Varsity Brands, LLC, et al.*, No. 2:20-cv-02892 (W.D. Tenn.) and *American Spirit and Cheer Essentials, Inc. et al. v. Varsity Brands, LLC, et al.*, No. 2:20-CV-02782 (W.D. Tenn.) (the "Related Cases"); (ii) the Court's findings in the final judgment order shall have no effect on the Court's ruling on any motion to certify any class in the Related Cases or on the Court's rulings concerning any other motion; and (iii) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority in support of any motion to certify any such class; and

(i)      precluding all Settlement Class Members from asserting or prosecuting any of the Released Claims against any Releasee.

21.      This Agreement shall become final when (i) the Court has entered a final order certifying the Settlement Classes and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment order has been entered dismissing the Action with prejudice as to Defendants and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Defendants described in (i) hereof has expired or,

if appealed, approval of this Agreement and the final judgment as to Defendants have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

22.     Neither this Agreement (whether or not it becomes final), the final judgment, nor any negotiations, documents and discussions associated with them shall be deemed or construed to be: (a) an admission by Defendants, Direct Purchaser Plaintiffs, or Settlement Class Members, or (b) evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Defendants, or used against Defendants as evidence of the truth of any of the claims or allegations contained in any complaint in the Action or in the Related Cases or other proceeding, and evidence thereof shall not be discoverable or used in any way, whether in the Related Cases, arbitration, or other proceeding, against Defendants, or (c) evidence of exoneration for any violation of any statute or law or of the absence of any liability or wrongdoing whatsoever by Defendants.  Neither this Agreement, any of its terms and provisions, any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by Defendants, Direct Purchaser Plaintiffs, or Settlement Class Members, shall be discoverable if not public, referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.  Release, Discharge, and Covenant Not to Sue.

23.     In addition to the effect of any final judgment order entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 21, and in consideration of payment of the Settlement Amount, as specified in Paragraph 26, and for other

valuable consideration, including as specified in this Agreement, the Releasees shall be

completely released, acquitted, and forever discharged from any and all claims, demands,

actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not

any Settlement Class Member has objected to the settlement or makes a claim upon or

participates in distribution of the Settlement Fund, whether directly, representatively,

derivatively or in any other capacity) under any federal, state or local law of any jurisdiction in

the United States, that Releasors, or each of them, ever had, now have, or hereafter can, shall, or

may ever have, that now exist or may exist in the future, on account of, or in any way arising out

of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual

or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof

relating in any way to the nucleus of operative facts alleged in the complaint in the Action prior

to the Execution Date that were made or could have been made in the Action by Direct Purchaser

Plaintiffs or Settlement Class Members against the Releasees, including all direct purchaser

claims relating to Varsity and/or USASF's involvement in the cheerleading industry based in any

way on conduct or events arising out of the nucleus of operative facts alleged in the consolidated

complaint in the Action, that occurred through the Execution Date.  Notwithstanding the

foregoing, any claims based on indirect purchases by Settlement Class Members or Releasors

that may exist under the law of one or more U.S. states will not be released.  In addition, and

notwithstanding the foregoing, claims arising in the ordinary course between (a) any of the

Releasees, on the one hand, and (b) Direct Purchaser Plaintiffs, Settlement Class Members or

Releasors, on the other, and arising under Article 2 of the Uniform Commercial Code (pertaining

to sales) or similar state laws, the laws of negligence or product liability, strict liability, or

implied warranty, breach of contract, breach of express warranty, or personal injury, will also not

be released.  The claims described as being released in this paragraph are referred to herein as the "Released Claims."

24.     After the Execution Date, Releasors shall not seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless the Agreement, for any reason, does not become final, or is rescinded or otherwise fails to become effective.  Further, unless the Agreement is rescinded or otherwise fails to become effective, Class Counsel and Direct Purchaser Plaintiffs shall likewise not voluntarily assist counsel or plaintiffs in the Related Cases or counsel or counter-plaintiffs in Case No. 6:21-cv-0135-WWB-DCI, *U.S. All Star Federation, Inc. v. Open Cheer & Dance Championship Series, LLC* (M.D. Fla.) in pursuing their claims.  Notwithstanding the above, nothing in this Paragraph 24 shall prevent anyone from complying with a court order or subpoena issued by a court of competent jurisdiction.

25.     In addition to the provisions of Paragraphs 23 and 24 of this Agreement, Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;**

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are released pursuant to the

provisions of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Direct Purchaser Plaintiffs have agreed to release, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.   Settlement Amount.

26.     Subject to the provisions of Paragraph 19, Varsity shall pay the Settlement Amount by wire transfer into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraphs 31 to 34 (the "Escrow Account") on the following schedule:  First installment of $2 million, which may be used for purposes of class administration (including class notice), shall be paid within 30 days of preliminary approval of the settlement by the Court.  The second installment of $28 million shall be paid on or before December 1, 2023. The third and final installment of $13.5 million shall be paid on or before December 1, 2024. Under no circumstances shall Defendants be required to pay more than the Settlement Amount as part of this Agreement.

27.     In light of the monetary settlement with Varsity, Plaintiffs will not look to USASF for any monetary compensation of any kind.

28.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other monetary recovery against Defendants or any other Releasee for the Released Claims.

E.   Prospective Relief.

29.     For purposes of this Section E of this Agreement only, the term "All Star Gym" means a person or entity that organizes one or more cheerleading teams to compete in "All Star

Events," which are events at which several All Star Teams compete against each other in the choreographed performance of routines comprised of combinations of stunts, pyramids, dismounts, tosses, and/or tumbling.  "Event Producer" and "All Star Event Producer" means a person or entity that produces one or more All Star Events.  A "Worlds Bid" is the opportunity to participate in Worlds, a particular All Star Event organized by USASF.

30.     From the date of Final Approval through and including December 31, 2028:

(a) Varsity will not offer contracts or programs with All Star Gyms relating in whole or part to fees or payments associated with registering for, or attending, All Star Events that:

　　1) If a contract, have a term longer than one year (except that existing contracts and programs will be permitted to run to their term); or

　　2) Require attendance at more than three All Star Events during a single regular season as a condition of receiving Varsity's lowest tier of rebates or discounts.

　　3) Notwithstanding the foregoing, if one or more All Star Event Producers propose rebate or discount programs regarding which Varsity would be prohibited from engaging by the terms of this Agreement ("Prohibited Programs"), Varsity shall be permitted to respond by matching the rebate and/or discount offerings of such competitors but only so long and insofar as one or more such competitors maintain(s) such Prohibited Programs.

(b) No person shall simultaneously serve on the boards of Varsity (or any other Varsity entity) and USASF.  The phrase "other Varsity entity" as used herein refers to any parent or subsidiary of Varsity or any entity under common ownership with Varsity.

(c) Varsity may not, directly or indirectly, pay the salaries of any USASF employees or executives or provide other benefits to USASF employees or executives.  For the

avoidance of doubt, this provision does not preclude payments to USASF for services

provided by USASF employees in the ordinary course of business, which are also

available to other Event Producers, such as for roster verification or judge training, nor

does it preclude payments to USASF employees to the extent they provide services as

judges or legality officials as independent contractors.

(d) No more than 1/3 of the voting board seats on USASF's Board of Directors may be

occupied by any single Event Producer (whether through one entity or multiple affiliated

entities with common/overlapping ownership or management).  In the event that one or

more voting seats on USASF's Board of Directors becomes empty for any reason

(including, *e.g.*, death, resignation, termination, etc.), and as a result, a single Event

Producer holds more than 1/3 of the voting board seats then filled, USASF shall take all

reasonable measures to fill the empty voting board seat(s) such that the 1/3 limitation is

satisfied within four (4) months of the event causing the vacancy.  USASF may not,

consistent with this Agreement, intentionally distort its rules or procedures to cause a

USASF board seat to become empty as a means to allow a single Event Producer to

control more than 1/3 of the seats.

(e) No more than 40% of the seats on USASF's Sanctioning Committee may be occupied by

any single Event Producer (whether through one entity or multiple affiliated entities with

common/overlapping ownership or management).  The calculation shall take place on

August 1 of each year, and if this limitation is satisfied as of that date, it shall be deemed

satisfied for the next 12 months.  In other words, in the event that, after August 1 during a

calendar year, an Event Producer terminates its USASF membership or loses its Worlds

Bid, either of which would result in the Event Producer losing its seat on the Sanctioning

Committee under currently existing USASF rules, USASF shall not be required to re-allocate seats on its Sanctioning Committee or remove other members of the Sanctioning Committee prior to August 1 of the following year.  USASF may not, consistent with this Agreement, intentionally distort its rules or procedures to cause a Sanctioning Committee seat to become empty as a means to allow a single Event Producer to control more than 40% of the seats.

(f)  After implementing the changes set forth above with respect to USASF's Board of Directors and Sanctioning Committee, USASF commits to continuing to evaluate proposals from its membership that are properly brought to its Board of Directors or an appropriate committee, in accordance with its policies and procedures.  USASF may not, consistent with this Agreement, adopt rules or procedures that would have the effect of prohibiting or deterring USASF members from making any proposals for consideration by the USASF board or appropriate USASF committees.

F.  Escrow Account and Settlement Fund.

31.  An Escrow Account shall be maintained at Huntington National Bank to hold the Settlement Fund.  Such escrow shall be administered subject to the provisions of this Agreement, including Paragraph 34, below.

32.  The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of Defendants, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the

parties shall take all actions as may be necessary or appropriate to this end.  At the direction of

Settlement Class Counsel, taxes or estimated taxes shall be paid on any income earned on the

funds in the Escrow Account, whether or not final approval has occurred, as provided in

Paragraph 21, above.  In the event federal or state income tax liability is finally assessed against

and paid by Defendants as a result of any income earned on the funds in the Escrow Account,

Defendants shall be entitled to reimbursement of such payment from the funds in the Escrow

Account after approval of the Court and whether or not final approval has occurred.  Except as

set forth in this Paragraph, Defendants and any Releasee, and their respective counsel, shall have

no responsibility to make any tax filings related to the Settlement Fund or to pay any taxes or tax

expenses with respect thereto, and neither Defendants nor any Releasee nor their respective

counsel shall have any liability or responsibility for the taxes or expenses incurred in connection

with taxation matters.

33.     All payments into the Escrow Account, including any income earned thereon,

shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed

by the full faith and credit of the United States Government or fully insured by the United States

Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market

Funds or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to

the guaranteed FDIC limit.  Any interest earned on any of the foregoing shall become part of the

Settlement Fund.  Defendants shall have no responsibility for, or liability in connection with, the

Settlement Fund or the Escrow Account, including, without limitation, the investment,

administration, maintenance, or distribution thereof.

34.     All funds held in the Escrow Account shall be deemed and considered to be in

*custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such

time as the Settlement Fund shall be distributed pursuant to this Agreement and/or order(s) of the

Court.

G.  <u>Expenses, Settlement Class Counsel's Attorneys' Fees, and Service Awards for Class
    Representatives.</u>

35.     Reasonable disbursements for (a) expenses associated with providing notice of the

settlement to the Settlement Class, (b) reasonable expenses for maintaining and administering the

Settlement Fund, (c) reasonable expenses associated with developing and preparing an allocation

plan for distributing the proceeds of the net Settlement Fund to members of the Settlement

Classes, and (d) taxes and reasonable expenses incurred in connection with taxation matters may

be paid without approval from the Court and shall not be refundable to Defendants in the event

the Agreement is disapproved, rescinded, or otherwise fails to become effective or final, to the

extent such expenses have actually been expended or incurred.  No other disbursement from or

distribution of the Settlement Fund shall be made without prior approval of the Court.

36.     If this Agreement does not become final within the meaning of Paragraph 21, then

all amounts paid by Defendants into the Settlement Fund (other than costs expended or incurred

in accordance with Paragraph 35) shall be returned to Defendants from the Escrow Account

along with any interest accrued thereon within thirty (30) calendar days of the Court's denial of

final approval of the Agreement and/or the Settlement Classes.

37.     If this Agreement becomes final within the meaning of Paragraph 21: (1) the

Settlement Fund shall be distributed in accordance with a plan to be submitted to the Court at the

appropriate time by Settlement Class Counsel, subject to approval by the Court; (2) no Releasee

shall have any responsibility, financial obligation, or liability whatsoever with respect to the

investment, distribution, or administration of the Settlement Fund, including, but not limited to,

the costs and expenses of such investment, distribution or administration; and (3) Defendants

shall have no reversionary interest in any of the Settlement Funds or interest thereon, which interest shall be for the benefit of the Settlement Classes and Class Counsel.  Subject to Court approval, Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees.  Service awards to the Direct Purchaser Plaintiffs, if approved by the Court, will be paid solely out of the Settlement Fund. Defendants shall not oppose any reasonable requests for service awards for Direct Purchaser Plaintiffs.

38.      Subject to the posting of appropriate security for any funds paid under this paragraph and Court approval, attorneys' fees and costs and expenses awarded by the Court shall be payable from the Settlement Fund upon being awarded by order of the Court, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, including on the award of attorneys' fees and costs, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event the settlement does not become final or is rescinded or otherwise fails to become effective.  Settlement Class Counsel shall provide an assurance from a financial institution that is approved by Varsity, which approval shall not be unreasonably withheld by Varsity, that such refunds to the Settlement Fund will be made in the event that Settlement Class Counsel defaults on any obligation under this paragraph.  If the provisions of this paragraph are followed, Defendants shall not object to such disbursements.

39.      The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and service

awards for class representatives to be paid out of the Settlement Fund are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of costs and expenses, or service awards, or any appeal from any such order shall not in itself operate to terminate or cancel this Agreement.

H. <u>Rescission.</u>

40.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify the Settlement Classes in accordance with the specific Settlement Class definitions set forth in this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 21 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then each of Defendants and Direct Purchaser Plaintiffs shall, in its/his/her sole discretion, have the option to rescind this Agreement in its entirety within thirty (30) calendar days of the entry into the docket of the court of the relevant court decision.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 49.

41.     In the event that this Agreement does not become final as set forth in Paragraph 21, or this Agreement otherwise is terminated, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund in the Escrow Account (including interest earned thereon) plus any disbursements made from the Settlement Fund under Paragraph 38, shall be returned to Defendants within thirty (30) calendar days.  For the avoidance of doubt, the full portion of the Settlement Amount that Varsity has paid, less only disbursements made in accordance with Paragraph 35, shall be so returnable.  Defendants and Direct Purchaser Plaintiffs

19

expressly reserve all their respective claims, rights, and defenses if this Agreement does not become final.

I.   Class Action Fairness Act

42.   Defendants shall comply with the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), including providing any notices required thereby.

J.   Miscellaneous.

43.   This Agreement shall be governed by and interpreted according to the substantive laws of the state of Tennessee without regard to its choice of law or conflict of laws principles. Defendants will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

44.   The United States District Court for the Western District of Tennessee shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to the Agreement or the applicability of the Agreement that cannot be resolved by negotiation and agreement by Direct Purchaser Plaintiffs and the Settlement Classes and Defendants, including challenges to the reasonableness of any Party's actions.

45.   This Agreement constitutes the entire, complete, and integrated agreement among Direct Purchaser Plaintiffs and the Settlement Classes and Defendants pertaining to the settlement of the Action against Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Direct Purchaser Plaintiffs and Defendants in connection herewith.  This Agreement may not be modified or amended except in writing executed by Direct Purchaser Plaintiffs and Defendants, by their respective counsel, and approved by the

Court.

46.     This Agreement shall be binding upon, and inure to the benefit of, the successors
and assigns of Direct Purchaser Plaintiffs and Defendants.  Without limiting the generality of the
foregoing, upon final approval of this Agreement, each and every covenant and agreement made
herein by Direct Purchaser Plaintiffs or Settlement Class Counsel shall be binding upon all
Settlement Classes Members and all Releasors.  To the extent not parties to this Agreement, the
Releasees are intended by the Parties to be third-party beneficiaries of this Agreement and are
authorized to enforce its terms as applicable to them.

47.     This Agreement may be executed in counterparts, and a facsimile or other
electronic signature shall be deemed an original signature for purposes of executing this
Agreement.

48.     No Party shall be considered to be the drafter of the Agreement or any of its
provisions for the purpose of any statute, case law, or rule of interpretation or construction that
would or might cause any provision to be construed against the drafter of the Agreement.

49.     Where the Agreement requires any Party to provide notice or any other
communication or document to another party, such notice shall be in writing, and such notice,
communication or document shall be provided by electronic mail to the undersigned counsel of
record for the party to whom notice is being provided.

50.     Each of the undersigned attorneys represents that he or she is fully authorized to
enter into the terms and conditions of, and to execute, the Agreement subject to Court approval,
on behalf of the indicated parties.

George S. Cary
Steven J. Kaiser
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500

*Counsel for Defendants Varsity Brands, LLC, Varsity Spirit, LLC, and Varsity Spirit Fashions & Supplies, LLC*

Grady M. Garrison
Nicole Berkowitz Riccio
**BAKER DONELSON**
165 Madison Avenue
Suite 2000
Memphis, TN 38103
Telephone: (901) 526-2000

*Counsel for Defendant U.S. All Star Federation, Inc.*

Eric L. Cramer
Josh Davis
Michael J. Kane
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19106
Telephone: (215) 875-3000

Gregory S. Asciolla
Karin E. Garvey
Veronica Bosco
**DICELLO LEVITT LLC**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Telephone: (646) 933-1000

Jonathan W. Cuneo
Victoria Sims
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960

*Interim Co-Lead Class Counsel for Direct Purchaser Plaintiffs and the Settlement Classes*

## APPENDIX A

Varsity Brands, LLC
Varsity Spirit LLC
Varsity Spirit Fashions & Supplies, LLC
BCPE Hercules Holdings, LP (Delaware)
BCPE Hercules VB Topco, Inc. (Delaware)
BCPE Hercules Achievement Topco, Inc. (Delaware)
U.S. All Star Federation, Inc.
Bain Capital, LP
Bain Capital Private Equity
Bain Capital Fund XII, L.P.
BCIP Associates V, LP
Bain Capital Fund (Lux) XII, SCSp
Bain Capital Fund (DE) XII, L.P.
BCIP Associates V-B, LP
Randolph Street Ventures, L.P. 2018-88
Charlesbank Capital Partners, LLC
Charlesbank Associates Fund IX, Limited Partnership
Charlesbank Equity Fund VIII, Limited Partnership
Charlesbank Equity Fund VII, Limited Partnership
CB Offshore Equity Fund VIII, L.P.
CB Offshore Equity Fund VII, L.P.
CB Parallel Fund VII, Limited Partnership
Charlesbank Equity Coinvestment Fund VIII, Limited Partnership
Charlesbank Equity Coinvestment Fund VII, Limited Partnership
CB Associates Fund VIII, Limited Partnership
Charlesbank Equity Fund IX, Limited Partnership
CB Offshore Equity Fund IX, Limited Partnership
Charlesbank Executives Fund IX, Limited Partnership
CB Hercules Holdings, LLC