**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| FUSION ELITE ALL STARS, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-02600-SHL-tmp |
| | ) | |
| VARSITY BRANDS, LLC, et al., | ) | |
| Defendants. | ) | |

**ORDER GRANTING DIRECT PURCHASER PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT, PROVISIONAL
CERTIFICATION OF PROPOSED SETTLEMENT CLASSES, APPROVAL OF NOTICE
PLAN, AND APPROVAL OF THE PROPOSED SCHEDULE FOR COMPLETING THE
SETTLEMENT PROCESS AND SCHEDULING A FINAL APPROVAL HEARING**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class

Action Settlement, (ECF No. 329), filed on March 24, 2023.  Plaintiffs seek entry of an order

(a) provisionally certifying the Settlement Classes under Federal Rule of Civil Procedure 23;

(b) granting preliminary approval of the Proposed Settlement; (c) approving the notice plan for

the Settlement Classes; (d) designating Berger Montague PC, DiCello Levitt LLC and Cuneo

Gilbert & LaDuca, LLP as Settlement Class Counsel and appointing six named plaintiffs as

Class Representatives; (e) appointing Angeion Group LLC ("Angeion") as Settlement Claims

Administrator; (f) appointing The Huntington National Bank ("Huntington") as escrow agent;

and (g) approving the proposed schedule for completing the settlement process and setting a date

for a final Fairness Hearing.

For the following reasons, the Motion is **GRANTED.**

**FACTUAL BACKGROUND**

This case involves allegations that Defendant Varsity Brands, LLC ("Varsity"), in

conspiracy with Defendant U.S. All Star Federation, Inc. ("USASF"), acquired, enhanced, and maintained monopoly power in the All Star Cheer Events Market in the United States through an unlawful scheme in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  (See ECF No. 56.) Direct Purchaser Plaintiffs ("DPP") brought this case as a class of cheerleading gyms and parents of All Star Cheer participants who purchased Varsity products or paid Varsity competition entry fees, and alleged that Varsity dominated the All-Star Cheer competition and apparel markets using anticompetitive means.  (Id.)  All Star Gyms are privately owned and operated businesses that field cheerleading teams that compete in All Star Cheer Events.  (ECF No. 329-1 at PageID 5763.)

## **PROCEDURAL HISTORY**

The DPPs brought this action in the Northern District of California on May 26, 2020, but re-filed it in this Court on August 13, 2020.  (Id. at PageID 5764.)  Since filing, this case has been actively litigated; Defendants filed Motions to Dismiss and a Motion to Strike on December 1, 2020, arguing that the DPPs failed to plausibly allege their Section 2 claims, and asserting that the statute of limitations barred consideration of certain challenged conduct. (ECF Nos. 82, 83 & 84.)  The Court denied the Motions in most, but not all, respects.[1]  (See ECF No. 141.)  The Parties engaged in a lengthy discovery period afterward, which featured a significant motion practice concerning discovery disputes.  (See ECF Nos. 102, 105, 116, 120, 125, 126, 129, 199, 203, 204 & 207.)  On January 31, 2023, the Parties reached an agreement to settle shortly before the deadline to file a Motion for Class Certification.  (ECF No. 324.)

---

[1] The Court did not rule on the Motion to Strike given the Parties' Notice of Settlement. (ECF No. 326.)

## ANALYSIS

### I. Conditional Certification

The DPPs seek conditional certification of the Gym and Spectator Classes. (ECF No. 329-1 at PageID 5776.) Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." If the court determines that it will likely be able to certify the class, it conditionally certifies it pending final approval of the settlement. Newberg on Class Actions ("Newberg") § 13:16 (5th ed. 2019). Rule 23 requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g). See generally Fed. R. Civ. P. 23. As described below, here, each of these requirements is met.

#### A. Rule 23(a) Prerequisites for Certification

Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4).

##### 1. Rule 23(a)(1) — Numerosity

To begin, the Classes must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 541 (6th Cir. 2012) (internal citations omitted). "The numerosity

requirement is also satisfied more easily upon a showing that there is wide geographical diversity of class members, which makes joinder of all the class members more impracticable." In re Inter-Op Hip Prosthesis Liab. Litig., 204 F.R.D. 330, 339 (N.D. Ohio 2001) (quotation marks and citation omitted).

Plaintiffs submit that the proposed Gym Class contains more than two thousand Gyms and the proposed Spectator Class includes tens of thousands of spectators.  (ECF No. 329-1 at PageID 5778.)  Both classes have a substantial number of affected consumers and are indisputably so numerous that joinder is impracticable.  See Young, 693 F.3d at 541.  Both classes are also nationwide and geographically dispersed, further counseling against joinder.

### 2.  Rule 23(a)(2) — Common Questions of Law and Fact

Each Class must have at least one common question of law or fact, and resolution of those questions must advance the litigation.  Fed. R. Civ. P. 23(a)(2); Alkire v. Irving, 330 F.3d 802, 821 (6th Cir. 2003) (citing Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998)). "Even a single common question will do." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011) (cleaned up).  "The threshold for commonality is not high." Bradberry v. John Hancock Mut. Life Ins. Co., 217 F.R.D. 408, 413 (W.D. Tenn. 2003) (quotation marks and citation omitted).

Commonality here is straightforward.  Plaintiffs in both classes share many factual and legal issues, including whether Varsity had market power, whether Defendants conspired, and whether the challenged conduct violated the antitrust laws.  (ECF No. 329-1 at PageID 5778.)

### 3.  Rule 23(a)(3) — Typicality

The Class Representatives' claims must be typical of the claims of the members of the Classes.  Fed. R. Civ. P. 23(a)(3).  "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996) (quotation marks and citation omitted).  "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  Id. (quotation marks and citation omitted).

Both classes satisfy the typicality requirement.  The claims of the members of each Settlement Class are based on the same challenged conduct and the same antitrust theories, and the Class Representatives for each Settlement Class seek the same overcharge damages as the absent Settlement Class Members.  (ECF No. 329-1 at PageID 5778.)

### 4.  Rule 23(a)(4) — Adequacy of Representation

The Class Representatives must fairly and adequately protect class interests.  Fed. R. Civ. P. 23(a)(4).  The Rule 23(a)(4) inquiry serves to uncover conflicts of interest between named parties and the classes they seek to represent.  "'A class representative must be part of the class and possess the same interest and suffer the same injury as class members.'"  Beattie v. CenturyTel, Inc., 511 F.3d 554, 562 (6th Cir. 2007) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997)).  Class members must not have "interests that are [] antagonistic to one another."  Id. at 563 (quotation marks and citation omitted).  Courts "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation."  Young, 693 F.3d at 543.

Proposed Settlement Class Counsel and Class Representatives for each of the Settlement Classes do not have conflicts of interest with absent members of the Settlement Classes they seek to represent.  (ECF No. 329-1 at PageID 5779.)  First, "[t]o forestall class certification, the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole."  See In re Polyurethane Foam Antitrust Litig., 314 F.R.D. 226, 238-41 (N.D. Ohio 2014).  The Court is not aware of any such conflicts.

Second, the Gym Class and Spectator Class Representatives have incurred the same alleged injury that is the basis of this litigation.  Furthermore, the Representatives have fulfilled their duties throughout the litigation, including discovery and other obligations.  (ECF No. 329-1 at PageID 5779.)  Settlement Class Counsel have demonstrated their experience and capability in prosecuting antitrust class actions; they have dedicated millions of dollars and spent a significant amount of time in and out of the courtroom litigating on behalf of the proposed Settlement Classes for nearly three years.  (Id. at PageID 5778.)  Proposed Settlement Class Counsel and Class Representatives are undoubtedly adequate.

B.  Rule 23(b) Class Action Categorization

A class that satisfies Rule 23(a)'s requirements must also fall within one of three categories found in Rule 23(b).  The DPPs' proposed Settlement Classes are both pursued as Rule 23(b)(3) classes. Rule 23(b)(3) requires that:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; and
(D) the likely difficulties in managing a class action.[2]

Fed. R. Civ. P. 23(b)(3)(A)-(D).

### 1. *Predominance*

"'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Beattie, 511 F.3d at 564 (quoting Amchem Prods., 521 U.S. at 632). To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." Id. (quotation marks and citation omitted). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." Id. (quotation marks and citation omitted). "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws," Amchem Prods., 521 U.S. at 625 (citation omitted).

Both Classes' common issues predominate over individual issues. The DPPs' claims of monopolization require that "(1) Defendants have monopoly power in a certain market, (2) obtained or maintained through willful anticompetitive conduct, (3) that caused rising prices or lowering of output." (ECF Nos. 141 at PageID 2259, 329-1 at PageID 5781.) Proof as to each claim in this action would necessarily be common to all Settlement Class Members, insofar as the bulk of the issues relate to the Defendants' alleged conduct that was directed at all

---

[2] The last of the Rule 23(b)(3) factors—"the likely difficulties in managing a class action"—is not applicable in the class settlement context. See Amchem Prods., 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial"); see also Fitzgerald v. P.L. Mktg., Inc., No. 2:17-cv-02251-SHM-cgc, 2020 WL 7764969, at *9 (W.D. Tenn. Feb. 13, 2020) (same).

members of the class.  Predominance is met here.

       2.  *Superiority*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy.  Rule 23(b)(3) includes a non-exhaustive list of factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action.  See Fed. R. Civ. P. 23(b)(3).  "The Advisory Committee had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all" in the creation of the Rule 23(b)(3) class.  Amchem Prods., 521 U.S. at 617.  "[Antitrust] litigation is complex, its prosecution is costly, and the members with smaller damages claims likely have fewer resources with which to fund individual litigation."  In re Se. Milk Antitrust Litig., No. 2:07-CV-208, 2010 WL 3521747, at *12 (E.D. Tenn. Sept. 7, 2010), modified, No. 2:07-CV 208, 2012 WL 1981511 (E.D. Tenn. June 1, 2012), supplemented, No. 2:07-CV 208, 2012 WL 2885965 (E.D. Tenn. July 13, 2012) (holding that class litigation is the superior method for adjudicating antitrust cases).

The parties argue that a class action is superior to other available methods for adjudicating this controversy, and the Court agrees.  The interests of the members of both proposed Settlement Classes in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism given the significant judicial and litigant resources required to litigate antitrust claims like these.  The individual remedies for class members pale in comparison to the proof necessary to prevail on the merits of their claims and

the expenses of litigation.  Settling this case as a class action will conserve both judicial and private resources and will hasten the members of the Settlement Classes' recoveries.  (ECF No. 329-1 at PageID 5783.)

## II. Appointment of Class Counsel and Representatives

Plaintiffs seek appointment of Berger Montague PC, DiCello Levitt LLC, and Cuneo Gilbert & LaDuca, LLP as Settlement Class Counsel pursuant to Rules 23(c)(1)(B) and 23(g).

When one seeks appointment as class counsel, the Court may appoint that person only if she is adequate under Rule 23(g)(1) and (4).  Fed. R. Civ. P. 23(g)(2).  In appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).  The Court may consider any other matter pertinent to counsel's ability to represent the interests of the class fairly and adequately.  Fed. R. Civ. P. 23(g)(1)(B).

Proposed class counsel has submitted supplementary briefing and declarations reflecting the extent of their involvement in the prosecution of this action.  (See ECF No. 333.)  Co-Lead Class Counsel has collectively spent over 20,000 hours prosecuting this litigation, including Berger Montague's 8,800 hours, DiCello Levitt/Labaton Sucharow LLP's 6,300 hours, and Cuneo Gilbert's 4,900 hours.  (ECF No. 333-1 at PageID 5922-23.)  In their Declarations, they detail how the three firms split up responsibilities for responding to Defendants' Joint Motion to Strike and individual Motions to Dismiss, (ECF Nos. 82, 83 & 84), and how they continued to aggressively litigate the case following the resolution of these Motions.  (ECF No. 333-1 at

PageID 5924-25.)  Proposed Counsels' representations reflect that they have been substantially involved in this litigation.

The Court must also consider Proposed Counsels' experience in handling class actions, other complex litigation, and the types of claims asserted in the action.  Fed. R. Civ. P. 23(g)(1)(A)(ii).  All members of Proposed Counsel belong to established plaintiff-side class action firms; their experience in handling class actions, and antitrust class actions in particular, is beyond dispute.  Relatedly, Proposed Counsel has demonstrated sufficient knowledge of the applicable law throughout the case, they managed to withstand three Rule 12 Motions, and have successfully navigated this case to the settlement stage.  (See ECF No. 333-1 at PageID 5925, 5940.)  Rule 23(g)(1)(A)(iii) is therefore satisfied.  Finally, the Court must consider the resources that Proposed Counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(iv).  Proposed Counsel has already invested a significant number of hours to this case, (ECF No. 333-1 at PageID 5922-923), and the Court expects that they will continue to do so.

The Court finds that Proposed Class Counsel has satisfied the requirements of Rule 23(g), and accordingly appoints them as Class Counsel, and appoints the six named plaintiffs as Class Representatives.

### III.  Preliminary Settlement Approval

The Parties seek preliminary approval of the Settlement Agreement under Rule 23.  See Fed. R. Civ. P. 23(e) ("[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval").  Rule 23(e)(1)(B)(i) requires a Court to determine at the preliminary approval stage whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Under Rule 23(e)(2), a court must review whether the proposed settlement is "fair, reasonable, and adequate after considering" the

following four factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D); Busby v. Bonner, No. 2:20-cv-2359-SHL-atc, 2021 WL 4127775, at *2-3 (W.D. Tenn. Jan. 28, 2021) (articulating the framework for preliminary settlement approval).  The Court considers each factor below.

    A.  Adequate Representation and Arm's Length Negotiation

The first two Rule 23(e)(2) factors support preliminary approval.  First, Class Counsel has adequately represented the classes.  The Settlement Agreement is the culmination of two-and-a-half years of hard-fought litigation that yielded nearly 6,000 pages of filed documents, as well as an apparently fruitful series of negotiations before a mediator.  (ECF No. 329 at PageID 5772-73.)  Counsel for Plaintiffs and Defendants demonstrated their competence in antitrust class litigation via their discovery and motion practice.  Moreover, the factual record is sufficiently developed for Counsel to make an informed decision as to settlement and settlement value.

The Court also finds for many of the same reasons that the Settlement Agreement was negotiated at arms-length.  "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  Leonhardt v. ArvinMeritor, Inc., 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).  The Court is aware of no evidence in the voluminous

record to rebut this presumption.  The full day of mediation that ultimately resulted in this Settlement took place mere days before the initial deadline for class certification and <u>Daubert</u> Motions, thus following fact and expert discovery, evidencing that this was the result of an adversarial process. (ECF No. 329-3 at PageID 5822.)  The Parties' Settlement Agreement is the product of a procedurally fair process.

B.  <u>Adequate Relief</u>

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

First, the monetary recovery—$43.5 million total—grants each class member almost the maximum potential recovery without the need to litigate.  (ECF No. 329-1 at PageID 5773-74.) The Settlement also provides prospective relief–Varsity has agreed to change certain practices which gave rise to this action.  (<u>Id.</u>)  Taken together, the Settlement remedies the DPPs' past harms while also enacting changes to Defendants' practices that will prevent future harms.

This outcome allows class members to avoid the significant risks and uncertainties inherent in trials and appeals.  "[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." <u>Fitzgerald</u>, 2020 WL 7764969, at *12 (quotation marks and citation omitted).  Antitrust class actions are "arguably the most complex action[s] to prosecute.  The legal and factual issues involved are always numerous and uncertain in

12

outcome." In re Packaged Ice Antitrust Litig., No. 08-MLD-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011).

Throughout this litigation, Defendants have alleged that the DPPs' classes could not meet the Rule 23 certification requirements, (ECF No. 82-1), have contended that the DPPs failed to plausibly allege their Section 2 claims, and that some of their claims were time-barred, (ECF No. 96). While the Court denied the antitrust challenges within the context of a motion to dismiss, (ECF No. 141), these contentions would still presumably be raised at trial, and the Court did not address the alleged procedural problems.[3] Altogether, the Court cannot readily determine what the outcome of this case would be if it were fully litigated. The uncertainty as to the outcome counsels in favor of approving this settlement.

C. Equitable Treatment

Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other." For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendment.

The proposed allocation appears to be fair and equitable. The plan consists of dividing the Net Settlement Fund into two tranches corresponding to the two classes; one for the Gym Class with 85% of the funds, and one for the Spectator Class with 15% of the funds. (ECF No. 329-1 at PageID 5768.) The funds are to be allocated to each gym in proportion to the amount of

---

[3] The procedural issues were raised in Defendants' combined Motion to Strike, which the Court denied as moot given the Parties' notice of settlement. (ECF No. 326.)

money directly paid to Varsity during the class period. (Id.) Gyms will be presented with a prepared form documenting their respective payments. (Id.) Because the DPPs do not have the records for the Spectator Class's ticket expenditures, those class members will be required to submit information sufficient to prove that they paid for tickets for an event within the class period. (Id.) Provided that spectators can make this showing, they will be compensated with $10 per event, up to a maximum of $200 per spectator. (Id.)

The Settlement Agreement includes service awards, $20,000 for each of the three named Gym Plaintiffs and $5,000 for each of the three named Spectator Plaintiffs, as compensation and incentive for their fulfillment of this representative role. (ECF No. 329-1 at PageID 5770.) "[I]ncentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003). Courts around the Circuit have regularly approved of substantial service awards. See e.g., In re Skelaxin (Metaxalone) Antitrust Litig., No. 2:12-cv-83, 2014 WL 2946459, at *4 (E.D. Tenn. June 30, 2014) (awarding $50,000 to each class representative); In re Southeastern Milk Antitrust Litig., No. 2:08-MD-1000, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (approving $10,000 to each of the 16 class representatives); In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 535-36 (E.D. Mich. 2003) (approving service awards totaling $160,000).

As the DPPs' Supplementary Briefing reflects, the three Gym Class Representatives each expended significant time representing and pursuing the interests of the Gym Class; Fusion Elite spent at least 70 hours, Fuel at least 115 hours, and Stars and Stripes at least 120 hours pursuing this litigation. (ECF No. 333 at PageID 5910.) The Gym Class Representatives' responsibilities included meeting with Co-Lead Class Counsel to provide information for draft pleadings and

14

discovery requests and responses, assisting Co-Lead Class Counsel in identifying and locating documents responsive to Defendants' Requests for Production, among other matters.  (Id. at PageID 5910-911.)  Likewise, the three Spectator Class Representatives each spent more than 40 hours advancing this litigation on behalf of the Spectator Class, fulfilling similar responsibilities as the representatives of the Gym Class.  (Id. at PageID 5911.)  The incentive awards do not comprise a substantial portion of the overall settlement amount either, as the $75,000 total for all six representatives' awards comprises only 0.172% of the Settlement Fund and 0.281% of the Net Settlement Fund.  (Id. at PageID 5914.)  This settlement treats all class members equitably.

### IV.   Adequacy of Notice

Rule 23(b)(3) provides for an "opt out" class, with reasonable notice and the opportunity to decline to participate provided to all potential class members, as required by Rule 23(c)(2). Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 448 (6th Cir. 2002) (citing Fed. R. Civ. P. 23(c)(2)).  The notice and the opportunity to opt out requirements are necessary because claims for money damages implicate individual interests that are necessarily diverse.  Id. at 448. The class treatment of claims for money damages also implicates the Seventh Amendment and due process rights of individual class members.  Id.

When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B).  The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means.  Id.  The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id.

The DPPs propose multiple forms of notice for both classes.  Settlement Class Counsel designed a proposed Notice Program that will use direct notice via U.S Mail to all reasonably identifiable members of the Gym Class based on records Varsity produced in the litigation and pursuant to the Settlement Agreement.  (ECF No. 329-1 at PageID 5784.)  The Spectator Class will have a "multi-tiered, robust media campaign strategically designed to provide notice to the Spectator Class."  (Id.)  The proposed campaign includes: (i) using an interest-based approach for Facebook and Instagram users, (ii) a search campaign on Google to drive members of the Settlement Classes who are actively searching for information about the Settlement to the dedicated Settlement Website (www.AllStarCheerAntitrustSettlement.com), and (iii) publication of notice in cheerleading magazines and digital banner ads and notice via Inside Cheerleading's e-newsletter.  (Id.)  There will also be a toll-free telephone line to inform members of either Settlement Class about their rights and options.  (Id.)

The Notice Plan will also include the creation of a case-specific Settlement Website, where members of the Settlement Classes can easily view general information about this Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement.  (Id.)  The mailed Notices also includes this information, including detailed breakdowns of each potential class members' eligibility, how to file a claim, how to exclude themselves from the settlement, and how to object to the Settlement, as well as the legal

ramifications of each of those paths.  (See ECF No. 329-4 at PageID 5871-80.)

The Notice Plan adequately apprises all potential class members of the terms of the Settlement Agreement, provides the opportunity to make informed decisions, and comports with due process.

### V.  Appointment of Claims Administrator and Escrow

The DPPs ask the Court to appoint Angeion to oversee the administration of the Settlement, including disseminating notice to the Settlement Classes, calculating each Settlement Class Member's pro rata share of the Settlement Fund, and distributing the funds.  (ECF No. 329-1 at PageID 5785.)  They assert that Angeion is an experienced settlement and claims administration firm with sophisticated technological capabilities, staffed by personnel well-versed in antitrust issues and class action litigation.  (Id.)  The DPPs also submit what appears to be Angeion's marketing materials, (ECF No. 329-4), which reflect their involvement as a claims administrator in dozens of similar cases, (see id. at PageID 5844-63.)  The Court is not aware of any test for assessing the propriety of a claims administrator appointment, and so grants the motion to appoint Angeion given their demonstrated experience.

The DPPs also seek the appointment of Huntington as the Escrow Agent.  (ECF No. 329-1 at PageID 5785.)  Huntington appears to have fulfilled this role in other similar cases.  See, e.g., In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Prac. & Antitrust Litig., No. 17-md-2785, ECF No. 2594 (D. Kan. Mar.11, 2022); (order granting preliminary approval motion and appointing Huntington Bank as an escrow agent); In re Opana ER Antitrust Litig., No. 14-cv-10150, ECF No. 1069 (N.D. Ill. Aug. 24, 2022) (same).  Again, the Court is not aware of any tests or rules governing this appointment.  Given Huntington's experience, the Court grants the Motion to Appoint them as the escrow agent.

## **CONCLUSION**

For the reasons described above, DPPs' Unopposed Motion is **GRANTED**.  The Court

**ORDERS** that:

1. The Settlement is conditionally **APPROVED** as fair, reasonable, and adequate as to the members of the Gym and Spectator Classes, subject to further consideration at the Final Settlement Fairness Hearing.

2. The Parties are **DIRECTED** to provide notice of the proposed Settlement as provided in this Order and the Settlement Agreement.

3. Pursuant to Rule 23, the Court conditionally **CERTIFIES** the following Classes for purposes of this Settlement only and subject to further consideration at the Final Settlement Fairness Hearing:

   a. <u>Gym Class</u>: All entities that paid registration or related fees and expenses directly to Varsity to participate in Varsity All Star Events from May 26, 2016, through March 15, 2023.

   b. <u>Spectator Class</u>: All persons who paid entrance (admission) or other fees and expenses directly to Varsity to observe Varsity All Star Events from May 26, 2016, through March 15, 2023.

   c. Excluded from the Classes are Defendants, their parent companies, subsidiaries, affiliates, franchisees, officers, executives, and employees; any entity that is or has been partially or wholly owned by one or more Defendants or their respective subsidiaries; States and their subdivisions, agencies and instrumentalities; and any judicial officer presiding over this matter and his or her staff, except that officers of USASF who are not employees of any Defendants, their parent companies, subsidiaries, affiliates, or franchisees shall not be excluded from the Classes.

4. The Court preliminarily **FINDS**, solely for the purposes of the Settlement, that: (a) the Classes are so numerous that joinder of members of the Classes is impracticable; (b) there are questions of law and fact common to the Classes that predominate over any individual questions; (c) the claims of the Class Representatives are typical of the claims of the Classes; (d) the Class Representatives have and will continue to fairly and adequately represent and protect the interests of the Classes; and (e) a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

5. Named Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, and Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center are conditionally **APPROVED** as representatives of the Gym Class.  Named

Plaintiffs Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro are conditionally **APPROVED** as representatives of the Spectator Class.

6. Berger Montague PC, DiCello Levitt LLC, and Cuneo Gilbert & LaDuca, LLP are **APPROVED** as Class Counsel, and the Court finds that Class Counsel has and will fairly and adequately protect the interests of the Classes.

7. Angeion is **APPOINTED** as Settlement Administrator and Huntington is **APPOINTED** as Escrow Agent.

8. The Court **FINDS** and **ORDERS** that the Notices fully satisfy the requirements of due process, provide the best notice practicable under the circumstances to the members of the Classes, and provide individual notice to all members of the Classes who can be identified through reasonable effort.

9. No later than **May 25, 2023** (30 days after entry of this Order), the Settlement Administrator shall: (i) provide direct mail notice to the Gym Class; and (ii) commence the multi-tiered, robust media campaign publication notice plan to the Spectator Class.

10. No later than **July 10, 2023** (approximately 75 days after entry of this Order), Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of the Settlement Agreement.

11. No later than **August 3, 2023** (100 days after entry of this Order), any member of the Classes who wishes to make an exclusion request shall mail a written request to the Settlement Administrator at the address provided in the Notices.  The request for exclusion must include: (1) the name of the case (Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al., No. 2:20-cv-02600-SHL-tmp); (2) the individual or entity's name, address, and telephone number; and (3)  proof of membership in the proposed Gym Class or Spectator Class, which for the latter would include a sworn statement with supporting details indicating that the individual is a member of the proposed Spectator Class.  The request for exclusion must be postmarked or received by the Settlement Administrator by **August 3, 2023**.

12. No later than **August 3, 2023** (100 days after entry of this Order), any member of the Classes who wishes to make an objection to the proposed Settlement, Settlement Class Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, and service awards to the Class Representatives, shall mail a written request to the Clerk of the Court for the Western District of Tennessee, as well as Settlement Class Counsel and Counsel for Defendants at the addresses provided in the Notices.  The request for objection must include: (1) the name of the case (Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al., No. 2:20-02600-SHL-tmp); (2) the individual or entity's name and address and, if represented by counsel, the

name, address, and telephone number of counsel; (3) proof of membership in the proposed Gym Class or a sworn statement with supporting details indicating that the individual is a member of the Spectator Class; (4) a statement detailing all objections to the Settlement; and (5) a statement of whether the individual or entity will appear at the Fairness Hearing, either with or without counsel. The request for objection must be postmarked or received by the Clerk and Parties' Counsel by **August 3, 2023**.

13. Any member of the Classes who does not object in the manner prescribed above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, and adequacy of the Settlement or the requests for awards of attorneys' fees, expenses, and service awards.

14. Members of the Classes who timely and validly request exclusion from the Classes as set forth shall not be eligible to receive any payment out of the Settlement Fund as described in the Settlement Agreement, unless otherwise ordered by the Court.

15. Unless otherwise ordered by the Court, all members of the Classes (other than members who timely and validly request exclusion) shall be bound by all determinations and judgments in this action, whether favorable or unfavorable to the Classes.

16. No later than **August 24, 2023** (21 days after the expiration of the deadline for Class Members to request exclusion or object to the proposed Settlement and/or the request for attorneys' fees, expenses, and services awards), Settlement Class Counsel shall file all briefs and materials in support of final approval of the Settlement.

17. The Final Settlement Fairness Hearing shall be held by the Court on **September 26, 2023, at 1:00 p.m.**, which is not less than 30 days after the exclusion and objection deadlines, in Courtroom 1, at the United States District Court for the Western District of Tennessee, 167 North Main Street, Memphis, TN 38103, to consider whether:

   a. The proposed Settlement on the terms and conditions provided in the Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court;

   b. The request for attorneys' fees and unreimbursed costs should be approved;

   c. The request for service awards to the Named Plaintiffs should be approved; and

d.  To rule on such other matters as the Court may deem appropriate.

**IT IS SO ORDERED,** this 25th day of April, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE