**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| FUSION ELITE ALL STARS, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-02600-SHL-tmp |
| | ) | |
| VARSITY BRANDS, LLC, et al., | ) | |
| Defendants. | ) | |

**ORDER GRANTING DIRECT PURCHASER PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND OTHER RELATED
RELIEF AND GRANTING DIRECT PURCHASER PLAINTFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR
SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

Before the Court are Direct Purchaser Plaintiffs' Unopposed Motion for Final Approval of Proposed Settlement and Other Related Relief, (ECF No. 345), filed August 24, 2023, and Direct Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards for the Class Representatives, (ECF No. 342), filed July 10, 2023.  Defendants do not oppose either motion.  For the following reasons, the motions are **GRANTED**.

## BACKGROUND

This case involves allegations that Defendants Varsity Brands, LLC; Varsity Spirit, LLC; and Varsity Spirit Fashion & Supplies, LLC, ("Varsity"), in conspiracy with Defendant U.S. All Star Federation, Inc., ("USASF"), acquired, enhanced, and maintained monopoly power in the All Star Cheer Events Market in the United States through an unlawful scheme in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  (See ECF No. 56.)  Direct Purchaser Plaintiffs Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes Gymnastics

Academy Inc. d/b/a Stars and Stripes Kids Activity Center, Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro (collectively "DPPs") brought this case as a class of cheerleading gyms and parents of All Star Cheer participants who purchased Varsity products or paid Varsity competition entry fees.  The DPPs alleged that Varsity dominated the All-Star Cheer competition and apparel markets using anticompetitive means.  (Id.)

## I.   Procedural History

The DPPs brought this action in the Northern District of California on May 26, 2020, but re-filed it in this Court on August 13, 2020.  (ECF No. 329-1 at PageID 5764.)  Since filing, this case has been actively litigated; Defendants filed Motions to Dismiss and a Motion to Strike on December 1, 2020, arguing that the DPPs failed to plausibly allege their Section 2 claims, and asserting that the statute of limitations barred consideration of certain challenged conduct.  (ECF Nos. 82, 83, 84.)  The Court denied the Motions in most, but not all, respects.[1]  (See ECF No. 141.)  The Parties engaged in a lengthy discovery period afterward, which featured significant motion practice concerning discovery disputes.  (See ECF Nos. 102, 105, 111, 116, 118, 120, 125, 199, 203, 204, 214, 220.)  On January 31, 2023, the Parties reached an agreement to settle shortly before the deadline to file a motion for class certification.  (ECF No. 324.)

On April 25, 2023, the Court entered an Order Granting Preliminary Approval of Proposed Settlement ("Preliminary Approval Order"), preliminarily approving the Settlement Agreement and directing that notice be given to the members of the Settlement Classes.  (ECF No. 336.)  On July 10, 2023, the DPPs filed a Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards for the Class Representatives.  (ECF No. 342.)

---

[1] The Court did not rule on the Motion to Strike given the Parties' Notice of Settlement.  (ECF No. 326.)

Pursuant to the Settlement Agreement, Settlement Class Members were provided with notice informing them of the terms of the proposed settlement and of the Final Approval hearing. The purpose of that hearing was to determine whether: (a) the proposed settlement on the terms and conditions provided in the Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court; (b) the request for attorneys' fees and unreimbursed costs should be approved;  (c) the request for service awards to the Named Plaintiffs should be approved; and (d) to rule on such other matters as the Court may deem appropriate.  (ECF No. 336 at PageID 6001–02.)  The deadline for members of the Settlement Classes to object to the settlement, the Allocation Plan, and/or Class Counsel's Fee Motion, as well as the deadline to opt out of the case, was August 3, 2023.  (Id. at PageID 6000–01.)  No objections were received, and only a single absent Settlement Class member, South Bay Cheer 360 LLC, (from the Gym Class) requested exclusion.  (ECF No. 345-3 at PageID 6255–56, 6287.)

On August 24, 2023, the DPPs filed an Unopposed Motion for Final Approval of Proposed Settlement and Other Related Relief, (ECF No. 345), the terms and conditions of which are set forth in the Settlement Agreement, (ECF No. 329-2).  On September 26, 2023, the Court held a Final Fairness Hearing on the DPP's Motion for Final Approval.

## II.    Settlement Agreement

The principal terms of the settlement are as follows:

### A.    Monetary Relief

Varsity agreed to pay cash in the amount of $43.5 million in three installments to create a Settlement Fund for the benefit of the Settlement Classes.  (ECF No. 329-2 at PageID 5794, 5802.)  All members of both Settlement Classes that submit timely and valid claims will receive payments from the Settlement Fund pursuant to the Allocation Plan.  The Settlement Fund will

also pay for the expenses of the Settlement Administrator and the costs of notice to the Settlement Classes, any service awards to the Class Representatives, attorneys' fees and expenses, and any other administrative fees or costs that may be approved by the Court.

**B.      Prospective Relief**

The Settlement Agreement contains prospective relief that is effective from the date of Final Approval through December 31, 2028.  The agreement bars Varsity from requiring "attendance at more than three All Star Events during a single regular season as a condition of receiving Varsity's lowest tier of rebates or discounts."  (Id. at PageID 5803.)  The agreement also includes several terms related to the untangling of Varsity and USASF:  (1) "No person shall simultaneously serve on the boards of Varsity (or any other Varsity entity) and USASF;" (2) "Varsity may not, directly or indirectly, pay the salaries of any USASF employees or executives;" (3) "No more than 1/3 of the voting board seats on USASF's Board of Directors may be occupied by any single Event Producer;" (4) "No more than 40% of the seats on USASF's Sanctioning Committee [the committee that determines which Event Producers can award bids to the USASF Worlds Championship] may be occupied by any single Event Producer;" and (5) "After implementing the changes set forth above with respect to USASF's Board of Directors and Sanctioning Committee, USASF commits to continuing to evaluate proposals from its membership that are properly brought to its Board of Directors or an appropriate committee, in accordance with its policies and procedures."  (Id. at PageID 5803– 05.)

**C.      Release**

In exchange for the monetary and prospective relief, Defendants and certain related parties identified in the Settlement Agreement will receive a release of all claims that Gym and

Spectator Class members brought or could have brought relating to the nucleus of operative facts

set out in the Consolidated Amended Complaint through the Execution Date of the Agreement.

(Id. at PageID 5800.)  The release does not include: (a) certain unrelated claims that might arise

between the parties in the "ordinary course," under Article 2 of the Uniform Commercial Code

or similar state laws, the laws of negligence or product liability, strict liability, or implied

warranty, breach of contract, breach of express warranty, or personal injury, and (b) claims being

asserted based on indirect purchases from Varsity under state law.  (Id. at PageID 5800–01.)

## ANALYSIS

### I.      Motion for Final Approval of Settlement

Class action suits filed in federal court may only be settled with the court's

approval.  See Fed. R. Civ. P. 23(e).  Settlement approval consists of three steps:  "(1) the court

must preliminarily approve the proposed settlement, (2) members of the class must be given

notice of the proposed settlement, and (3) after holding a hearing, the court must give its final

approval of the settlement."  Bailey v. Verso Corp., 337 F.R.D. 500, 505 (S.D. Ohio 2021)

(citing In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985, 1026 (S.D. Ohio

2001); Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983)).  The Court previously

preliminarily approved the proposed settlement.  (ECF No. 336.)  Thus, the Court turns to the

second and third steps.

### A.      Notice Procedure Was Successful

The Court appointed administrator, Angeion Group, LLC ("Angeion") distributed the

notice to the provisionally certified Rule 23 class members using a multi-pronged campaign:

- Angeion created and continues to maintain a dedicated Settlement Website (www.AllStarCheerAntitrustSettlement.com) where the notice was (and continues to be) posted.  Angeion set up a toll-free telephone line to inform members of the Settlement Classes about their rights and options.

- With regard to the Gym Class, Angeion sent "direct notice via U.S Mail to all reasonably identifiable members of the Gym Class based on records Varsity produced in the litigation and pursuant to the Settlement Agreement."

- With regard to both Settlement Classes, "Angeion caused the Summary Notice to be published in *Inside Cheerleading*["] and "also conducted a digital media campaign by placing banner ads on the following: (a) Facebook and (b) Reddit."

(ECF No. 345-1 at PageID 6229) (internal citations omitted).  The Court previously found in its Preliminary Approval Order that the Notice Plan adequately apprised all potential class members of the terms of the Settlement Agreement, provided the opportunity to make informed decisions, and comported with due process.  (ECF No. 336 at PageID 5998.)

At the hearing, counsel for the DPPs highlighted the success of the notice program, stating that over 8,000 gyms received the notice.  Only fifty of the mailed notices were returned, and Angeion used a process to find updated addresses twenty-two of those gyms.  (ECF No. 345-3 at PageID 6253.)  93.48% of the target audience of the spectator class saw the advertisements that were part of the digital media campaign.  (Id. at PageID 6254.)  The toll-free telephone line received dozens of calls.  (Id. at PageID 6255.)  The Settlement Website had over 83,000 visits with 56,999 unique visitors.  (Id.)  This high delivery rate supports the Court's previous finding that notice was adequate in this case.

### B.     Post-Hearing Final Consideration of Settlement

1.     <u>Final Certification of the Settlement Classes and Appointment of Class Representatives</u>

In its Preliminary Approval Order, the Court conditionally certified the following two classes:

**<u>Gym Class</u>**:  All entities that paid registration or related fees and expenses directly to Varsity to participate in Varsity All Star Events from May 26, 2016, through March 15, 2023.

**<u>Spectator Class</u>**:  All persons who paid entrance (admission) or other fees and

expenses directly to Varsity to observe Varsity All Star Events from May 26, 2016, through March 15, 2023.

(ECF No. 336 at PageID 5999.)  The Court also provisionally appointed the Class Representatives.  There has been no information presented to alter the Court's previous conclusions.  For the same reasons the Court granted preliminary approval, the Court grants final certification to the Classes and final approval of the appointment of the Class Representatives.

### 2.    The Factors Support Approval of the Settlement

Before a district court approves a settlement, it must find that the settlement satisfies the four factors under Rule 23(e)(2) for determining whether a settlement is "fair, reasonable, and adequate," namely that: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D).  The Court stands by its previous finding in the Preliminary Approval Order that the settlement meets the Rule 23 factors.  (Id. at PageID 5991–96.)

In addition to the Rule 23(e) factors, the Sixth Circuit also considers seven factors to determine whether a class action settlement is "fair, reasonable, and adequate."  See Harsh v. Kalida Mfg., Inc., No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021) (citing UAW v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)).  These factors are:

1. the risk of fraud or collusion;
2. the complexity, expense, and likely duration of the litigation;
3. the amount of discovery engaged in by the parties;
4. the likelihood of success on the merits;
5. the opinions of class counsel and class representatives;
6. the reaction of absent class members; and
7. the public interest.

Id. at *3–4 (citing UAW, 497 F.3d at 631).  As set forth below, the settlement meets the standard for final approval as to each factor.

7

a.      The Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."   Leonhardt v. ArvinMeritor, Inc., 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).  The Court is aware of no evidence in the voluminous record to rebut this presumption.  The full-day mediation that ultimately resulted in this settlement took place mere days before the initial deadline for class certification and Daubert motions.  The settlement was reached after fact and expert discovery, evidencing that it was the result of an adversarial process.  (ECF No. 329-3 at PageID 5822.) Because the Parties' settlement is the product of a procedurally fair process, this factor weighs in favor of approval.

b.      The Complexity, Expense, and Likely Duration of
        Continued Litigation

Antitrust class actions are "arguably the most complex action[s] to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome."  In re Packaged Ice Antitrust Litig., No. 08-MLD-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011). That was certainly true of this case.  Additionally, the expenses incurred by Class Counsel in prosecuting the action were considerable:  $1,690,929.43.  (ECF No. 345-1 at PageID 6223.)  If the litigation had continued to summary judgment and trial, these expenses would have increased significantly.  Finally, this case is more than three years old.  Absent settlement, it would likely have continued for a considerable duration.  The complexity, cost, and likely duration of this case also supports approval.

c.      The Amount of Discovery the Parties Undertook

To confirm that the DPPs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of

8

discovery engaged in by the parties.  Harsh, 2021 WL 4145720, at *5.  Here, the settlement was reached after the conclusion of fact and expert discovery, which featured significant motion practice concerning discovery disputes.  (See ECF Nos. 102, 105, 111, 116, 118, 120, 125, 199, 203, 204, 214, 220.)  Based on the considerable amount of discovery in this case, the Court finds that this factor weighs in favor of approval.

> d.  The Likelihood of Success on the Merits

Throughout this litigation, Defendants have alleged that the DPPs' classes could not meet the Rule 23 certification requirements, (ECF No. 82-1), that the DPPs failed to plausibly allege their Section 2 claims, and that some of their claims were time-barred, (ECF No. 96).  Although the Court denied the antitrust challenges within the context of a motion to dismiss, (ECF No. 141), these contentions would still presumably be raised at trial, and the Court did not address the alleged procedural problems.  Altogether, the Court cannot readily determine what the outcome of this case would be if it were fully litigated.  The uncertainty as to the outcome supports approving the settlement.

> e.  The Opinion of Class Counsel and Class Representatives

Co-Lead Class Counsel, in consultation with the Class Representatives, negotiated the terms of the Settlement Agreement to attain a result that satisfied all involved.  (Id.)  Because Co-Lead Class Counsel and the Class Representatives all support the settlement, this factor weighs in favor of approving it.  (ECF No. 345-1 at PageID 6225.)

> f.  The Reaction of Absent Class Members

An "overwhelming positive class response highlights the fairness of the settlements to unnamed class members and weighs heavily in favor of approval of the settlements."  In re Se. Milk Antitrust Litig., 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013).  Here, zero

objections were received for either provisionally certified class, and only a single gym has requested to be excluded from the Gym Class.  (ECF No. 345-1 at PageID 6225.)  The lack of objections and single opt out also supports approval of the settlement.

        g.      Public Interest

The prosecution of private antitrust actions helps ensure compliance with antitrust laws and performs an important societal function.  See Pillsbury Co. v. Conboy, 459 U.S. 248, 262–63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (private challenges to antitrust violations "provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations").  "[C]lass actions . . . have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources."  Gascho v. Glob. Fitness Holdings, LLC, 822 F.3d 269, 287 (6th Cir. 2016).  Because this settlement advances the public interest, this factor also weighs in favor of approval.

Having considered all the relevant factors, each of which support final approval, the Court concludes that the settlement is fair, reasonable, and adequate and **GRANTS** final approval.

        3**.**      The Proposed Allocation Plan

The DPPs also seek approval of the Allocation Plan.  The plan consists of dividing the Net Settlement Fund into two tranches corresponding to the two classes: one for the Gym Class with 85% of the funds, and one for the Spectator Class with 15% of the funds.  (ECF No. 329-1

at PageID 5768–69.)  The funds are to be allocated to each gym in proportion to the amount of money directly paid to Varsity during the class period.  (Id.)  Gyms will be presented with a prepared form documenting their respective payments.  (Id.)  Because the DPPs do not have the records for the Spectator Class's ticket expenditures, those class members will be required to submit information sufficient to prove that they paid for tickets for an event within the class period.  (Id.)  Provided that spectators can make this showing, they will be compensated with $10 per event, up to a maximum of $200 per spectator.  (Id.)

      "'Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate.'"  Packaged Ice, 2011 WL 6209188, at *15 (quoting Meijer Inc. v. 3M, No. 04-5871, 2006 WL 2382718, at *17 (E.D. Pa. Aug.14, 2006)).  "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'"  Id.  Courts generally find that distributing settlement funds on a pro rata basis—as is proposed for the Gym Class—is fair and reasonable.  See, e.g., In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 533 (E.D. Mich. 2003).  Although the payments to the Spectator Class cannot be made on a strict pro rata basis, the distributions are still proportional to the harm suffered by each class member.  The Court concludes that the Allocation Plan is fair, reasonable, and adequate.

## II.    Attorneys' Fees, Costs, and Service Awards

### A.    Attorneys' Fees

      "The Sixth Circuit permits calculation of attorneys' fees under either the lodestar method (multiplying the number of hours spent on the litigation by certain attorneys by their hourly rate) or the percentage of the fund method (counsel receive a set percentage of the total settlement

fund)." <u>Packaged Ice</u>, 2011 WL 6209188, at *17.  "The percentage of the fund method has a number of advantages; it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." <u>Rawlings v. Prudential–Bache Properties, Inc.</u>, 9 F.3d 513, 516 (6th Cir. 1993).

The DPPs employ the percentage of the fund method but offer the lodestar calculation as a check on the reasonableness of their request.  They seek an award of $14.5 million, plus interest, which represents one-third of the $43.5 million Settlement Fund.  The DPPs point out that District courts in this Circuit have routinely found that an award of one-third of a common fund is within the range of reasonable percentage awards for antitrust class action settlements. <u>See, e.g.</u>, <u>In re Skelaxin (Metaxalone) Antitrust Litig.</u>, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of the settlement recovery] is fair and reasonable and fully justified.  The Court finds it is within the range of fees ordinarily awarded."); <u>Se. Milk</u>, 2013 WL 2155387, at *8 (awarding one-third fee from $158.6 million settlement).

An award of attorneys' fees in common fund cases must be "reasonable under the circumstances." <u>Rawlings</u>, 9 F.3d at 516.  The Sixth Circuit has identified six factors to determine the reasonableness of a fee request:  "(1) the value of the benefit rendered to the [the plaintiffs], (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis [i.e., the lodestar cross-check], (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides." <u>Ramey v. Cincinnati Enquirer, Inc.</u>, 508 F.2d 1188, 1196 (6th Cir. 1974).  As discussed below, all factors weigh in favor of a finding of reasonableness.

1.      Value of the Benefit Rendered to the Settlement Class

"District courts in this Circuit widely regard the first <u>Ramey</u> factor as the most important." <u>In re Cardinal Health Inc. Sec. Litig.</u>, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007). Here, the value of the benefit to the class members is substantial. The DPPs assert that the $43.5 million Settlement Fund represents 22% of the maximum best-case, or nearly 25% of the lower end, aggregate recoverable single damages estimated by the DPPs' damages expert. (ECF No. 342-1 at PageID 6038–39.) Further, the relief is also not limited to the Settlement Fund. The prospective relief confers additional economic and practical benefits to the Settlement Classes. Thus, the first factor weighs in favor of a finding of reasonableness.

2.      Society's Stake in Rewarding the DPPs' Counsel's Work

As stated above, the prosecution of private antitrust actions, and class actions generally, serves an important societal function. <u>See</u> <u>Pillsbury Co.</u>, 459 U.S. at 262–63; <u>Gascho</u>, 822 F.3d at 287. Attorneys for plaintiffs in these cases almost always work on a contingent basis and risk not being compensated at all. <u>Se. Milk</u>, 2013 WL 2155387, at *8. "Awards of substantial attorneys' fees in cases like this are necessary to incentivize attorneys to shoulder the risk of non-payment to expose violations of the law and to achieve compensation for injured parties." <u>Id.</u> Society's interest in the prosecution of antitrust cases supports a finding of reasonableness.

3.      Contingency Fee Basis of Class Counsel's Work

Counsel undertook this case on a contingency fee basis. Attorneys who take on such a massive task with a significant risk of nonpayment should be compensated "both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." <u>Packaged Ice</u>, 2011 WL 6209188, at *19 (quoting <u>In re Automotive Refinishing Paint Antitrust Litig.</u>, MDL No. 1426, 2004 WL 1068807, *5 (E.D. Pa. May 11, 2004)). The contingent nature of this representation also weighs in favor of a finding of reasonableness.

4.     <u>Lodestar Cross Check</u>

Courts often supplement their analysis of the percentage of the fund method with the lodestar cross-check.  <u>See</u> <u>In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.</u>, 2014 WL 12808031, at *5 (W.D. Tenn. Dec. 24, 2014).  "To determine the lodestar figure, the court multiplies the number of hours 'reasonably expended' on the litigation by a 'reasonable hourly rate.'"  <u>Gascho</u>, 822 F.3d at 279 (quoting <u>Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway</u>, 46 F.3d 1392, 1401 (6th Cir. 1995)).  "Unlike the situation when the Court employs the lodestar method in full, the hours documented by counsel need not be exhaustively scrutinized by the district court where a lodestar cross-check is used."  <u>Se. Milk</u>, 2013 WL 2155387, at *2 n.3 (internal quotation marks and citation omitted).

Here, counsel for the DPPs invested 24,600.95 hours of attorney and other professional time through June 9, 2023.  (ECF No. 342-1 at PageID 6043.)  The DPPs contend that the hourly rates charged by counsel are reasonable, based on each person's position, experience level, and location, and have been approved by multiple courts in similar antitrust class actions.  <u>Id.</u>  They have attached to their motion affidavits which state that the rates are comparable to the rates charged by other law firms with similar experience, expertise, and reputation, for similar services in the nation's leading legal markets.

The DPPs estimated lodestar of $16,411,459.00, compared to one-third of the Settlement Fund, which would be a fee award of $14,500,000 (plus interest), results in a multiplier of 0.88.  Typically, courts award multipliers on lodestars in contingent fee cases ranging from 1.3 to 4.0.  <u>See, e.g.</u>, <u>Se. Milk</u>, 2013 WL 2155387, at *4 (using a lodestar crosscheck and finding that a multiplier of 1.90 was "clearly within, but in the bottom half of, the range of typical lodestar multipliers"); <u>Cardizem</u>, 218 F.R.D. at 533 (noting that direct purchaser class plaintiffs received

a 30% fee award that equated to lodestar multiplier of 3.7); In re Prandin Direct Purchaser Antitrust Litig., 2015 WL 1396473, at *4 (awarding 3.01 multiplier); Skelaxin, 2014 WL 2946459, at *2 (awarding one-third of the common fund which equated to a lodestar multiplier up to 2.5).  Here Class Counsel is seeking to be paid an amount lower than their lodestar, which weighs heavily in favor of a finding of reasonableness.

### 5.      Complexity of the Litigation

As stated above, antitrust class actions are inherently complex.  Packaged Ice, 2011 WL 6209188, at *19.  This case is no exception.  Further, the case did not follow investigations and prosecutions by any governmental entity.  (ECF No. 342-1 at PageID 6044.)  Rather, this case came exclusively from Co-Lead Class Counsel's own independent investigation.  (Id.)  The DPPs' liability theories challenged core principles of Defendants' business models, presenting complex issues of antitrust law that would have to be proved under the Section 2 framework. (Id.)  The complexity of the case also supports a finding of reasonableness.

### 6.      The Quality of the Representation

There is no question as to the skill and efficiency of Class Counsel.  Counsel for the DPPs have demonstrated their experience and capability in prosecuting antitrust class actions; they have dedicated millions of dollars and spent a significant amount of time in and out of the courtroom litigating on behalf of the proposed Settlement Classes for nearly three years.  All attorneys have handled matters with extreme professionalism, expediency, and competency.  The Court has no hesitation concluding that this factor weighs in favor of approving the fee request.

Finding the DPPs' request for attorneys' fees reasonable, the Court awards $14.5 million in fees plus reasonable interest.

### B.     Costs

To determine whether the requested expenses are compensable, the Court considers whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.  Cardizem, 218 F.R.D. at 535.  The DPPs request reimbursement of litigation expenses in the amount of $1,690,929.43 to cover amounts expended out-of-pocket in the prosecution of the case.  The expenses fall into three categories: (1) expenses incurred individually by each firm such as photocopying, postage, and travel; (2) expenses paid by the common Litigation Fund; and (3) invoiced but as-yet unpaid amounts relating to expert and consultant costs, database expenses, and class notice as directed by the Court.  (ECF No. 342-1 at PageID 6047.)

Finding these expenses to be routine and reasonable, the court awards $1,690,929.43 in expenses.

### C.     Service Awards

Counsel for the DPPs also request the approval of service awards totaling $75,000, with the three Gym Class Representatives each to receive $20,000 and the three Spectator Class Representatives each to receive $5,000.  (Id. at PageID 6048.)  The Sixth Circuit has not defined the circumstances justifying service awards to class representatives.  See Lonardo v. Travelers Indemnity Co., 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).  However, district courts in this Circuit have considered three factors when considering a request:  (1) actions taken by Class Representatives to protect the interests of Class members and others and whether these actions resulted in substantial benefit to Class members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursing the litigation.  See Robles v. Comtrak Logistics, Inc., 2022 WL 17672639, at *12 (W.D. Tenn. Dec. 14, 2022) (citing Ross v. Jack Rabbit Servs., LLC, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016)).

Here, all three factors weigh in favor of the requested service awards.  First, the Class Representatives were essential in ensuring that this case was brought because they, rather than a government agency, helped to initiate the case.  (ECF No. 342-1 at PageID 6049.)  Second, by being named plaintiffs in a lawsuit, they risked retaliation for their participation.  (Id.)  Finally, each of the named plaintiffs spent considerable time pursuing the litigation.  (Id.)

Accordingly, the Court awards $75,000 in service awards, with the three Gym Class Representatives each to receive $20,000 and the three Spectator Class Representatives each to receive $5,000.

## **<u>CONCLUSION</u>**

The Court finds that the proposed settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class Members.  Accordingly, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Order and Final Judgment hereby incorporates by reference the definitions in the Settlement Agreement and all terms used herein, except as otherwise expressly defined herein, which shall have the same meanings as set forth in the Settlement Agreement.

2.     This Court finds that it has subject matter jurisdiction under 28 U.S.C. § 1331 to enter this Order and Final Judgment and has personal jurisdiction over the DPPs, all members of both Settlement Classes, and the Defendants (in this Action only and for purposes of this settlement only).

3.     For purposes only of the settlement set forth in the Settlement Agreement, the Court hereby finally **CERTIFIES** the Settlement Classes, as defined below, and in the Preliminary Approval Order, (ECF No. 336):

17

**Gym Class**:  All entities that paid registration or related fees and expenses directly to Varsity to participate in Varsity All Star Events from May 26, 2016, through March 15, 2023 (the "Class Period").

**Spectator Class**:  All persons who paid entrance (admission) or other fees and expenses directly to Varsity to observe Varsity All Star Events during the Class Period.

Excluded from the Classes are Defendants, their parent companies, subsidiaries, affiliates, franchisees, officers, executives, and employees; any entity that is or has been partially or wholly owned by one or more Defendants or their respective subsidiaries; States and their subdivisions, agencies and instrumentalities; and any judicial officer presiding over this matter and his or her staff, except that officers of United States All Star Federation who are not employees of any of Defendants, their parent companies, subsidiaries, affiliates, or franchisees shall not be excluded from the Classes.

4.      In so holding, the Court finds that, solely for purposes of settlement, the Settlement Classes meet all the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3), as explained in the Preliminary Approval Order and in this Order.  The Court hereby finds, in the specific context of this settlement, that:  (i) the Settlement Classes are so numerous that joinder of all members of the Settlement Classes is impracticable, Fed. R. Civ. P. 23(a)(1); (ii) common questions of law and fact exist with regard to Defendants' alleged monopolization and conspiracy to monopolize the All Star Cheer Events Market, Fed. R. Civ. P. 23(a)(2); (iii) the DPPs' claims in this litigation are typical of those of the members of the Settlement Classes, Fed. R. Civ. P. 23(a)(3); and (iv) the DPPs' interests do not conflict with, and are co-extensive with, those of absent members of the Settlement Classes, all of whose claims arise from the identical factual predicate, and the DPPs and Co-Lead Class Counsel have adequately represented the interests of all members of the Settlement Classes under Fed. R. Civ. P. 23(a)(4).  The Court also finds that, for purposes of settlement only, common issues of fact and law predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently resolving this controversy under Fed. R. Civ. P. 23(b)(3).

5.      Fusion Elite All Stars, Spirit Factor LLC d/b/a Fuel Athletics, Stars and Stripes Gymnastics Academy Inc. d/b/a Stars and Stripes Kids Activity Center are **CERTIFIED** as representatives of the Gym Class.  Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro are certified as representatives of the Spectator Class.

6.      Pursuant to Fed. R. Civ. P. 23(g), Berger Montague PC, DiCello Levitt LLP, and Cuneo Gilbert & LaDuca, LLP are **CERTIFIED** as Co-Lead Class Counsel for the Settlement Classes.

7.      The Court finds that the Notice Plan implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order:  (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Classes of the pendency of this Action, of their right to exclude themselves from or object to the proposed settlement, of their right to appear at the Final Fairness Hearing, of the Plan of Allocation, of Co-Lead Class Counsel's application for an award of attorneys' fees, reimbursement of litigation expenses, and application for service awards; (iii) provided a full and fair opportunity to all members of the Settlement Classes to be heard with respect to the foregoing matters; and (iv) met all applicable requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable rules or law.

8.      The Court finds that one purported member of the Gym Class validly excluded itself and zero members of the Spectator Class timely and validly excluded themselves. Attached Exhibit 1 hereto lists the excluded member of the Gym Class.

9.      The Court finds that no members of either of the Settlement Classes have objected, timely or otherwise, to the proposed settlement.  Notwithstanding the lack of

objections, the Court has independently reviewed and considered all relevant factors and has conducted an independent examination into the propriety of the settlement.

10.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally **APPROVES** the settlement, as set forth in the Settlement Agreement.  This Court finds that the settlement meets all requirements of Fed. R. Civ. P. 23(e) and is, in all respects, fair, reasonable and adequate, and in the best interest of the Settlement Classes, including the DPPs, as explained in the Preliminary Approval Order and affirmed by this order.[2]  This Court further finds that the settlement set forth in the Settlement Agreement is the result of arm's length negotiations between experienced counsel representing the interests of the Parties, that Co-Lead Class Counsel and the DPPs have adequately represented the Settlement Classes for the purpose of entering and implementing the Settlement Agreement, that the relief provided for the Settlement Classes is adequate, and that the Settlement Agreement and Plan of Allocation treats members of the Settlement Classes equitably relative to each other.  Accordingly, the settlement embodied in the Settlement Agreement is hereby approved in all respects.  The Parties are hereby directed to carry out the Settlement Agreement in accordance with all its terms and provisions.

11.      Notwithstanding the entry of this Order and Final Judgment, if the Settlement Agreement is disapproved in whole or in part by the Court, any appellate court, or any other court of review, or does not become Final, then the provision of this Order and Final Judgment dismissing the DPPs' claims shall be null and void with respect to such settlement; the DPPs' claims shall be reinstated; Defendants' defenses shall be reinstated; the certification of the

---

[2] The Court further finds that the Supplemental Agreement relating to the effect on the settlement if a certain share of the members of the Settlement Classes excluded themselves referenced in paragraph 19 of the Settlement Agreement, which the Court reviewed in camera, is approved as fair, reasonable, and adequate.  The Court notes that an insufficient share of the members of the Settlement Classes excluded themselves, and so the provisions of the Supplemental Agreement did not become operative.

Settlement Classes and final approval of the proposed settlement, and all actions associated with them, including but not limited to any requests for exclusion from the settlement previously submitted and deemed to be valid, shall be vacated and be of no force and effect; the Settlement Agreement, including its exhibits, and any and all negotiations, documents, and discussions associated with it and releases set forth herein, shall be without prejudice to the rights of any Party, and of no force or effect; and the Parties shall be returned to their respective positions before the Settlement Agreement was signed.  Notwithstanding the language in this Section, any provision(s) in the Settlement Agreement that the Parties have agreed shall survive its termination shall continue to have the same force and effect intended by the Parties.

12.     The Settlement Fund defined in the Settlement Agreement has been established as an Escrow Account to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

13.     Without affecting the finality of the Order and Final Judgment for purposes of appeal, the Court reserves exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement and the settlement contemplated thereby and over the enforcement of this Order and Final Judgment.  The Court also retains exclusive jurisdiction to resolve any disputes that arise out of or relate to the Settlement Agreement, the settlement, the Allocation Plan, or the Settlement Fund, to consider or approve administration costs and fees, including but not limited to fees and expenses incurred to administer the Settlement and Allocation Plan after the entry of the Order and Final Judgment, and to consider or approve the amounts of distributions to members of the Settlement Classes.  In addition, without affecting the finality of the Order and Final Judgment, the DPPs, Defendants, and members of the Settlement Classes hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Western District of Tennessee for any suit, action, proceeding, or dispute arising out of or

relating to this Order and Final Judgment or the Settlement Agreement.  Any disputes involving the DPPs, Defendants, or members of the Settlement Classes concerning the implementation of the Settlement Agreement shall be submitted to this Court.

14.     The Court hereby confirms the appointment of Huntington National Bank as the Escrow Agent.

15.     The Court hereby confirms the appointment of Angeion Group LLC as Settlement Administrator.

16.     As set forth in the Settlement Agreement and this Order and Final Judgment and, upon the Effective Date, the Court hereby **APPROVES** the Releasors[3] release against the Releasees[4] for:

> all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Classes has objected to the settlement or makes a claim upon or participates in distribution of the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) under any federal, state or local law of any jurisdiction in the United States, that Releasors, or each of them, ever had, now have, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or

---

[3] "Releasors" shall refer to members of the Settlement Classes, as well as each of their respective past and present parents, subsidiaries, affiliates, divisions, predecessors, successors, and their respective past and present officers, directors, and employees.

[4] "Releasees" shall refer jointly and severally, individually, and collectively, to Defendants, their respective past and present, direct, and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, and insurers, and their respective past and present officers, directors, and employees. "Releasees" shall also include any direct or indirect majority or minority investor in any Releasee, as well as their respective past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, indemnitors, and insurers, and their respective past and present officers, directors, advisors, independent consultants, partners, and employees, and any entity that managed, manages, advised, or advises any fund or managed account that made a direct or indirect investment in any Releasee at any time and, as to each such entity, its past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, indemnitors, and insurers, and their respective past and present officers, directors, advisors, independent consultants, partners, and employees.  Without in any way limiting the foregoing, Releasees shall include all the entities listed in Appendix A of the Settlement Agreement as well as their respective past and present, direct and indirect, parents, subsidiaries, affiliates, divisions, predecessors, successors, and insurers, and their respective past and present officers, directors, advisors, independent consultants, partners, and employees.

unliquidated claims, injuries, damages, and the consequences thereof relating in any way to the nucleus of operative facts alleged in the complaint in the Action prior to the Execution Date that were made or could have been made in the Action by Direct Purchaser Plaintiffs or members of the Settlement Classes against the Releasees, including all direct purchaser claims relating to Defendants' involvement in the cheerleading industry based in any way on conduct or events arising out of the nucleus of operative facts alleged in the consolidated complaint in the Action, that occurred through the Execution Date. Notwithstanding the foregoing, any claims based on indirect purchases by Settlement Class Members or Releasors that may exist under the law of one or more U.S. states will not be released. In addition, and notwithstanding the foregoing, claims arising in the ordinary course between (a) any of the Releasees, on the one hand, and (b) Direct Purchaser Plaintiffs, Settlement Class Members or Releasors, on the other, and arising under Article 2 of the Uniform Commercial Code (pertaining to sales) or similar state laws, the laws of negligence or product liability, strict liability, or implied warranty, breach of contract, breach of express warranty, or personal injury, will also not be released. The claims described as being released in this paragraph are referred to herein as the "Released Claims."

17.     The Court further **DECLARES** (i) the Court's certification of the Settlement Classes is without prejudice to, or waiver of, the rights of any person or entity, including Defendants, to contest certification of any other class proposed in any other case, including Jones, et al. v. Varsity Brands, LLC, et al., No. 2:20-cv-02892 (W.D. Tenn.) and American Spirit and Cheer Essentials, Inc. et al. v. Varsity Brands, LLC, et al., No. 2:20-cv-02782 (W.D. Tenn.) (the "Related Cases"); (ii) the Court's entry of the Order and Final Judgment shall have no effect on the Court's ruling on any motion to certify any class in the Related Cases or on the Court's rulings concerning any other motion; and (iii) no Party may cite or refer to the Court's approval of the Settlement Classes as persuasive or binding authority in support of any motion to certify any such classes.

18.     The Court **DECLARES** that the Settlement Agreement and the Order and Final Judgment precludes all members of the Settlement Classes, whether or not a Settlement Class member submits a claim as part of the Plan of Allocation, from asserting or prosecuting any of

the Released Claims against any Releasee.  All Released Claims of all members of both Settlement Classes are hereby extinguished as against any and all Releasees.

19.     The Claim Forms and Allocation Plan, submitted with the DPPs' Motion for Final Approval of Proposed Settlement and Other Related Relief, are each **APPROVED** as fair, reasonable, and adequate.

20.     The Settlement Administrator shall administer the claims administration process, including the calculation of claims submitted by members of the Settlement Classes and distribution of the Net Settlement Fund[5] to members of the Gym and Spectator Classes that submit claims, pursuant to the Court-approved Plan of Allocation.

21.     The Court **APPROVES** the schedule in the Allocation Plan.  Within sixty (60) days of this Order, Angeion will mail the pre-populated forms to Gym Class members and post the form for Spectator Class members on the Settlement Website within thirty (30) days of this Order.  All members of the Settlement Classes will have 150 days from this Order to submit their Claim Forms.  After the deadline for submission of Claim Forms, Angeion, in consultation with Co-Lead Class Counsel, will prepare a final report for the Court's review and approval, detailing the distribution schedule.  Once the Court approves the final report, members of the Settlement Classes will receive payment from the Settlement Fund.

22.     The Court will separately entertain petitions for reimbursement of reasonable expenses from the Settlement Fund by Co-Lead Class Counsel, Angeion, and Econ One, Inc. (the economic consulting firm assisting with the Allocation Plan) as those expenses are incurred.

---

[5] "Net Settlement Fund" means the $43,500,000 Settlement Fund, plus any interest earned on the Settlement Fund, and net of Court awarded attorneys' fees, expenses, service awards for the DPPs, and settlement costs, including costs of notice to the Settlement Classes and settlement and claims administration.

23.     The DPP's Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards for the Class Representatives is **GRANTED**.

24.     This Order and Final Judgment terminates and disposes of all claims against the Defendants in this Action with prejudice and, except as provided for in the Settlement Agreement, without costs.  Pursuant to Federal Rule of Civil Procedure 54, there is no just reason for delay in entering final judgment, which judgment shall be final and appealable.

**IT IS SO ORDERED,** this 4th day of October, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE